# Exhibit 1

FOREIGN CLAIMS SETTLEMENT COMMISSION
Washington, D.C. 20579         OCT 13 1969

RE: Claim No. CU– 938

On September 3, 1969 the Foreign Claims Settlement Commission issued a proposed decision on the above claim. In accordance with paragraph 531.5(g) of the Commission Regulations the decision has been entered as the final determination and decision of the Commission.

Francis T. Masterson
Clerk of the Commission.

GPO 871-477

FOREIGN CLAIMS SETTLEMENT COMMISSION
OF THE UNITED STATES
WASHINGTON, D.C. 20579

IN THE MATTER OF THE CLAIM OF

STANDARD OIL COMPANY

Under the International Claims Settlement
Act of 1949, as amended

Claim No. CU-0938

Decision No. CU 3838

Counsel for claimant: LeRoy Marceau, Esq.

## PROPOSED DECISION

This claim against the Government of Cuba, under Title V of the International Claims Settlement Act of 1949, as amended, in the amount of $71,686,002.90, was presented by the STANDARD OIL COMPANY, based upon the loss of real and personal property of a Cuban corporation known as Esso Standard Oil, S.A.

Under Title V of the International Claims Settlement Act of 1949 [78 Stat. 1110 (1964), 22 U.S.C. §§1643-1643k (1964), as amended, 79 Stat. 988 (1965)], the Commission is given jurisdiction over claims of nationals of the United States against the Government of Cuba. Section 503(a) of the Act provides that the Commission shall receive and determine in accordance with applicable substantive law, including international law, the amount and validity of claims by nationals of the United States against the Government of Cuba arising since January 1, 1959 for

> losses resulting from the nationalization, expropriation, intervention or other taking of, or special measures directed against, property including any rights or interests therein owned wholly or partially, directly or indirectly at the time by nationals of the United States.

Section 502(3) of the Act provides:

> The term 'property' means any property, right, or interest including any leasehold interest, and debts owed by the Government of Cuba or by enterprises which have been nationalized, expropriated,

intervened, or taken by the Government of Cuba and debts which are a charge on property which has been nationalized, expropriated, intervened, or taken by the Government of Cuba.

Section 502(1)(B) of the Act defines the term "national of the United States" as a corporation or other legal entity which is organized under the laws of the United States, or of any State, the District of Columbia, or the Commonwealth of Puerto Rico, if natural persons who are citizens of the United States own, directly or indirectly, 50 per centum or more of the outstanding capital stock or other beneficial interest of such corporation or entity.

The claimant, STANDARD OIL COMPANY, was organized under the laws of the State of New Jersey in 1882. An officer of claimant has certified that at all times pertinent to this claim more than 50% of its outstanding capital stock has been owned by nationals of the United States, and that as of December 31, 1966, at least 80% of its outstanding capital stock was held by nationals of the United States. The Commission holds that claimant qualifies as a national of the United States within the meaning of Section 502(1)(B) of the Act.

STANDARD OIL COMPANY, hereinafter referred to as claimant, has asserted this claim for loss of the Cuban assets of Esso Standard Oil, S.A., hereinafter referred to as Essosa, a Panamanian corporation and a wholly-owned subsidiary of claimant. The claimant initiated operations in Cuba over 80 years ago when it obtained an interest in a company owning a small refinery located near Havana. In 1895 the refinery was moved to its present site on Havana Harbor and over the years it was expanded. In 1922 the claimant acquired 100% ownership of the company owning such refinery. In 1957 a substantial investment was made to expand refinery capacity from 9,300 to 34,500 barrels of crude petroleum per day. Essosa had extensive marketing operations in Cuba and in connection with such operations, owned three ocean terminals, one island terminal and seven bulk and package plants at commercially strategic points throughout the island.

CU-0938

Essosa was intervened on July 1, 1960, by Resolution No. 33 of that date, issued by the Instituto Cubano de Petroleo, pursuant to Resolution No. 190, of June 30, 1960, issued by the Prime Minister of the Revolutionary Government, Fidel Castro Ruz. Subsequently, this firm was listed as nationalized in Resolution No. 1 of August 6, 1960, pursuant to Cuban Law 851. The Commission finds, however, that the Essosa enterprise was effectively intervened within the meaning of the Act by the Government of Cuba on July 1, 1960.

The Act provides in Section 503(a) that in making determinations with respect to the validity and amount of claims and value of properties, rights, or interests taken, the Commission shall take into account the basis of valuation most appropriate to the property and equitable to the claimant, including but not limited to fair market value, book value, going concern value, or cost of replacement.

The question, in all cases, will be to determine the basis of valuation which, under the particular circumstances, is "most appropriate to the property and equitable to the claimant". The Commission has concluded that this phraseology does not differ from the international legal standard that would normally prevail in the evaluation of nationalized property and that it is designed to strengthen that standard by giving specific bases of valuation that the Commission shall consider; i.e., fair market value, book value, going concern value, or cost of replacement.

The claimant has asserted this claim for loss of Essosa, submitting book values of the enterprise while stating the amount of claim which might be based on some other method, would be supplied later. Such evaluation has not been forthcoming although claimant has been reminded thereof.

Accordingly, the Commission finds that the book value of the enterprise, as further discussed below, represents the most appropriate basis of evaluation.

Claimant has asserted that Essosa enjoyed the good will of its suppliers and customers which gave it a value over that of its measurable assets, but

CU-0938

- 4 -

no evidence has been submitted to establish the extent of value of such a "going concern". The Cuban assets and liabilities of Essosa are reflected in the following balance sheet which claimant submitted as Exhibit A with its claim application in support of Item 18 thereof:

### ASSETS

**Current**

| | | |
|---|---:|---:|
| Cash | $ 7,942,693.19 | |
| Receivables and Other Current Assets | 18,481,691.11 | |
| Inventories – Crude Products and Other | 6,035,603.32 | |
| Inventories, Materials and Supplies | 2,319,569.60 | |
| Total Current Assets | | $34,779,557.22 |

**Investments**

| | | |
|---|---:|---:|
| Long Term Notes and Accounts Receivable (Net) | $ 4,054,581.25 | |
| Other Investments | 2,265,497.04 | 6,320,078.29 |
| Deposits and Other Special Funds | | 5,456.62 |
| Property, Plant & Equipment (Net) | | 38,949,536.42 |
| Prepaid and Deferred Charges | | 1,405,839.44 |
| Total Assets | | $81,460,467.99 |

### LIABILITIES

**Current**

| | | |
|---|---:|---:|
| Reserve for Income Tax | $(1,747,161.21) | |
| All Other Current Liabilities | (5,122,022.29) | |
| Total Current Liabilities | | $(6,869,183.50) |
| Long Term Debt | | (1,332,878.65) |
| Deferred Interest Income | | (17,711.94) |
| Reserve for Annuities | | (1,554,691.00) |
| Total Liabilities | | (9,774,465.09) |
| NET WORTH | | $71,686,002.90 |

The claimant has submitted extensive evidence in support of the claim including a Trial Balance prepared under the supervision of the Cuban Interventor during July 1960. This Trial Balance was prepared by Essosa employees

CU-0938

- 5 -

who temporarily continued to perform their employment under the direction of the Interventor; and, following preparation of the Trial Balance, it was approved by the Interventor and forwarded to the Comptroller of Essosa for the permanent records of the firm. Additionally, claimant has made certain adjustments to supplement data contained in the Trial Balance. Such material clarifies transactions pertaining to refining operations and other transactions which occurred on or shortly before June 30, 1960, or immediately before the Trial Balance was prepared.

The file includes various records and affidavits in support of the claim, including claimant's records, those of Essosa or another wholly-owned subsidiary of claimant, Esso Export Corporation, now known as Esso International, Inc., a Delaware corporation. These records, pertaining to the items of claim designated by claimant as Items 1 through 63, include banking records, data pertaining to cash on hand, accounts receivable, investments, inventories, property, plant and equipment, as well as prepaid and deferred charges, and extensive data pertaining to the liabilities of Essosa. The Interventor's Trial Balance, with claimant's adjustments, based on its available records, is set out below:

I. ASSETS

Current
  Cash
    Cash in banks and on hand:
      Interventor Trial Balance          $ 7,923,918.19
      Recovered                               5,000.00    $ 7,918,918.19
    Petty cash funds                                          23,775.00

  Receivables and Other Current Assets
    Trade notes receivable                                    909,347.02
    Reserve for doubtful notes receivable                     (64,346.72)
    Trade accounts receivable - current:
      I.T.B.                            13,245,168.62
      Received from Esso affiliates         29,077.24     13,274,245.86
    Trade accounts receivable - suspended                    230,594.18
    Remittances unapplied (credit)                              (179.58)
    Cash sales                                                63,202.41
    Unpaid cash sale checks                                   15,597.41
    Agents and employees accounts
      receivable (shortages)                                   4,880.89
    Advance expense funds:
      I.T.B.                                25,058.53
      Late Plane Ticket Adjustment             165.58         25,224.11
    Claims receivable:
      I.T.B.                             4,264,792.98
      Steamship claim collected                156.81      4,264,636.17

CU-0938

|  |  |  |
|---|---:|---:|
| Trade creditors (Debit) | | $ 350.00 |
| Other accounts receivable | | 59,316.87 |
| Reserve for doubtful accounts receivable | | (439,032.91) |
| Accrued interest receivable | | 137,855.40 |
| **Inventories – Crude Products and Other:** | | |
| Inventory – crude oil | | 208,682.57 |
| Inventory – products, finished and unfinished | | 4,997,913.01 |
| Inventory – other saleable merchandise | | 829,007.74 |
| **Inventories, Materials and Supplies:** | | |
| I.T.B. | $ 2,316,083.35 | |
| Purchased from affiliates | 3,486.25 | 2,319,569.60 |
| **Investments** | | |
| Long Term Notes and Accounts Receivable (Net) | | 34,935.63 |
| Long-term notes receivable | | 2,421,834.54 |
| Loans receivable | | 1,842,615.16 |
| Accounts receivable – deferred | | (244,804.08) |
| Reserve for loss in investment | | |
| **Other Investments** | | |
| Stock owned – other than affiliated companies | | 117,400.00 |
| Miscellaneous investments: | | |
| I.T.B. | 2,146,597.04 | |
| Club membership | 1,500.00 | 2,148,097.04 |
| **Deposits and Other Special Funds** | | 5,456.62 |
| **Property, Plant and Equipment (Net)** | | |
| Plant and equipment | | 41,290,843.33 |
| Other lands, leases and easements | | 5,542,845.99 |
| Incomplete construction | | 792,839.71 |
| Surplus property available for sale | | 72,301.60 |
| Reserve for amortization of plant and equipment | | (127,260.43) |
| Reserve for depreciation of plant and equipment: | | |
| I.T.B. | (12,725,680.39) | |
| Elimination of double depreciation | 4,118,000.00 | (8,607,680.39) |
| Reserve for depreciation – surplus property for sale | | (14,353.39) |
| **Prepaid and Deferred Charges** | | |
| Prepaid taxes: | | |
| I.T.B. | 992,000.52 | |
| Additional taxes paid | 2,664.10 | 994,664.62 |
| Stationery and office supplies | | 25,613.04 |
| Job orders: | | |
| I.T.B. | 378,183.24 | |
| Additional expenditures | 7,378.54 | 385,561.78 |
| **TOTAL ASSETS (as adjusted)** | | **$81,460,467.99** |

- 7 -

## II. LIABILITIES

Current
Reserve for Income Tax:

| | | |
|---|---:|---:|
| I.T.B. | $ (528,387.42) | |
| Non-assessed deficiencies | 399,982.00 | |
| Credit | (1,618,755.79) | $(1,747,161.21) |

All Other Current Liabilities

| | | |
|---|---:|---:|
| Vouchers payable | | (598,028.06) |
| Liabilities for goods received - not invoiced: | | |
| I.T.B. | (3,289,543.68) | |
| Payable to Esso Export | 2,074,938.58 | (1,214,605.10) |
| Individuals and companies: | | |
| I.T.B. | (475,612.46) | |
| Payable to Esso Export | 29,793.70 | (445,818.76) |
| Excise, sale and gasoline taxes: | | |
| I.T.B. | (2,845,689.39) | |
| Payment | 644,728.68 | (2,200,960.71) |
| Income and other taxes collected: | | |
| I.T.B. | (39,179.66) | |
| Payment by Esso Export | 132.50 | (39,047.16) |
| Unclaimed wages | | (1,130.25) |
| Deposits of cash | | (25,556.58) |
| Salaries, wages and commissions payable | | (52,923.65) |
| Thrift, annuity and vacation savings plans | | (4,692.45) |
| Disability benefits payable | | (4,724.25) |
| Survivors' benefits payable | | (35,314.13) |
| Other accrued taxes payable: | | |
| I.T.B. | (664,714.82) | |
| Tax accrual not assessed | 206,867.00 | (457,847.82) |
| Accrued insurance payable: | | |
| I.T.B. | (12,449.98) | |
| Insurance payment | 4,500.00 | (7,949.98) |
| Accrued rentals payable | | (11,800.00) |
| Miscellaneous accrued liabilities | | (926.47) |
| Unredeemed merchandise coupons | | (6,701.86) |
| Liabilities - deposit on returnable containers | | (13,395.00) |
| Long Term Debt | | |
| Long term notes payable | | (1,298,755.83) |
| Purchase obligations | | (34,122.82) |
| Deferred Interest Income | | (17,711.94) |
| Reserve for Annuities | | (1,554,691.00) |
| TOTAL LIABILITIES (as adjusted) | | ($ 9,774,465.09) |
| NET WORTH (as claimed) | | $71,686,002.90 |

In connection with "Other Investments", the claimant has included "Stock Owned" which pertains to 1,174 shares of stock of the Ferrocarriles Occidentales de Cuba, S.A., and has claimed the cost of such shares in the total

CU-0938

- 8 -

amount of $117,400.00. In support of the claim for loss of stock interests in this corporation, claimant has submitted photostatic copies of the certificates and data concerning the purchase of the shares in question. The certificates were originally held in the Havana Office of The First National Bank of Boston but no quotations were available after the purchase date indicating the market value of the shares. Thus, the Commission has previously held that the value of these shares is the original cost of such shares, or $100.00 per share. (See <u>Claim of Ruth Anna Haskew</u>, Claim No. CU-0849.) The Commission now finds that claimant has sustained a loss in the claimed amount of $117,400.00 for its stock interest in Ferrocarriles Occidentales de Cuba, S.A.

It is noted that the item of Loans Receivable in the amount of $2,421,834.54 includes a loan of Essosa, as of March 21, 1960, to Cia. Cubana de Electricidad in the amount of $75,000.00. The records of the Commission reveal that Cia. Cubana de Electricidad is a corporation organized under the laws of the State of Florida. Pursuant to the provisions of Section 505(a) of the Act, a claim based upon a debt of a corporation qualifying as a national of the United States, within the contemplation of the Act, may not be considered unless the debt was a charge on property which was nationalized or otherwise taken by Cuba. There is no evidence to establish that the instant loan was secured by property taken by Cuba. Accordingly, the Commission finds that this sum of $75,000.00 is not within the purview of Section 505(a) of the Act and therefore

- 9 -

must be deducted from the total assets, reducing the asset figure to $81,385,467.99. (See Claim of Anaconda American Brass Company, Claim No. CU-0112, 1967 FCSC Ann. Rep. 60.)

Essosa was a corporation organized in Panama and the Commission has been determining the extent of loss arising from the operations of Essosa in Cuba. Consequently, the Commission will determine the net worth of the Cuban branch, not merely its Cuban assets, when arriving at the extent of the losses in the instant claim. Accordingly, the amount of $9,774,465.09, the total liabilities, including taxes, debts and accounts payable, as enumerated above, must be deducted from the adjusted value of the assets to reach the net value of the Cuban branch of Essosa resulting in a net worth of $71,611,002.90.

The Commission concludes that claimant herein, STANDARD OIL COMPANY, suffered a loss in the total amount of $71,611,002.90 within the meaning of Title V of the Act, as a result of the intervention on July 1, 1960, of the Cuban branch of Essosa, a Panamanian corporation, wholly owned by claimant.

The Commission has decided that in certification of losses on claims determined pursuant to Title V of the International Claims Settlement Act of 1949, as amended, interest should be included at the rate of 6% per annum from the date of loss to the date of settlement (see Claim of Lisle Corporation, Claim No. CU-0644), and in the instant case it is so ordered.

CU-0938

- 10 -

## CERTIFICATION OF LOSS

The Commission certifies that STANDARD OIL COMPANY suffered a loss, as a result of actions of the Government of Cuba, within the scope of Title V of the International Claims Settlement Act of 1949, as amended, in the amount of Seventy-one Million Six Hundred Eleven Thousand Two Dollars and Ninety Cents ($71,611,002.90), with interest at 6% per annum from July 1, 1960, to the date of settlement.

Dated at Washington, D. C.,
and entered as the Proposed
Decision of the Commission

SEP 3 1969

_____
Leonard v. B. Sutton, Chairman

_____
Theodore Jaffe, Commissioner

_____
Sidney Freidberg, Commissioner


NOTICE TO TREASURY: The above-referenced securities may not have been submitted to the Commission or if submitted, may have been returned; accordingly, no payment should be made until claimant establishes retention of the securities for the loss here certified.

The statute <u>does not provide for the payment of claims</u> against the Government of Cuba. Provision is only made for the determination by the Commission of the validity and amounts of such claims. Section 501 of the statute specifically precludes any authorization for appropriations for payment of these claims. The Commission is required to certify its findings to the Secretary of State for possible use in future negotiations with the Government of Cuba.

NOTICE: Pursuant to the Regulations of the Commission, if no objections are filed within 15 days after service or receipt of notice of this Proposed Decision, the decision will be entered as the Final Decision of the Commission upon the expiration of 30 days after such service or receipt of notice, unless the Commission otherwise orders. (FCSC Reg., 45 C.F.R. 531.5(e) and (g), as amended, 32 Fed. Reg. 412-13 (1967).)

CU-093B