## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
                                          )
EXXON MOBIL CORPORATION,                  )
                                          )
            Plaintiff,                    )
                                          )
v.                                        )        Civil Action No.: 19-1277 (APM)
                                          )
CORPORACIÓN CIMEX, S.A., *et al.*,        )
                                          )
            Defendants.                   )
———————————————————————— )

## STIPULATION AND [PROPOSED] ORDER

Plaintiff Exxon Mobil Corporation ("Plaintiff") and Defendants Corporación CIMEX, S.A. (Cuba), Corporación CIMEX, S.A. (Panama), and Unión Cuba-Petróleo (collectively, "Defendants"), by and through their undersigned counsel, agree and stipulate as follows:

1.      In reviewing the filed transcript of the oral argument held by Zoom on March 10, 2021 (ECF 56), both Plaintiff and Defendants have identified a limited number of instances where counsel misspoke or were not audible and distinct enough for completely accurate transcription. They have jointly marked the attached copy of the transcript with the corrections they wish to make.  Those corrections are located on pages: 9-10, 14-15, 19, 21, 26-27, 31, 35, 37-40, 43, 45, 49-50, 53-54, 56-65, 67-69, 71-73, 75-79, 81, 83-84 and 86-87, Neither Plaintiff nor Defendants have objections to the other's corrections.

2.      The Parties respectfully submit the attached for the Court's consideration in its

deliberations on the Defendants' motions that were heard on March 10, 2021.

Dated: April 5, 2021

By:___/s/ Michael Krinsky_____          By:___/s/ Steven K. Davidson_____

Michael Krinsky (USDC, DC #NY0302)          Steven K. Davidson (DC Bar #407137)
Lindsey Frank (USDC, DC #NY0301)            Michael J. Baratz (DC Bar #480607)
RABINOWTIZ, BOUDIN, STANDARD,               Jared R. Butcher (DC Bar #986287)
KRINSKY & LIEBERMAN, P.C.                   STEPTOE & JOHNSON LLP
14 Wall Street, Suite 3002                  1330 Connecticut Ave NW
New York, NY 10005                          Washington, DC 20036
mkrinsky@rbskl.com                          sdavidson@steptoe.com
Telephone:  212-254-2831                    Telephone:  202-429-3000
Facsimile:  212-674-4614                    Facsimile:  202-429-3902

*Counsel for Defendants*                    *Counsel for Plaintiff*


                                            SO ORDERED


                                            _____
                                            HON. JUDGE AMIT P. MEHTA
                                            UNITED STATES DISTRICT COURT
                                            FOR THE DISTRICT OF COLUMBIA

# Appendix

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EXXON MOBIL CORPORATION,        )
                                )
          Plaintiff,            )
                                )     CV No. 19-1277
       vs.                      )     Washington, D.C.
                                )     March 10, 2021
CORPORACION CIMEX S.A., ET AL., )     2:04 p.m.
                                )
          Defendants.           )
_____ )


        TRANSCRIPT OF ORAL ARGUMENT VIA ZOOM PROCEEDINGS
           BEFORE THE HONORABLE AMIT P. MEHTA
              UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          Steven K. Davidson
                            Jared R. Butcher
                            Michael J. Baratz
                            Eugene J. Silva
                            STEPTOE & JOHNSON LLP
                            1330 Connecticut Avenue, NW
                            Washington, D.C. 20036
                            (202) 429-8077
                            Email: sdavidson@steptoe.com


For the Defendants:         Michael Krinsky
                            Lindsey Frank
                            RABINOWITZ, BOUDIN, STANDARD,
                            KRINSKY & LIEBERMAN, P.C.
                            14 Wall Street
                            Suite 3002
                            30th Floor
                            New York, NY 10005
                            (212) 254-1111
                            Email: mkrinsky@rbskl.com

APPEARANCES CONTINUED:

Court Reporter:              William P. Zaremba
                            Registered Merit Reporter
                            Certified Realtime Reporter
                            Official Court Reporter
                            E. Barrett Prettyman CH
                            333 Constitution Avenue, NW
                            Washington, D.C. 20001
                            (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
 1                    P R O C E E D I N G S
 2            DEPUTY CLERK:  Good afternoon, Your Honor.
 3  This is Civil Action 19-1277, Exxon Mobil Corporation versus
 4  Corporacion Cimex S.A., et al.
 5            Steven Davidson, Jared Butcher, Michael Baratz,
 6  and Eugene Silva for the plaintiff.
 7            Michael Krinsky and Lindsey Frank for the
 8  defendants.
 9            THE COURT:  All right, Counsel.  Good afternoon.
10            Can everybody hear me all right?
11            MR. KRINSKY:  Fine, Your Honor.  Thank you.
12            THE COURT:  Okay.
13            Mr. Davidson?
14            MR. DAVIDSON:  Yes, Your Honor.
15            THE COURT:  Okay.  So ordinarily, I'd tell
16  everybody to have a seat to start out, but -- at least in
17  this case, but you're already seated.
18            There is, to say the least, a fair amount to get
19  my arms around here, and I've done my yeoman's efforts to
20  try and do so after the last many days.
21            So let me propose the following course of action
22  here this afternoon:
23            As I have sort of gone through the papers, I view
24  sort of there to be sort of six issues, and I'm sort of
25  prepared to address the parties' arguments in this order,
```

1    and I think it's essentially consistent with what you all --
2    how you all have framed it.
3          But the first question concerns the LIBERTAD Act
4    and whether it essentially is an independent grant of
5    subject-matter jurisdiction to include the abrogation of
6    sovereign immunity with respect to any claims against
7    agencies and instrumentalities of a foreign state.  That
8    seems to me to be sort of the threshold question 1.
9          If the answer is "no" and it's FSIA, Foreign
10   Sovereign Immunities Act, that applies to the question of
11   immunity, the question -- the threshold question there is,
12   does the expropriation exception trump the commercial
13   activity exception in this case.  So that's question 2.
14         Question 3 is, if the -- well, question 3 and 4,
15   respectively, are, does the expropriation exception apply or
16   does the commercial activity exception apply.
17         And then question 5 -- and maybe I said there were
18   six questions, I really meant five questions -- is the one
19   concerning due process and personal jurisdiction and whether
20   the defendants are essentially -- this is my term -- the
21   alter egos of the state, and, therefore, not entitled to
22   personal jurisdiction -- excuse me, to due process
23   protection, and, therefore, I don't need to worry about a
24   minimum-contacts analysis.
25         So those are sort of the five main questions that

1    I have sort of gleaned from the papers.  I know there's at

2    least one challenge to standing.  And I'm happy to hear

3    counsel address standing, if you wish, but I've sort of --

4    I've read your arguments and am fairly comfortable with the

5    standing inquiry.  But I thought the other -- these five

6    other big picture, big topics were the subject of -- would

7    be the subject of further discussion on these issues.

8          So with that, let me sort of get everyone's

9    reactions and see if that makes sense to proceed in that

10   fashion.  And maybe we can even just do this question by

11   question instead of granting a chunk of time to one side and

12   another chunk of time to the other side.

13          MR. KRINSKY:  For the defendants, Your Honor,

14   we think that's fine, makes a lot of sense.

15          THE COURT:  Okay.

16          Mr. Davidson, is that okay with you?

17          MR. DAVIDSON:  Yes, Your Honor.

18          THE COURT:  Okay.

19          All right.  So why don't we start out with this

20   first issue, and that is the question of whether the

21   LIBERTAD Act -- the plaintiffs have argued that the LIBERTAD

22   Act itself is a grant of subject matter jurisdiction,

23   including abrogation immunity, and the defendants, not

24   surprisingly, think otherwise.

25          So why don't we start there, Mr. Krinsky, and I'll

1   hear argument on that and then I'll probably have some

2   questions for you along the way.

3          MR. KRINSKY:  Very good, Your Honor.

4          I think the answer lies in the following

5   circumstances:

6          Title III does not explicitly override or create

7   an additional exemption to the FSIA.  It does not explicitly

8   say it is a new head of subject-matter jurisdiction.

9          The provisions in the bill that would have done

10  just that, both things explicitly, were deleted as the bill

11  went through Congress.

12         THE COURT:  Can I ask about that?

13         I mean, there are -- let me sort of ask a couple

14  of textual questions and then I'll ask you sort of a

15  big-picture question.

16         The first textual question is, I mean, there are

17  elements within the LIBERTAD Act that are sort of a genus,

18  if you will, of subject matter jurisdiction, and not just

19  the granting of a private right of action, as you've

20  suggested.

21         So, for example, there is an amount in controversy

22  provision under 6082(b), which I think you would agree with

23  me, is something that goes to the Court's subject-matter

24  jurisdiction and is not sort of private-right-of-action

25  criteria.

1            So I mean in light of that, shouldn't I look at

2    this Act as doing more than simply granting a private right

3    of action and that I should be doing more and actually grant

4    subject-matter jurisdiction --

5            MR. KRINSKY:  I think it -- I'm sorry, Your Honor.

6            THE COURT:  -- to include the abrogation immunity?

7            MR. KRINSKY:  We think it's just to the opposite

8    effect, Your Honor.

9            It addressed certain things.  It addressed FSIA

10   provisions on execution.  It changed the amount in

11   controversy.  It did all these things explicitly.  But what

12   it did not do was explicitly say there's a new exemption to

13   FSIA immunity and there is no subject-matter jurisdiction.

14           And this was against the backdrop -- importantly,

15   against the backdrop of the Supreme Court saying I don't

16   know how many times by 1996, and the Circuit saying, by

17   1996, FSIA is exclusive source of jurisdiction.

18           So it addresses -- and I'll add to that:  Congress

19   has repeatedly amended the FSIA explicitly, but not this

20   time.

21           THE COURT:  I'm sorry to interrupt.

22           I guess the big-picture question to me is this,

23   which is:  It strikes me as a little odd, maybe it's not, I

24   suppose, but one could say, look, Congress has, in this

25   statute, constructed a fairly detailed construct in order to

1    sue persons, including sovereign persons, agencies and

2    instrumentalities, who traffic in confiscated goods.

3            It seems odd that Congress, at least implicitly

4    here, hasn't abrogated the immunity of an agency and

5    instrumentality that still possesses those confiscated goods

6    and traffics in those goods, and that courts would be asked

7    to look to the FSIA to determine immunity abrogation, when

8    the entire purpose of the statute is to be able to bring

9    causes of action against a person, to include agencies and

10   instrumentalities, that would have possession of this

11   property and traffic in this property.

12           MR. KRINSKY:  They still can bring actions against

13   agency of instrumentality that possess confiscated property,

14   if they can meet the FSIA expropriation exception.  It's not

15   a dead letter.

16           The expropriation exception says that if an agency

17   possesses -- I'm sorry, owns or uses, operates expropriated

18   property and it is engaged in commercial activity in the

19   United States, then it is subject to suit.

20           And that's an enormous impact.  That means that if

21   trade is resumed between the United States and Cuba, these

22   companies which are operating expropriated property cannot

23   sue in the United States -- cannot start doing business with

24   the United States without being subject to suit under the

25   FSIA and Title III.  So this is not by any means a dead

1   letter.

2          We should also remember, Your Honor, that --

3          THE COURT:  But, of course -- I guess,

4   Mr. Krinsky, but, of course, at the time Congress passed

5   this statute, there was an ongoing trade with Cuba to any

6   substantial degree.

7          And it just -- it strikes me that having to

8   satisfy -- if the interpretation is that Congress also

9   insisted that the expropriation exception be satisfied in

10  the FSIA, it would substantially curb an American person's

11  ability to do the very thing Congress wanted to do, which

12  was to recover for the confiscated property that continued

13  to be used in the commercial activity.

14         MR. KRINSKY:  But they didn't want to sweep aside

15  the limitations of the FSIA.

16         Where is the indication that it wanted all that

17  far?  Why -- I mean, there were provisions that would have

18  done just that.  Literally, explicitly, there were

19  provisions in the bill as introduced and it went through

20  Committee.  And then when it got further through Committees,

21  consideration of committees, it was deleted.

22         THE COURT:  So couldn't another reasonable

23  inference of that action be that Congress thought the Act

24  *self-delivered on their authority did it itself; in other

25  words, we already took care of that immunity abrogation, we

1    don't need to add expressly to the Act itself.

2              MR. KRINSKY:  But we see no indication of that.

3         And that's quite an assumption to make, given that

4    the Supreme Court has said the FSIA is exclusive source of

5    jurisdiction.  And they've said that multiple times, that if

6    you want to amend a prior law, particularly a jurisdictional

7    law, you better use those words, "immunity" -- use the words

8    "immunity," use the word "jurisdiction."

9              That's the background against which Congress

10   legislated.  And in the very same session of Congress, the

11   second session in the same Congress, they amended the FSIA

12   in a different way explicitly.

13        So the pattern of how Congress goes about amending

14   the FSIA, the fact that there was a bill to do just what

15   that assumption says Congress wanted was deleted, other

16   provisions of the FSIA were explicitly amended and yet this

17   was not.

18             Everything else about what Congress may have

19   intended, I submit, would be speculation.  And all the

20   presumptions of statutory construction that we rely upon,

21   which the courts have emphasized so strongly, nothing is

22   stronger than the presumption against Congress meant what it deleted from the

23   legislation during the process and on and on and on.

24             All those weigh, I would submit, weigh too heavily

25   in order to make an assumption of speculation that's what

1    Congress might have wanted.  That's why there are these

2    rules of statutory construction.  That's why there's a

3    presumption, strong presumptions, so we're not left to

4    wonder what we should do speculating on purpose.

5              THE COURT:  Okay.

6              Mr. Krinsky, I don't have any further questions on

7    this issue.  If you want to -- if there's more you want to

8    add, I'm happy to hear it.

9              MR. KRINSKY:  No, Your Honor.  I'm fine.

10             THE COURT:  I'm sorry?

11             MR. KRINSKY:  I'm fine, Your Honor.

12             THE COURT:  All right.

13             So I'll turn it back to Mr. Davidson.

14             And then we'll continue this game of ping-pong,

15   given that you're the movant, Mr. Krinsky.  You can also

16   have a couple minutes of rebuttal, if that's something you

17   wish to have.

18             Mr. Davidson.

19             MR. DAVIDSON:  Yes.  Thank you, Your Honor.

20             And I think doing it in this method is helpful and

21   it allows us to focus on each particular issue as we go.

22             As to this one, Your Honor, I mean, I think your

23   questions to counsel in many ways sum up our position.

24             And if I could state it in a very general way,

25   this is a specific statute to deal with a particular

1    situation, not a general statute.

2              And the statute itself and the words of those who

3    enacted it make clear that an agency or instrumentality of a

4    foreign state can be sued; that this legislation was

5    necessary to provide "protection against confiscations by

6    foreign nations, particularly given the absence of fully

7    effective remedies."  So the statute itself, which is, of

8    course, our first and most important starting point, is, in

9    our view, explicit in giving this right.

10             The question then becomes, which has been raised

11   by defendants, what about the FSIA?  And I think,

12   Your Honor, and I think what we've submitted compels the

13   result, that Congress intended for litigants like our client

14   to avoid the thicket of the FSIA.

15             In the statute itself, Congress made clear to us

16   that it did not intend for claims like ours to be barred by

17   the FSIA.  And the language of the statute says, except as

18   provided in this chapter, Title 28, which includes the FSIA,

19   and the rules a court apply to this.  So what that means to

20   us --

21             THE COURT:  I guess -- you know.

22             MR. DAVIDSON:  -- is --

23             THE COURT:  I know you've sort of grappled -- or

24   you hung your hat -- can you hear me okay?

25             MR. DAVIDSON:  Yeah.  If you could turn up your

1    volume a little bit --

2              THE COURT:  Oh.  Let me see.

3              MR. DAVIDSON:  -- if you don't mind, Your Honor.

4    It might be a bad speaker on my end.

5              THE COURT:  Is that any better?

6              MR. DAVIDSON:  That's better.  Thank you.

7              THE COURT:  All right.

8              MR. DAVIDSON:  Sorry to make you do that.

9              THE COURT:  Yeah.  No.  That's all right.

10             That clause except as otherwise -- as provided in

11   the subchapter strikes me as a pretty thin read to hang your

12   hat on when it comes to abrogation of immunity.

13             I mean, the statute nowhere mentions the word

14   "immunity."  And I think Mr. Krinsky's right, at least

15   insofar as, don't I have to assume and presume that Congress

16   knew, when it was legislating, that it legislated against

17   the knowledge of what the FSIA requires, one; and, two, how

18   the Supreme Court had interpreted the FSIA, which was, at

19   least since *Amerada Hess*, if not earlier, to say, this is

20   the exclusive means by which jurisdiction is had over

21   foreign sovereigns, and that includes their agents and

22   instrumentalities.

23             And so against that backdrop to -- isn't it a bit

24   of a stretch to suggest that Congress abrogated silent

25   immunity in a clause that starts, except as provided in the

14

1    subchapter?

2              MR. DAVIDSON:  A couple responses, Your Honor.

3              One, I think -- remember the timing here:  FSIA is

4    an earlier statute, hence precedes the Helms-Burton Act.  So

5    like a lot of things, I guess, with legislative history or

6    interpretation, I think the fact -- those facts can be used

7    in our favor to suggest Congress knew what it was doing and

8    made clear in the grant of jurisdiction and the ability of a

9    litigant to sue, that a litigant could sue an agent or an

10   instrumentality of a foreign state.

11             If they weren't setting forth the specific grant

12   of jurisdiction to do that, there would be no need to refer

13   to an agency or instrumentality of a foreign state because

14   the FSIA would probably control that.

15             Our view is that here, there was a specific      that

16   situation that Congress was dealing with and they made

17   clear.  And we have a number of quotes from the legislators
                                                  bill
18   who voted on and passed this ~~work~~ that suggest to us very

19   strongly that that was their intention.

20             And when President Clinton signed this, he said,

21   "An act" -- "The Act is an immediate step to protect the

22   interests of American citizens whose property was

23   expropriated by the Cuban regime."

24             So to us, admittedly, we would be on even stronger

25   ground if it made clear in the explicit language on ~~the~~

1    immunity.  But we believe, given what they've said and given

2    statutory construction rules, that is, a subsequent, more

3    precise rule should trump an earlier, more general one, that

4    those two elements give us a grant of subject-matter

5    jurisdiction.  The Act is replete with quotes about, this

6    gives citizens a right to go to court, immediate action, a

7    cause of action against the people who took property or

8    traffic in it.

9            And then on the *Amerada Hess* point, Your Honor,

10   which is one, obviously, we need to deal with, what I would

11   suggest about *Hess*, Your Honor, is that the Court itself,

12   when it issued the decision, made clear that there were

13   limits on its holding.

14           I would direct Your Honor to page -- to 488 U.S.C.

15   at 438.  There, the Court says, in our view, limiting its

16   holding, this is not a case where a more general statute is

17   claimed to have repealed by implication an earlier statute

18   dealing with a narrower subject.

19           So unlike the general-jurisdiction statutes that

20   the litigant in *Hess* was trying to rely on -- remember,

21   there was an admiralty statute and other general grants of

22   ~~amounts~~ jurisdiction not specific to a sovereign.

23           In our case, we would say, it fits squarely within

24   the limitation set forth by the *Hess* court, where here, we

25   have a more specific subsequent statute that deals precisely

1    with the issue at hand.  So that's our argument, Your Honor.

2              THE COURT:  Mr. Davidson, can you just provide

3    that citation one more time?

4              MR. DAVIDSON:  Sure.  It's *Amerada Hess*, which is

5    488 U.S., and the pincite is 438.

6              THE COURT:  All right.  I just wanted to have the

7    pincite.  Okay.

8              So would your position be the same hypothetically

9    if this was the -- if your suit was against an agency or

10   instrumentality of a sovereign other than Cuba?

11             Say hypothetically one of the oil rigs --

12   I believe there's an oil rig involved at some of the

13   property here -- that an oil rig that was owned by Esso that

14   was appropriated by Cuba was then sold to Venezuela and

15   Venezuela was using that oil rig to drill for oil, would it

16   be your position that this statute also abrogates the

17   immunity of the downstream purchaser, even --

18             MR. DAVIDSON:  Well, assuming that entity, in your

19   hypothetical, the Government of Venezuela, was trafficking

20   in confiscated property, we would say Title III would give

21   us subject-matter jurisdiction, because the hook is

22   trafficking in confiscated property.

23             THE COURT:  And when you say "subject-matter

24   jurisdiction," that term, as you know, encompasses a lot of

25   different concepts.

1          The narrower question here is, would you agree or

2    is it your position that in that hypothetical scenario,

3    Title III would abrogate Venezuela's immunity?

4          MR. DAVIDSON:  In the sense that Title III would

5    continue to take precedence over the FSIA with respect to

6    the immunity of the state.

7          THE COURT:  Right.

8          I think your answer has to be "yes."

9          MR. DAVIDSON:  Yes.

10          And our answer would be "yes," because that's the

11    consequence, according to Congress, for anyone, including a

12    state, that traffics in confiscated property.

13          THE COURT:  Okay.

14          All right.  Well, those are the questions I had,

15    Mr. Davidson.  Did you have anything else you wanted to add

16    on this topic?

17          MR. DAVIDSON:  No, Your Honor.  I think I've given

18    you the sum of our argument, Your Honor.

19          THE COURT:  Very good.

20          Mr. Krinsky, I'll give you a couple minutes for a

21    rebuttal here.

22          MR. KRINSKY:  Thank you, Your Honor.

23          The first point I was going to add was the point

24    Your Honor made about agencies of other countries.

25          And it's not an insignificant point.  It's not

1    just Venezuela, Your Honor.

2              At the time --

3              THE COURT:  That's just the one that came to mind.

4              MR. KRINSKY:  Of course.

5              At the time, the trade was with Canada, with

6    Spain, with Germany, with the U.K., all those countries were

7    trading with Cuba, were entering into joint ventures with

8    Cuba.  And most countries all have agencies or

9    instrumentalities that engage in business.

10             And I would submit, it's inconceivable that

11   Congress, without saying a word of concern about this or the

12   impact of this, would have suddenly exposed them to new

13   lawsuits which otherwise could not have been brought under

14   the FSIA.

15             THE COURT:  Pause on that real quick, because

16   I have to confess, I've probably been thinking about this

17   too narrowly.

18             But in your view, say, for instance, the Cuban oil

19   company had entered into a joint venture with a Spanish

20   energy producer, and the Esso oil rig was being used to

21   drill for oil.  In your view, the Spanish company or the

22   Spanish entity would be trafficking in confiscated property?

23             MR. KRINSKY:  Oh, yes.

24             THE COURT:  Because --

25             MR. KRINSKY:  I mean, there was not an Esso oil

1    rig, by the way, but to use it as a hypothetical.

2            And, in fact, Your Honor, that was the main thrust

3    and concern of Helms-Burton.  All of these other countries

4    were beginning to invest in Cuba, and particularly in the

5    form of joint venturers.  And the legislative history and

6    the language of the statute is very clear:  That would

7    subject them to trafficking liability.  The idea that we

8    would take away the immunity of all of our allies without

9    saying one word about it is really hard to accept,

10   Your Honor.

11           The other point I would want to make, and just to

12   put it in context, yes, the embargo at that moment in March

13   1996 was pretty strong, but the history of the embargo has

14   gone up and down, opened and closed.

15           The Supreme Court said, in one of the cases we

16   litigated, *Zemel versus Rusk*, for travel, it contracts and

17   it collapses -- I'm sorry, it contracts and it expands, and

18   that's the history of it.  And maybe one day it would be

19   entirely eliminated.  There's a bill pending in Congress to

20   repeal Helms-Burton.  The Obama Administration opened up

21   trade and relations tremendously.

22           So there would have been, and there will be, if

23   trade opens, substantial opportunities for Title III

24   lawsuits that meet the agency -- the ~~FSA~~ FSIA expropriation

25   exception.

1          THE COURT:  Okay.

2          MR. KRINSKY:  And one last point, because I don't

3     want to abuse my time, Your Honor, my friend, Mr. Davidson,

4     says, there was all this talk about people making -- in the

5     legislative history, about wanting to be able to sue, and it

6     was a lot of talk.

7          But none of that talk was about the FSIA, except

8     for the FSIA -- the provisions that would have amended the

9     FSIA were deleted.

10          THE COURT:  Are you aware of any legislative

11     history that explains the deletion?

12          MR. KRINSKY:  The only answer -- believe me,

13     Your Honor, we've looked.

14          The only insight is the bills were referred to

15     foreign affairs committees in both Senate and the House.

16     The House was moving forward.  The other committees that had

17     jurisdiction waived their jurisdiction.

18          After it came out of the subcommittee in the

19     House, there was consultation with the other committees,

20     including the Judiciary Committee.  And then after that,

21     this provision -- these provisions disappear.

22          I don't know what the Judiciary Committee and the

23     foreign affairs committee said to each other, but that's the

24     best we can find that gives a hint, a glimpse in time, of

25     what happened.

1          THE COURT:  All right.  Well, that's helpful.

2          All right.  Well, thank you, Mr. Krinsky.

3          Let's move -- unless there's anything further,

4    let's move to --

5          MR. DAVIDSON:  Your Honor, I don't know, could I

6    respond briefly on that point?  If not --

7          THE COURT:  Sure, Mr. Davidson, I'll give you a

8    couple seconds.

9          MR. DAVIDSON:  The hypothetical about suing, about

10   Venezuela or Canada or so on, I remember a few things,

11   Your Honor, that, one, the statute talks about agents and

12   instrumentalities, not necessarily states, so I think it's

13   limited in that regard.  And, two, the other countries have

14   reacted very negatively to Helms-Burton and have passed

15   blocking statutes in many instances to prevent its

16   application.  So I would suggest those countries are worried

17   about their agents and instrumentalities and believe that

18   this statute could apply to them.

19          So, again, narrowly, it's a narrow question

20   dealing with Helms-Burton, and I think Congress has the

21   power, of course, to determine who gets immunity in the

22   United States courts, and they've determined agents and

23   instrumentalities who traffic in confiscated material don't

24   get immunity.

25          THE COURT:  All right.

1          Well, let's turn to sort of my question 2, and

2    that is the question of, if the LIBERTAD Act does not

3    provide an independent grant of subject-matter jurisdiction

4    to include the abrogation of immunity, and that we have to

5    look to the FSIA for the immunity question.

6          The plaintiffs here -- excuse me, the defendants

7    here have argued that it's the expropriation exception that

8    must apply and that it trumps the commercial activity

9    exception in this case.  The plaintiffs have suggested

10   otherwise and argued that either exception can apply.

11         So let's turn to that question.  And, Mr. Krinsky.

12         MR. KRINSKY:  Yes, Your Honor.

13         Yes, we argue that the expropriation exception

14   alone must apply, and the reason is that the action presents

15   the classic expropriation scenario.

16         The state takes the property and then an agency

17   takes possession of it and operates it for commercial

18   purposes.  That is almost always -- and that's the phrase

19   that one of the courts we cite uses, that is almost always

20   the case.  So if there is nothing -- so if the commercial

21   activity exception applies, then it applies in almost every

22   case, and there is really nothing left to the expropriation

23   exception.

24         The expropriation exception, as the Supreme Court

25   reminded us just a couple days ago in *Phillip*, but it's

1    obvious anyway, it has very distinctive limitations.  It is

2    dealing with a very sensitive subject.  It is dealing with a

3    subject -- it's the only country in the world, the United

4    States, it's the only country in the world that has such an

5    exception.  So applying the commercial activity exception

6    eviscerates the statute and its particularities.

7            THE COURT:  Here's my question, which is, isn't

8    this case different in the following sense:  The cases that

9    you've cited and that you've relied on largely are cases in

10   which -- you know, for example, the *Rong* case from our

11   Circuit, is a case that actually -- in which the claim

12   arises from the expropriation directly.  And the claim is,

13   for example, for a taking, an international taking.  That

14   was the case, for example, in *Helmerich & Payne*.

15           This is different.  This is a statutory claim

16   that's based upon the trafficking activity and not the

17   expropriation.  It's true that the property at issue needs

18   to be confiscated, but the property -- it's the trafficking

19   of the property that gives rise to the liability here.

20           So why isn't this -- why doesn't that make this a

21   different case in which the commercial activity exception is

22   still in play, unlike in those other cases where all of the

23   causes of action are sort of arising from the

24   expropriations?

25           MR. KRINSKY:  Well, the other cases -- I beg to

 1    differ, Your Honor.

 2            The four cases we cited, two in this district,

 3    were claims for unjust enrichment from the defendant's

 4    commercial use of expropriated property.

 5            They also had an expropriation claim, some anyway,

 6    but the claim was a common law claim for unjust enrichment

 7    for the commercial use of expropriated property, and that's

 8    the same as Title III.

 9            And, in fact, one of these plaintiffs, quite

10    aptly, said, its claim was really one for trafficking, he

11    used the word "trafficking."  So I don't -- is the common

12    law version of --

13            THE COURT:  Mr. Krinsky, can you repeat what you

14    just said a couple seconds ago.  I missed what you said.

15            MR. KRINSKY:  It was brilliant, Your Honor, and

16    you missed it.

17            THE COURT:  I know.  That's why I wanted you to

18    repeat yourself.

19            MR. KRINSKY:  The four cases we cited, two in this

20    district, had claims for unjust enrichment --

21            THE COURT:  Right.  I got that point.

22            MR. KRINSKY:  -- for commercial use of the

23    expropriated property.  That's on all fours with Title III.

24    It's based on common law, unjust enrichment.

25            This is statutory unjust enrichment, and, in fact,

1    the legislative history and the findings in Title III called

2    it unjust enrichment, a claim for unjust enrichment.

3            In those cases, the Court said -- the Court said,

4    no -- yes, you have stated a claim for common law unjust

5    enrichment, but you have to satisfy the expropriation

6    exception.

7            So I think these claims are -- in fact, they're --

8    there's no basis for distinguishing them, Your Honor.

9            THE COURT:  I mean, you know, *Sachs* --

10   Supreme Court's decision in *Sachs*, it's a case about

11   commercial activity exception and they recognize this.  And

12   it's premised on the interpretations and the statutory text

13   based on -- that appears in the FSIA.

14           But why shouldn't I sort of similarly look at what

15   the gravamen of the claim is here in the same way that the

16   Supreme Court did in *Sachs* and look at what the gravamen of

17   the claim is, what needs to be proven to establish the

18   claim.

19           In this case, what needs to be proven to establish

20   the claim is the trafficking.  That's the guts of the claim.

21   That's what gives rise to the liability, though concededly

22   the confiscation is an element of the claim.

23           So looking at it from that lens, I have a hard

24   time believing that this Congress that crafted this statute

25   that focused on trafficking would not have contemplated the

1   commercial activity exception as a way to abrogate immunity,

2   particularly when trafficking itself is defined in terms of

3   commercial activity.

4           MR. KRINSKY:  Yes.

5           Well, I think there are two answers, Your Honor.

6   One is, we would debate that the gravamen is the commercial

7   use.

8           If you look to *Sachs*, you know, what makes it

9   wrongful?  What makes it wrongful is the expropriation, the

10  taking of the property without appropriate compensation.

11  There's nothing wrong with selling or whatever you're doing

12  commercially.  So I think it is at least a debatable

13  question.

14          THE COURT:  Until Helms-Burton suggested

15  otherwise.

16          In other words, you're right, I think that the

17  selling of expropriated property or confiscated property by

18  itself may not be a problem, although it now becomes one and

19  when you've got a statute that specifically makes it

20  wrongful and gives rise to a private right of action.

21          MR. KRINSKY:  The ~~side~~ second point, though, Your Honor,

22  which I would make, which dovetails in some ways, is,

23  I think that the more secure and appropriate and, I think,

24  actually compelled analysis is the analysis in *Rong*.

25          The gravamen test in *Sachs* was a way of trying to

27

1   keep each category of exemption under the FSIA within its

2   proper bounds and applied in the proper way.  That's what

3   the gravamen test was meant to do.

4        *Rong* very specifically, and these other cases,

5   very specifically says, what does that mean?  How do we

6   preserve the structure and the integrity of the FSIA and the

7   expropriation exception?  And they come to the conclusion

8   that if you allow the commercial activity exception to

9   apply, that's the end of the expropriation exception.

10        So, as I say, I think the gravamen concept is

[handwritten: what makes the conduct]

11   debatable.  Where is the real gravamen, ~~because one makes~~

12   ~~the context~~ really wrongful in the eyes of the

[handwritten: a surer]

13   United States.  But ~~assura~~ guide, and the one I think is

14   compelled is -- I have to ask the question:  What would be

15   left of the expropriation exception if the commercial

16   activity exception is applied, and I think the answer is:

17   Nothing.  And I think that is an unacceptable -- I mean,

18   legally unacceptable result.

19        THE COURT:  All right.  Anything further on this

20   topic, Mr. Krinsky?  I'll turn it over to Mr. Davidson.

21        MR. KRINSKY:  I'll reserve for reply, Your Honor.

22        THE COURT:  Okay.  Mr. Davidson.

23        MR. DAVIDSON:  All right.  Thank you, Your Honor.

24        Your Honor, I think the analysis starts and could

25   even end, though there is case law on this point, obviously,

1   with the statutes.

2          The question is, does the commercial activity

3   exception and the expropriation exception apply to certain

4   events?  And they have certain statutory requirements.

5          And Mr. Krinsky suggested that the commercial

6   activity exception would essentially swallow the

7   expropriation exception, but I don't see how that would be

8   the case.  They both have different standards of conduct

9   that have to be found to apply, either commercial activity

10  or rights and property taken in violation of international

11  law.  I mean, those are the gravamen of the cases.  So I

12  would say there is no conflict -- or this is what I would

13  call a clever lawyerly argument to try to make one go away.

14         THE COURT:  I mean, it's clever except that it

15  seems to have some traction in various Circuit decisions.

16  And I think these Circuit decisions seem to reflect the

17  reality that once property is expropriated or confiscated,

18  it's not just, then, held.  It's actually put to commercial

19  use.  That's why you confiscate it in the first place,

20  right?

21         So if a claim arises from a confiscation, one can

22  presume there will always be commercial activity that

23  follows.  And so if that's true, then what's the purpose of

24  the expropriation exception at all?  When would it ever be

25  used if you can simply rely on the commercial activity

1    exception?

2            And I think the point that underlies this concern,

3    as far as I understand it, is that expropriation is the kind

4    of sovereign act that is sort of uniquely sovereign, and we

5    want to review this fairly restrictively and the

6    circumstances in which an expropriation can be found to have

7    given rise to an abrogation of immunity.

8            And so I think that's what courts are thinking,

9    and I think that's what Mr. Krinsky's argument is.  So

10   I guess why shouldn't that logic apply here since the claim

11   here does in a sense arise from the initial expropriation.

12           MR. DAVIDSON:  I would -- in response, Your Honor,

13   first, I would direct Your Honor to the case law of this

14   Circuit, and particularly the *Foremost-McKesson* case

15   involving Iran, in which the Court said flatly that there is

16   no per se rule when there is a claimed conduct that,

17   perhaps, grew out of an expropriation that has commercial

18   activity.

19           And to put a finer point on it, here, Helms-Burton

20   talks about what the action is, which is trafficking.  And

21   it doesn't say that -- it talks about someone who took

22   property, traffics in.  Here, those facts give rise

23   potentially to two exceptions.  And the cases

24   *Foremost-McKesson*, *Rong*, *De Csepel*, I think, make clear that

25   if the gravamen of the case is a commercial activity, the

1   commercial activity exception still applies and could apply

2   if the facts are sufficient under the law.  And I think

3   those cases make clear that in a case like ours, a litigant

4   has both exceptions at its disposal.

5           And remember, of course, this doesn't mean that

6   the exceptions have been proven, it just means that they're

7   potentially available.  And there are very different sets of

8   legal theories underlying each of these two different

9   exceptions, and we would have to prove and win that we

10  satisfy the different legal hooks of these two exceptions.

11          But I believe it's fair to say there is no per se

12  rule, and certainly not in this Circuit.  And even the other

13  cases from other Circuits do not establish such a per se

14  rule.

15          THE COURT:  Yeah.  It's interesting.  In

16  *Foremost-McKesson*, actually it's an interesting case just

17  because part of the discussion by the Circuit was that the

18  takeover in that case of the U.S. entity by the Iranian

19  government, the Court seemed to acknowledge was both

20  governmental and commercial in nature, and ultimately

21  concluded that there was -- it was sufficiently commercial

22  in nature to have the commercial activity exception apply,

23  as opposed to something else.

24          I'm not so sure that's true here in the sense

25  that, at least as I understand it, it was fairly clear that

1    the expropriation here took place as a result of sovereign

2    acts, correct?  And as I understand it, the Government of

3    Cuba issued decrees or legislation that require the taking

4    of the property?

5         MR. DAVIDSON:  Right.  It was pursuant to Cuban

6    law 451, I forget the number, but the law that allowed --

[851]

7    caused the plaintiff's property to be expropriated in 1960.

8         But again, Your Honor, I would -- we would submit

9    that those facts can potentially give rise to two

10   exceptions.  It doesn't mean, as I said, that they

11   necessarily -- the facts allow for both to be found, they

12   may, but at this stage on a motion to dismiss, we're just

13   talking about whether they can potentially apply.

14        And here, based on the law of this Circuit, I

15   think it's clear, respectfully, Your Honor, that they both

16   can apply and be adjudicated.

17        THE COURT:  So I guess to put a finer point on it,

18   I mean, if commercial activity follows every expropriation,

19   in your view, a litigant, a plaintiff could rely on either

20   exception in every case?

21        MR. DAVIDSON:  I think so, Your Honor.

22        I mean, I think here, it's a unique situation

23   because the statute is aimed at agents and instrumentalities

24   that didn't exist at the time of the taking.  So we have the

25   right -- we can prove under international law that these --

1    this property was taken in violation thereof, but we can

2    also prove that a commercial activity applies because of the

3    trafficking.

4              So the answer to your question, Your Honor, would

5    be, I would think that it should be left to the pleading and

6    proof, rather than preliminarily saying the two exceptions

7    are somehow inconsistent with each other and can't apply.

8              And even if one found them to be potentially

9    inconsistent, which I'm not suggesting they are, it's no

10   different than a plaintiff claiming alternative theories of

11   relief.  At some point, if they actually are in conflict

12   with each other, we would have to choose.

13             We don't think they are and both can be pursued,

14   but I think at this stage of the case without proof to

15   deprive the plaintiff the ability to have one of these

16   exceptions apply, we think is premature and unwarranted

17   based on the law of this Circuit and at this stage of the

18   case, Your Honor.

19             THE COURT:  All right.  Thank you, Mr. Davidson.

20   Anything further?  I'll give Mr. Krinsky the last word here.

21             MR. KRINSKY:  No, Your Honor.  I'm fine.

22             THE COURT:  All right.  Well, let's, then, turn to

23   these exceptions, and you all have spent a lot of time on

24   them, starting with the expropriation exception and let's

25   start there.

1            And I actually want to start with Mr. Davidson on

2   this subject, because I wanted to --

3            MR. DAVIDSON:  It's never a good thing,

4   Your Honor.

5            THE COURT:  Well, I wanted to be clear on what it

6   is that you are asserting Exxon's property right is here.

7            Am I right that your assertion of the property

8   right here is Exxon's right to the property of its sub,

9   Esso -- I may be mispronouncing that -- that is, that sort

10  of indirect ownership of the sub's assets.  Is that the

11  property right you're claiming has been infringed here?

12           MR. DAVIDSON:  More or less, Your Honor.

13           But first and foremost, our property right is as

14  the owner of a certified claim, and that as an owner of

15  certified claim, by virtue of the enabling legislation, it

16  is conclusive proof of ownership and it is given a

17  presumption of proof, obviously, to its value and its

18  validity.  So, one, our ownership claim comes through that.

19           Two, we would -- I'm sorry, Your Honor.

20           THE COURT:  Let me pause there for a second.

21           If that's your property right, I guess I don't

22  understand how that property right has been violated by

23  international law; in other words, the claim is something

24  that arose from the claimed violation, right?  I mean, you

25  went and you got a claim after the property was taken.

1    I don't understand how if the claim itself is the property
2    right, how that property right has been violated by an
3    expropriation in violation of international law.
4            MR. DAVIDSON:  Well, I think there are two bases
5    for our claim; one is the ownership and two is the indirect
6    ownership through the subsidiary.
7            This was a subsidiary of then-Standard Oil, which
8    is the same entity that is the plaintiff in this case just
9    by virtue of two name changes, first to Exxon and then to
10   Exxon Mobil Corporation.
11           So it is a property right and we think, as the law
12   of this Circuit says, that this indirect ownership right is
13   sufficient and the Helms-Burton cases that have been
14   litigated to date, which are cited at our opposition at 41,
15   the *Garcia* case in particular, show that indirect ownership
16   is sufficient to give rise to a property right that can be
17   litigated under Helms-Burton.
18           THE COURT:  Well, I think -- and there's certainly
19   no doubt that an indirect interest gives right to a property
20   right under Helms-Burton in terms of domestically, U.S. law.
21           But let me ask you, would you agree with me that
22   the property right under the expropriation exception, that
23   property right is one that's defined by international law?
24           MR. DAVIDSON:  I think the property right is
25   defined by the claim process, and the executive gave --

1    ~~through~~ the executive adjudicated in 1970 what the property

2    rights are, and they're set forth in the claim.

3            THE COURT:  That's not -- I mean, I didn't --

4    I mean, you'll tell me -- please tell me if I'm wrong, but I

5    read the Circuit's remand decision in *Helmerich & Payne*.

6            And I read that to mean that the question of

7    whether there is a property right is one that's determined

8    by international law in the first instance.  And you'll

9    remember in that case, there was a determination that there

10   was no property right because international law didn't

11   recognize an expropriation of a national -- taking of a

12   governmental of its own national property.  So there was no

13   property right there, no violation of international law.

14           But with respect to the holding company, there was

15   a violation, and it was recognized in international law that

16   the property right was that of the shareholder and the

17   rights attendant to being a shareholder.  And so that's why

18   I started with you, because I didn't see that you had

19   asserted that your rights as a shareholder were the ones

20   that were violated here, but, rather, it's this sort of

21   indirect ownership of the assets of the sub.

22           MR. DAVIDSON:  Well, I would submit, Your Honor,

23   that it is -- that comes with our rights as a shareholder,

24   that the rights of our subsidiary or the property of our

25   subsidiary were confiscated.

1            I think to answer the question that preceded that,

2    the rights and property taken in violation of international

3    law is the applicable standard here under the exception.

4            So I think to answer your question, it would have

5    to be rights and property taken in violation of

6    international law and that -- and there -- as you know,

7    there's extensive briefing in each side's papers on what

8    that means and whether there has been a violation of

9    international law, which we submit there has been.

10           THE COURT:  And so where would I look, in your

11   view, for the proposition that it is a violation of

12   international law, that a country violates international

13   law, property rights of a foreign shareholder in its sub's

14   assets?

15           MR. DAVIDSON:  Well, Your Honor, we would direct

16   your attention to our opposition brief.

17           THE COURT:  Because I think it's the *Barcelona*

18   *Traction* case from the International Court of Justice,

19   I guess, from 1970 or so, seems to say just the opposite,

20   which is that there is no recognized property rights of a

21   shareholder to its assets of its subsidiary, even a

22   wholly-owned subsidiary.  And that to the extent

23   international law recognizes the rights of a shareholder,

24   those rights that are attendant to a shareholder, the right

25   to vote, the right to attend meetings, the right to receive

1    dividends.

2          MR. DAVIDSON:  Well, we would direct Your Honor's

3    attention to our brief beginning -- the discussion begins on

4    page 42, but the guts of it is on page 43, where we say Esso

5    was plaintiff's wholly-owned subsidiary.

6          And then we say, customary international law

7    recognizes that a shareholder may bring a claim for

8    expropriation of property held by the company in which it

9    holds shares.  And for that proposition, you'll see we cite

10   various decisions from the Iranian Claims Tribunal that

11   wrestled with that very question in a number of its

12   decisions.

13         THE COURT:  Right.

14         MR. DAVIDSON:  So that is the support we provide

15   for that.

*Argentine-Total*

16         And in addition, there's the ~~Argentine Total~~ case,

17   an ICSID case, where international law -- which if you carry

18   over to page 44 of our brief and there are other

19   international-type cases, arbitration cases, and claims

20   tribunal cases cited there.

21         THE COURT:  I want to just --

22         MR. DAVIDSON:  And we attempted to distinguish the

23   *Barcelona* case.

24         THE COURT:  I want to just say the following,

25   I mean, you know, in *Foremost* -- I'm sorry, not

1  *Foremost—McKesson.*

2           In *Helmerich & Payne*, the Circuit was pretty clear

3  that these type of bilateral agreements that may define what

4  property and property interest is as the U.S. in an Iranian

5  Claims Tribunal is, doesn't necessarily establish customary

6  international law, right?

7           I mean, these are bilateral agreements.  They

8  don't necessarily rise to the level of customary

9  international law.  So I'm not sure how terribly persuasive

10  it is to look at the Iranian Claims Tribunal cases in light

11  of *Helmerich & Payne*.

12           MR. DAVIDSON:  Well, I think in particular with

13  regard to the Iranian Claims Tribunal, I think ~~it's more~~

14  that body is more than a bilateral investment, I think,

15  treaty-type resolution.  I mean, that was adjudicating

16  questions of international law as it applied to these

17  takings.  And I think there, the case law that comes from

18  that tribunal can be used in an effort to define what

19  customary international law is, Your Honor.

20           THE COURT:  Okay.  That's helpful.  Thank you,

21  Mr. Davidson.

22           Anything further on this topic, or at least on

23  this narrow issue?  And we can talk more broadly about the

24  expropriations exception.  I just wanted to make sure I

25  understood what your position was on the property issue.  We

1   can, perhaps, talk a little bit more, if we need to, on the

2   violation of the various issues Mr. Krinsky's raised about

3   whether this is a violation or not.

4          Mr. Krinsky, your response and thoughts on what

5   we've just been talking about?

6          MR. KRINSKY:  Yes, Your Honor.

7          I have a few things to say, and I'll try to work

8   in reverse order in which Mr. Davidson addressed them.

9          The treaties and the arbitral decisions which he

10  cites actually show conclusively the opposite.  They are

11  about provisions that were added expressly and purposely

12  because customary international law did not provide the

13  parent company with the right to make a claim for the taking

14  of a subsidiary's property.  And it's not only my reading of

15  that, that has been the United States Government's position,

16  which has been a party to some of these arbitrations, and it

17  has said it again and again and again.  So there is no

18  support for the proposition that Mr. Davidson has advanced.

19         International law, as stated in *Barcelona*

20  *Traction*, with the addition that *Helmerich* indicated and

21  which is the position of the United States Government, is

22  when all of the assets of the subsidiary are taken,

23  literally all of the assets, nothing is left, then the

24  D.C. Circuit and the United States Government, have said that be the

25  equivalent of the taking of the shares.

1          THE COURT:  Right.

2          But they don't even allege that here.

3          MR. KRINSKY:  Excuse me?

4          THE COURT:  They don't even allege that here.

5          In other words --

6          MR. KRINSKY:  Excuse me?

7          They don't allege that.

8          And it's clearly not the case, Your Honor, I mean,

9     undisputed proof.

10          And Esso had assets outside of Cuba, had business

11    outside of Cuba.  It continued without interruption until

12    today.  It's in existence in operation in Panama, Standard

13    Oil or Exxon Mobil owned the shares ~~in~~ until 2012 and then it sold

14    these shares to Puma Energy, a third-country company.  So

15    that exception or extension of Barcelona Traction that the

16    Court in *Helmerich* recognized has no application here.  The

17    international law is clearly what, as Your Honor, I believe,

18    has indicated under *Barcelona Traction* and *Helmerich* itself.

19          The second thing I want to mention, Your Honor, is

20    to clear up this business about the Foreign Claims

21    Settlement Commission.  The Foreign Claims Settlement

22    Commission, first it confers no rights, it's a certification

23    to the Secretary of State for her to use in diplomatic

24    negotiations with Cuba.

25          But even more fundamentally, the mandate of the

1    Foreign Claims Settlement Commission includes interest and

2    not just rights in property.  And it includes indirect

3    interests, not only direct interests.  And indeed for that

4    reason, it hears and determines, as it's required by

5    statute, the claims of parents for the taking of their

6    subsidiary's property.

7           And that's all that the Foreign Claims Settlement

8    Commission did or could do in the case of Standard Oil's

9    claim.  It certified the damages suffered by Standard Oil

10   with a taking -- to its interest of -- resulting from the

11   taking of its subsidiary's property.  That fits within the

12   FCSC.  It fits in maybe what the Secretary of State wants to

13   talk about with Cuba.  But it doesn't fit within the FSIA

14   under *Helmerich*.

15          And Title III doesn't advance that at all, doesn't

16   advance the plaintiff at all.  Title III's provision says

17   the FCSC decision shall be taken as conclusive proof of the

18   ownership of an interest.  That's the word, an interest in

19   property, not of a right, but of an interest in property.

20   So the FCSC provision, I would suggest, Your Honor, gets the

21   plaintiff nowhere.

22          THE COURT:  So let me ask you a question:

23          Do you read the expropriation exception to define

24   the property right -- let me put it differently, which is:

25   Could the expropriation exception refer to the property

1    right, and the property right as defined by domestic law;

2    in other words, one could in theory have a law that the

3    property rights recognize domestically but not by customary

4    international law, but that the violation -- the taking or

5    the abrogation of that or the infringement of that right

6    could violate an international law.  Does that make sense to

7    you?

8              MR. KRINSKY:  Yes.  I read it as international

9    law, Your Honor.

10             But what else is there a source of law?  I mean,

11   it's a Panamanian -- I think it's a moot point in a way,

12   because this is a Panamanian corporation.  We have an

13   affidavit under Panamanian law that the shareholder of a

14   Panamanian company does not have a right in the property of

15   the subsidiary.

16             THE COURT:  Which you'll have to -- can you just

17   remind me which declaration that is.

18             MR. KRINSKY:  Fábrega, Juan Pablo Fábrega.

19             And I just -- without wanting to burn the Court

20   too much, I just wanted to mention -- since *Garcia-Bengochea*

21   was mentioned, District Court decision in Southern District

22   of Florida.

23             THE COURT:  Right.

24             MR. KRINSKY:  But Judge King --

25             THE COURT:  That's okay.

1           I read the case.  I know it's a Title III case.

2   It doesn't have anything to do with the FSIA or the

3   expropriation ~~appropriation~~ exception.

4           MR. KRINSKY:  Okay.

5           THE COURT:  I didn't mean to cut you off, but I

6   knew what you were going to say.

7           MR. KRINSKY:  That's fine.

8           THE COURT:  Okay.

9           Can I shift your thinking and focus for one minute

10  here real quick.

11          Say hypothetically we got past this issue that

12  we've been talking about and when we do reach the question

13  that I am required -- or I do have to reach the question of

14  whether there actually has been a violation of international

15  law here, I mean, you've argued on multiple grounds that

16  there is not a violation of international law, including

17  that the taking here was justified for various reasons.

18          I mean, wouldn't that sort of conclusion require

19  me to go against the findings of Congress?  Isn't any

20  conclusion here that the taking by Cuba was justified, for

21  example?  You've suggested it was done, I guess, effectively

22  in self-defense.  That seems to me to flatly be

23  contradictory to what Congress had as the roots of its

24  findings for purposes of the LIBERTAD Act.

25          MR. KRINSKY:  No, Your Honor.

 1            THE COURT:  And how can I essentially countermand

 2    what Congress has already found?

 3            MR. KRINSKY:  Well, because of this special

 4    circumstance, the circumstances particular to the

 5    expropriation of the Esso property, Congress wasn't thinking

 6    and didn't say anything about the situation of the

 7    expropriation of the Esso property.  That property was not

 8    taken the same as all -- so many other companies in Cuba.

 9    I'll come back to whether Congress even addressed those

10    situations.

11            But we found -- there's nothing in Helms-Burton or

12    the legislative findings that address this situation.  The

13    situation is dramatic, Your Honor.  The situation -- and, in

14    fact, I think it presents a non-justiciable political

15    question.

16            The State Department published documents,

17    published in the late 1990s, show that President Eisenhower

18    asked Standard Oil to tell Essosa not to refine the Cuban

19    state's Soviet oil as part of the U.S. Government's plan to

20    overthrow the Cuban government.  We think that presents to

21    Your Honor a non-justiciable political question.

22            But in any event, it is nothing that was in the

23    mind of Congress.

24            THE COURT:  And I guess the question -- a further

25    question here is:  Is this something I can really resolve on

1  a motion to dismiss?  In other words, it seems to be that

2  this question is not one that's terribly fit for resolution

3  on the papers and is something that might require, at a

4  minimum, a hearing and testimony from experts on this

5  subject, if it's even one that I could consider.

6       MR. KRINSKY:  Well, Your Honor, we think -- you

7  know, I think the law is for the Court's ~~discretion~~ decision, but we

8  think it's pretty clear, Your Honor.

9       And it's not like we're making this up; it's not

10  like we're saying it.  We were very meticulous, Your Honor.

11  I spent a long time going through the State Department's

12  public records, and then I tried not to ~~even document it if~~ be argumentative in

13  ~~we're~~ presenting them.

14       THE COURT:  That lack of meticulousness is not a

15  criticism I would heed in your direction.

16       MR. KRINSKY:  So I'm not sure what else there is.

17       And I would suggest, Your Honor, that's going down

18  a path that the political question doctrine says you

19  shouldn't go down.

20       THE COURT:  Right.

21       MR. KRINSKY:  And in *Schneider* and in *Gonzalez*,

22  where the Circuit said political question precluded

23  reviewing the U.S. conduct towards the ~~Yende~~ Allende Government and

24  its supposed alleged support of a ~~coop~~ coup, the ~~coop~~ coup against the

25  ~~Yende~~ Allende, a hearing would be going down that path, Your Honor,

 1   and I don't think the political question lets you, frankly,

 2   unless you decide otherwise.

 3          THE COURT:  All right.  Look, I'm not any more

 4   interested in becoming a historian here than any other

 5   federal judge is.

 6          Mr. Davidson, I'll give you a couple minutes if

 7   you want to respond to what Mr. Krinsky said.

 8          MR. DAVIDSON:  Sure.

 9          To follow up on what Mr. Krinsky says, we don't

10   want a hearing or more briefs unless we're going to lose, in

11   which case we do.

12          But beyond that point, Your Honor, in some ways,

13   the international-law question is simple and in other ways

14   it becomes very complex.

15          The simplicity to us and why we believe this

16   motion to dismiss should be denied based on this point is

17   that the property of our subsidiary was confiscated and now

18   the State Department has said we can sue for that

19   confiscation and trafficking and that we have a remedy.

20   We're allowed to sue an agent or instrumentality for that.

21          In order to prove the exception -- the

22   applicability of this exception, we have to prove that the

23   rights were taken in violation of international law.  We

24   think the law is clear and simple that in an uncompensated

25   expropriation, that international law has been violated.

1          Now, defendants have raised a whole series of

2     issues trying to create a political question or others, that

3     if Your Honor needs to resolve, which I don't think

4     Your Honor does, this isn't the forum for that.  I mean, we

5     would need to have experts, we'd need to have evidence, we'd

6     need potentially discovery, cross-examination.

7          But in terms of the motion to dismiss, at this

8     stage, we believe it should be denied, because we think,

9     based on the simple predicate that I established, we survive

10    a motion to dismiss and can ultimately prove that this

11    exception applies.

12         THE COURT:  All right.

13         So we've been at this for about an hour and

14    15 minutes.  I've got a couple more topics we need to cover,

15    but I want to give the court reporter a break.

16         So why don't we all just take about ten minutes

17    and we'll resume at 3:25.  It's 3:15, okay?

18         MR. DAVIDSON:  That would be great.  Thank you,

19    Your Honor.

20         THE COURT:  Thanks, everyone.

21         (Recess from 3:15 p.m. to 3:16 p.m.)

22         THE COURT:  Okay, everyone.  Welcome back.

23         All right.  So I've got a couple more questions,

24    topics to cover this afternoon.

25         MR. KRINSKY:  Sorry.  Excuse me.

1          Your Honor, it's Michael Krinsky.  If I could just

2     go back to one point I forgot to mention on the prior

3     discussion.

4          THE COURT:  Okay.

5          MR. KRINSKY:  It's that I'm not sure what

6     Mr. Davidson exactly was suggesting, but I think the

7     Supreme Court in *Helmerich*, the Supreme Court in *Helmerich*

8     made it clear that the question of violation of

9     international law must be decided at the motion-to-dismiss

10    stage, Your Honor.

11         THE COURT:  Right.  Right.  Or soon thereafter.

12         MR. KRINSKY:  Or soon thereafter.

13         THE COURT:  Okay.

14         Well, let's talk about the commercial activity

15    exception, there's a lot to unpack on that front.

16         So, Mr. Krinsky, let's begin with you on the

17    commercial-activity issue.

18         MR. KRINSKY:  Yes, Your Honor.

19         As Your Honor knows, it's based upon an act

20    outside the United States that causes a direct effect in the

21    United States.

22         And let me first address it as to CUPET.

23         THE COURT:  Hang on.

24         MR. KRINSKY:  Yep.

25         THE COURT:  Before you do that, before you get

1    into the specifics as to each of the defendants, let me just

2    sort of ask some questions that are applicable to all of

3    them.

4         The first is, I want to make sure you agree with

5    me on this legal principle, which is that the term "direct

6    effect" means something other than harm or injury to the

7    plaintiff.  Would you agree with that statement?

8         MR. KRINSKY:  Sure, Your Honor.  I think

9    *Bell Helicopter* settled that for the Circuit.

10        THE COURT:  Okay.

11        So the direct effect here can be something less

12   than an actual injury, and, in fact, direct effect need not

13   be to the plaintiff, it can be to a third party in theory in

14   the United States.

15        MR. KRINSKY:  I actually don't think so,

16   Your Honor.

17        And I think it could be to the plaintiff or it can

18   be to someone in privity with the plaintiff.  We have cases

19   of sort of interlocking contracts on -- ~~a cruise-control~~ the *Cruise Connections*

20   case is like that.

21        We have *Atlantica* in the Second Circuit, which was

22   discussed at EIG, where it was the same tort that injured

23   people in the United States and outside the United States.

24        But we found no case where the plaintiff was a

25   complete stranger, complete stranger to the effect of the

1    United States and --

2          THE COURT:  Because didn't the Second Circuit in

3    *Atlantica* hold that the injury need not be to the plaintiff?

4          It may be true as a factual matter that there was

5    a plaintiff who was injured, but didn't they hold that the

6    FSIA doesn't require injury to the plaintiff?

7          MR. KRINSKY:  Yes, but it was in the context of --

8    I think what I mentioned, which is, there was proximity to

9    it.  And that's not what the plaintiff here is -- and our

10   opposition.  It's a total, complete stranger to everything

11   that they talk about ~~it~~ being ~~in~~ an effect.  It has nothing to

12   do with them at all, not even their brothers and sisters.

13         THE COURT:  What about the other -- another sort

14   of threshold question here, and that has to do with

15   Congress's findings.  But why doesn't Congress's findings

16   sort of end the debate here about direct effect?

17         MR. KRINSKY:  Because of *Weltover*.

18         THE COURT:  I'm sorry?

19         MR. KRINSKY:  Because of *Weltover*, Your Honor.

20         THE COURT:  Why is that?

21         MR. KRINSKY:  Immediate consequence without

22   intervening event, flowing -- great language:  Flowing in

23   direct line without deviation or interruption.  That's the

24   Circuit's and *Weltover*'s standing.

25         THE COURT:  Right.

1          But Congress, for example, makes a finding that

2    the trafficking -- this is 22 U.S.C. 6081(6):  "Trafficking

3    in confiscated property provides badly needed financial

4    benefit, including hard currency, oil and productive

5    investment and expertise, to the current Cuban Government

6    and thus undermines the foreign policy of the United States

7    - to protect the claims of United States nationals who had

8    property wrongfully confiscated by the Cuban government."

9          That seems to be a congressional finding about

10   some effect in the United States.  It's at paragraph 9.

11         MR. KRINSKY:  That's an effect, but I think it is

12   clearly indirect effect, not what *Weltover* has in mind,

13   should be, though.

14         This, it affects foreign policy, it affects

15   foreign policy under one Administration and not in another

16   Administration.

17         There are so many -- I mean, what could be more

18   complicated than international relations and what could be

19   more complicated than international relations between the

20   United States and Cuba?

21         I'm not trying to be facetious, Your Honor, but

22   this is not the interlocking -- this is not the direct

23   effect without intervening events by third parties that the

24   direct effect is about.

25         It may have been and it was sufficient concerns

1   for the Congress to want to get into this area that it saw

2   the national interest being injured, but that's not -- that,

3   I would submit, is far from what *Weltover* is talking about.

4         THE COURT:  And even if -- you know, Congress here

5   in paragraph 9 of that section says, international law

6   recognizes that, "a nation has the ability to provide for

7   rules of law with respect to conduct outside its territory

8   that has or is intended to have substantial effect within

9   its territory."

10        I mean, it seems unmistakable to me that Congress

11  used that substantial-effect language.  And it's hard to

12  believe that if they're legislating against the FSIA, as you

13  argued earlier, that substantial-effect language doesn't

14  carry some meaning here.

15        MR. KRINSKY:  Well, I think it carries meaning,

16  but it doesn't carry the meaning of direct effect.

17        Yes, you know, this is Congress legislating in the

18  national interest.  It's not addressing FSIA direct effect.

19  It is stating its goals, its concerns.  Cuba is a problem.

20  Cuba has always been a problem.  It has an impact on the

21  United States.  It has an impact on the people here.  It has

22  impact on the companies.  But that's not -- I would submit,

23  Your Honor, that's far from direct effect under *Weltover*.

24        Direct effect is -- it follows inexorably.  That's

25  the language that's used in one of the Circuit decisions.

53

1    One step to the other.  Cause and effect.  Nothing in

2    between.

3                 And so these broad legislative findings, I suppose

4    there are -- Helms-Burton was a controversial piece of

5    legislation, but I suppose there's all kinds of findings

6    about effects on the United States in all kinds of

7    legislation.  I don't think that does the job under

8    *Weltover.*

9                 THE COURT:  All right.

10                Well, let's talk about the specifics then.  You

11   were going to start with -- I can't remember whether you

12   were going to start with CUPET or CIMEX.

13                MR. KRINSKY:  Pardon, Your Honor?  I didn't hear

14   you.

15                THE COURT:  I said, let's talk specifics.  I can't

16   remember whether you were going to talk about CUPET or CIMEX

17   first.

18                MR. KRINSKY:  I'll start with CUPET, Your Honor.

19                And, you know, the language is based upon an act

20   outside of the United States that causes a direct effect ~~of~~ in

21   the United States.

22                It's pretty hard to see where plaintiff has come

23   forward with anything about that.  I mean, not surprisingly,

24   given that there's an embargo in oil, there's some

25   exemptions ~~and~~ for remittances and so forth.  CUPET is not in

1   that business.  There's an embargo ~~order~~ on oil:  Transactions with

2   CUPET are prohibited by law.

3          ~~Any~~ In any event, CUPET -- ~~that~~ and it's not alleged -- does

4   not sell to the United States, it does not buy ~~to~~ from the

5   United States, it has no ~~contract to~~ contracts with the United States.

6   It's not engaged in remittance business.

7          Even if -- which ~~if isn't~~ it hasn't -- even if plaintiff

8   could show -- or has come forward and can show that it's

9   involved in the service stations beyond selling them gas,

10  the allegation is Western Union contracts with Fincimex,

11  Fincimex contracts with CIMEX.  There's no CUPET in that.

12          Doesn't engage in the ~~purpose~~ purchase of food stuff that

13  winds up on the shelves of these service stations.  Even

14  according to plaintiff, that's ~~Allenport~~ Alimport to CIMEX.  CUPET is

15  absent.

16          This talk -- and, you know, when you break it down

17  and you look at what they're saying is, there's

18  solicitations and discussions about off-shore oil spills,

19  dealing with that, no contract, lobbying the United States

20  Government ~~on~~ at state-to-state meetings.

21          And then we have this business in 2010 with

22  *Societá Générale* and the Dutch trader, which, if you look at

23  the statement --

24          THE COURT:  What about the general proposition

25  they've advanced, which is that there's direct harm here or

1  direct effect from the fact that CUPET continues to use

2  these assets and it affects their competitive playing field,

3  if you will, in the oil markets and that has an effect on

4  Exxon, it has an effect on other American oil consumers?

5          MR. KRINSKY:  That's financial harm, which is not

6  enough.

7          And it's not -- it doesn't satisfy *Weltover*.

8  I mean, I can't think of the number of intervening events

9  and players in that notion of global competition.

10          And it's global competition outside the

11  United States.  It's not even global competition in the

12  United States.

13          CUPET can't sell in the United States, can't do

14  any business in the United States.  It's prohibited by U.S.

15  law.  U.S. companies can't do business -- can't do business

16  in Cuba, it's prohibited by U.S. law.

17          So their competition is financial harm, but that's

18  not enough, plus it has all these intermediary intervening

19  events.

20          THE COURT:  Why isn't -- I mean, it seems like

21  *Foremost-McKesson* is probably the best case or the most

22  analogous case to what we have here.

23          And there, the Court held, I think it was on a

24  motion to dismiss, that the Iranian government's takeover of

25  the dairy through essentially appropriations of shares had a

1    direct effect in the United States.

2              MR. KRINSKY:  Well --

3              THE COURT:  Why isn't that what we have here?

4              MR. KRINSKY:  Well, first of all, Your Honor, the

5    flow goes to Panama, not to the United States, ~~and~~ as it's the

6    Panamanian company's property that was taken.  This flow

7    ended in -- this flow ended in 1960.  But if it continued

8    either then or now, the flow is to Panama, not to here.

9              And so I think at bottom, Your Honor is focusing

10   on the right issue, which is what they really have here is

11   financial harm, but financial harm doesn't do it.  And

12   what's -- on under *Bell Helicopter*, unauthorized use of

13   property.

14             THE COURT:  And I think you've taken even one step

15   further -- I'm curious what Mr. Davidson would say -- it's

16   not even direct financial harm.  It's financial harm in the

17   sense of value to shares.

18             MR. KRINSKY:  Exactly.

19             THE COURT:  And I suppose to the extent that

20   profits would roll up into a general balance sheet, it's not

21   direct harm.

22             MR. KRINSKY:  I'm sorry, I thought you were

23   talking to Ms. Davidson.

24             THE COURT:  I assume you would agree with that,

25   that it's not direct -- even if it's financial harm, it's

1    not direct financial harm, because it's either diminishment

2    or diminution of share value or a reduction of whatever

3    profits would roll up into the balance sheet of the parent

4    company.

5           MR. KRINSKY:  Exactly.

6           And we have the Second and Tenth Circuit cases

7    which talk about this exactly, ~~is~~ it's the harm to a subsidiary.

8    And, of course, if there's a harm to a subsidiary, there's a

9    ~~home~~ harm to the parent company.  But the Second and Tenth

10   Circuit said, well, that's indirect, not direct.

11          THE COURT:  Let's talk about CIMEX then.

12          Help me -- what's your -- help me with your

13   argument for why the two commercial activities that CIMEX

14   engages in, the remittance and the purchasing of food,

15   American food through an agent isn't enough to satisfy the

16   direct-effect test?

17          MR. KRINSKY:  The remittances have cause and

18   effect backwards.

19          Fincimex and CIMEX providing services in Cuba does

20   not cause the Cuban Americans to send remittances to their

21   relatives in Cuba.  There's not an effect.

22          THE COURT:  It's an effect in the sense that it's

23   a continuing course of business with the United States,

24   right?

25          I don't think it has to have an effect, either be

58

1   injurious or not.  Direct effect seems to me to capture the

2   notion that there is some effect of the commercial activity

3   in the United States.

4           And here, the allegation is that Cuban Americans

5   are sending millions of dollars to Cuba through facilities

6   owned by CIMEX.

7           MR. KRINSKY:  Yes, Your Honor, but is that a

8   direct effect?

9           It says it causes a direct effect.  It doesn't say

10  an effect from something that happens in the United States.

11  It says that what is done in Cuba has to cause an effect in

12  the United States.

13          THE COURT:  I mean, but for CIMEX at least making

14  available these facilities for remittances, Cuban Americans

15  would not be sending remittances to Cuba.  I mean, in other

16  words, without that facility, the ability to send the

17  remittances would not be possible.  And perhaps there's some

18  other party, but CIMEX is making them available.

19          MR. KRINSKY:  There are 500 remittance locations

20  in Cuba, Your Honor.

21          THE COURT:  I'm sorry?

22          MR. KRINSKY:  There are 500 remittance locations

23  in Cuba.

24          We figure that possibly four to ten are

25  remittances at service stations on Esso land.  But

59

1    whatever the number is, it is a small number.  And the

2    notion that that has ~~placed~~ <sub>played</sub> any kind of causal role here in

3    anything that goes on between the United States and Cuba, it

4    doesn't add up.

5              I would add, too, Your Honor, that we can't ~~figure~~ <sub>forget</sub>

6    ~~out~~ -- *Weltover* and the decisions ~~deciding~~ <sub>applying</sub> it, I think,

7    establish a pretty strong high standard.  And someone in the

8    United States has to decide to send the remittance, has to

9    decide whether to use Western Union and not someone else,

10   one of its competitors.  The family-member recipient in Cuba

11   has to go to -- has 500 choices where to pick that up, has

12   to go to this one.  That's not an ~~inextricable~~ <sub>inexorable</sub> sequence of

13   events, which I think is what *Weltover* talks about.

14             THE COURT:  You wouldn't dispute that it happens;

15   in other words, there are enough facts here to establish

16   that that chain that you've just established, that a Cuban

17   American goes to a Western Union, Western Union remits the

18   money to a CIMEX facility that was owned by Esso.  I mean,

19   that happens.  I don't know how frequently it happens,

20   I don't know what the value of the dollar is, but you would

21   agree with me that happens to some extent --

22             MR. KRINSKY:  Surely.

23             THE COURT:  -- perhaps not even on a daily basis.

24             MR. KRINSKY:  Surely.

25             But is it a cause of -- is what CIMEX -- Fincimex

the cause

1  are doing with respect to the Esso property, ~~of course~~, and

2  I would suggest not.

3         I think that the direct effect has some real bite

4  to it, Your Honor, some real meaning.  And the courts,

5  I think, for sure have struggled with how to define that,

6  how to cabin that.

7         But providing services in a foreign country for a

8  U.S. company, which is what we have here, doesn't seem to be

9  one of the situations.

10        And then you have other things.  You have,

11  Your Honor -- liability here is to set -- liability under

12  Title III is established -- completely established in full

13  simply by CIMEX taking possession, taking possession of the

14  service station.  That defines trafficking and full

15  liability for the value of the station.

16        So I mean, there's nothing --

17        THE COURT:  I'm not saying that it's not somewhat

18  attenuated --

19        MR. KRINSKY:  Excuse me, Your Honor?

20        THE COURT:  I'm not saying that it's not somewhat

21  attenuated, but it certainly does meet the definition of

22  trafficking, given how broad that definition is.

23        MR. KRINSKY:  Possession meets trafficking.

24        My point is, Your Honor, that courts often, not

locus

25  always, often look to where was the tort, ~~focus~~ of the tort.

1   ~~Focus~~ Locus of the tort is when Cuba -- CIMEX took possession of

2   the service stations.  They often look maybe at the change

3   of movement actually with -- is anything happening in the

4   United States that is legally significant to the ~~course~~ cause of

5   action.

6          Nothing in the United States is legally

7   significant to the cause of action.  Plaintiff has their

8   complete cause of action on the basis of CIMEX taking

9   possession of the service station.  It doesn't matter

10  whether or not remittances are serviced there, it doesn't

11  matter whether food is sold there.

12         THE COURT:  Let's talk about the food, then,

13  because at least as I understand your primary argument, is

14  that it's not CIMEX that's buying the food.  That's

15  purchased through an intermediary that is a separate

16  company.  I can't remember what the name of the company is.

17         MR. KRINSKY:  ~~Allenport~~ Alimport.

18         THE COURT:  Right.

19         So why does that matter?

20         I mean, why does it matter that in order to engage

21  in this commercial activity, they're using an agent to make

22  the purchases?

23         I mean, there's no dispute -- you're not disputing

24  that they do sell American food in these stores.  So why

25  does it matter that they're not buying the American goods

1   directly, as opposed to indirectly through an agent?

2           MR. KRINSKY:  Because first even on the

3   plaintiff's own proof, Your Honor, which are U.S. Government

4   reports, ~~Allenport~~ Alimport is not CIMEX's agent.  ~~Allenport~~ Alimport is under

5   the Ministry of Foreign Commerce, it's the principal buyer

6   of food for the whole country from all over the world.  It's

7   the exclusive buyer from the United States.  It buys and it

8   sells.

9           THE COURT:  But I mean, all it does is facilitate

10  the purchase of goods for CIMEX; I mean, in other words --

11          MR. KRINSKY:  For the whole country.

12          THE COURT:  I'm sorry?

13          MR. KRINSKY:  For the whole country.

14          THE COURT:  Yeah.  Fine.

15          But CIMEX has made the decision to carry American

16  goods in its stores.  And by virtue of the way Cuba has done

17  this, there's only one purchaser of American goods, and

18  presumably the U.S. is the only authorized purchaser of

19  American goods.

20          But CIMEX has seemingly, purposely injected itself

21  into the stream of commerce of U.S. goods by agreeing to

22  purchase and sell those goods.

23          MR. KRINSKY:  There's no proof of that,

24  Your Honor.

25          And the U.S. Government report itself says --

1    that's the plaintiff's only proof -- the U.S. Government

2    report says, ~~Allenport~~ [Alimport] decides we're going to buy from any

3    country in the world.  CIMEX doesn't tell it to buy in the

4    United States, and it doesn't say, send us U.S. food either.

5    It's up to ~~Allenport~~ [Alimport].

6             So we have a *Weltover* situation again; we have an

7    intermediary between what happens in Cuba and what happens

8    in the United States.  And it's not -- there's no proof of

9    being an agent.  The proof is the opposite.  Their own proof

10   is the opposite.

11            THE COURT:  How about, I can't --

12            MR. KRINSKY:  And I would also add -- I'm sorry.

13            THE COURT:  I forgot to ask you with respect to

14   Cuba -- well, sorry.  Different question.  Different

15   question.

16            Sorry.  Go ahead.  Go ahead.

17            I'll ask the question later.  It was a question in

18   connection with the personal jurisdiction issue.

19            MR. KRINSKY:  I also -- now, this is a fairly

20   important point in the context of this case.  Even if

21   Your Honor, I think, holds that selling -- having

22   remittances at a service station is a direct effect, it's

23   only a direct effect as to that service station.  And so not

24   100~~K~~ service stations, not 200 service stations, only to ~~the~~ [those]

25   ones.  And we say it's 4 to 10, and plaintiff has not said

64

1   the opposite.

2        Where these service stations -- where these

3   remittance service stations are on the website.  I mean,

4   there's a list.  ~~Plaintiff re-~~said ~~this~~ 4 to 10, that maybe

5   it's Esso land.  Plaintiff has not said otherwise.

6        And so we think the tail should not wag the dog.

7   And if there is -- if direct effect is established by

8   remittances, then it's only for those service stations.  And

9   similarly about the food, it's where the food is sold.

10  So I think that has some bearing here.

11       But I do think, Your Honor, that -- the basic

12  position we have, the basic understanding we have is that

13  doing a service in Cuba for a U.S. company is not a direct

14  effect, it doesn't cause the activity, and that's true of

15  both ~~Allenport~~, and that's true about -- I mean, the food

16  and about the remittances.

17       And when you look at all the other indicators of

18  how the courts have tried to grapple with what is direct

19  effect, they're not here, it doesn't injure the plaintiff.

20       THE COURT:  Of course, I guess the response,

21  Mr. Krinsky, is CIMEX doesn't have to do this; in other

22  words, CIMEX doesn't have to be the agent in Cuba for

23  Western Union, but it's chosen to do so.

24       Similarly, CIMEX doesn't have to purchase American

25  products, even if ~~Allenport~~ is the one that is doing the

```
 1    buying, but it's done so --

 2              MR. KRINSKY:  But why --

 3              THE COURT:  -- but it's done so.

 4              MR. KRINSKY:  Right.

 5              But why is that an effect, Your Honor, we would

 6    ask.

 7              The action is based upon taking over, without

 8    authorization, property in Cuba.  It is based upon

 9    possession of that property.  That's liability.

10              THE COURT:  Well, that's -- I disagree with that.

11              MR. KRINSKY:  And that doesn't have an effect on

12    the United States.

13              THE COURT:  I disagree with that.

14              I mean, the trafficking is not just about the

15    initial appropriation, it's not just about possession, it's

16    the use of the property.

17              And at least here, the allegation is that the

18    service stations are being used in two respects in

19    connection with the American marketing, remittances and the

20    buying and selling -- or purchasing of American goods that

21    can be resold to the Cuban public.

22              MR. KRINSKY:  Yeah.

23              Well -- yes.

24              Our view, Your Honor, is that -- well -- but then

25    there's no legally significant consequence -- act in the
```

1    United States, Your Honor.

2              Everything that's legally significant, even if you

3    take use, even if -- everything that's legally significant

4    takes place in Cuba, Your Honor.

5              And legally significant, plaintiff would have its

6    cause of action from CIMEX taking over, CIMEX selling gas.

7    Nothing turns on whether the remittances, as well as selling

8    gas, or U.S. foods are on the shelves.

9              THE COURT:  Right.

10             Can you --

11             MR. KRINSKY:  The next -- the tight nexus, the

12   tight cause and effect that we believe the courts have

13   grappled with to get to direct effect is absent here,

14   Your Honor, in our view.

15             THE COURT:  Okay.

16             All right.  Thank you, Mr. Krinsky.

17             Let me turn it over to Mr. Davidson and I'll give

18   Mr. Krinsky an opportunity for rebuttal on this issue, too.

19             So, Mr. Davidson, your thoughts.

20             MR. DAVIDSON:  Okay.  Thank you, Your Honor.

21             There's a lot in there.

22             THE COURT:  Yes.

23             MR. DAVIDSON:  Let me just -- I won't repeat

24   everything we say in our complaint or in our papers because

25   a lot of this is very factually intensive, but a few,

1    I think, overarching legal principles are important to

2    return to to understand this issue. [in order]

3              First is, the --

4              THE COURT:  Mr. Davidson, can I interrupt you?

5              Can I ask you to just tilt your screen toward you

6    a little bit?  Because that --

7              MR. DAVIDSON:  Is that better?

8              THE COURT:  Yeah, much better.

9              You're now centralized in the screen and I'm

10   getting more of you than your window.

11             MR. DAVIDSON:  Most people want to see less of me

12   rather than more.

13             THE COURT:  You're a handsome guy, right?

14   I'd rather see you than the window behind you.

15             MR. DAVIDSON:  But in any event, Your Honor, let's

16   talk about the legal principles before we get to the facts

17   that you and Mr. Krinsky were discussing.

18             The Helms-Burton statute, again, to us is sort of

19   the beginning and end to this.

20             In that statute, as Your Honor was saying a moment

21   ago, it's the unauthorized use of and proffered [profit] from the

22   confiscated property.  Here, the refinery and the service

23   stations, it causes a direct effect in the U.S.

24             We think that is another reason why this shows

25   that Helms-Burton, the statute itself controls and it

68

1    directs us to an outcome, we believe, with respect to direct

2    effect in the U.S. by saying so, but it also shows that, as

3    a way to determine sovereign liability, the Helms-Burton [Act]

4    does it on its own, ~~but~~ [so] I would point first and foremost to

5    that.

6             Second, there was much discussion that you and

7    Mr. Krinsky had about whether the injury need be felt by the

8    plaintiff or just a direct effect generally in the

9    United States, and there's no case that says the direct

10   effect has to be visited upon the plaintiff.

11            And, in fact, we would direct Your Honor's

12   attention to the *Cruise Connections Charter Management* case,

13   the D.C. Circuit case from 2010, 600 F.3d 661, where I think

14   the Court is pretty clear that the effect can be more

15   general, rather than plaintiff specific.  And to us, I think

16   that disposes of that question, though we can prove,

17   I believe, direct effects that happen to us; one, with

18   respect to the unsatisfied claim; and, two, with respect to

19   the competition that you've discussed.

20            THE COURT:  Let's put a hold on the competition

21   for a moment, because I want to get back to that in CUPET.

22            But let me ask you:  Is it your position, and if

23   it is, what's your best case for the proposition that a

24   direct effect can include injury to U.S. foreign policy

25   where Congress has explicitly recognized it?

1          I mean, that's what's Helms-Burton does.

2    It recognizes injury to foreign policy from trafficking in

3    confiscated property.  Now, Mr. Krinsky has said that's not

4    direct enough, and maybe he's right.

5          But I'm curious what you think the best case is

6    that would stand for the proposition that I could look to

7    U.S. foreign policy in a congressional finding to make a

8    determination of direct effect, because, you know, in all

9    the cases you all cited, I'm not sure I found anything that

10   was quite on point.

11         MR. DAVIDSON:  Well, probably not, Your Honor,

12   because the Helms-Burton is an unusual statute, and, again,

13   not to be repetitive, but we think it defines and controls

14   this.

15         It says the actionable conduct is trafficking, and

16   then it says what the effect of that trafficking is in the

17   United States.

18         In two ways at least, one is the effect on the

19   U.S. foreign policy, which is clearly stated in the statute

20   as a direct effect and a reason for the statute.  Another is

21   that these unsatisfied claims -- because, remember, the

22   claim is the essential piece of our cause of action, that

23   that -- the unsatisfied claim as the Congress said in 1996,

24   has a direct effect in the United States.

25         So we think that shows a direct effect as to us.

1    It also shows a direct effect which is allowed more

2    generally by virtue of the Circuit precedent with respect to

3    U.S. foreign policy.

4              And then we go to the direct effect --

5              THE COURT:  So let me just interrupt you.

6              Your line of logic is that you all are holding a

7    claim, and the logic of Congress was that by virtue of the

8    trafficking, that claim and the payment on that claim is

9    impaired, correct?

10             MR. DAVIDSON:  Correct.

11             THE COURT:  Okay.

12             MR. DAVIDSON:  Correct.

13             And we think the statute, as reflected in the

14   citations to it and quotations from it in our brief, go to

15   this point directly.

16             THE COURT:  And this discussion we've been having

17   about whether the plaintiffs are harmed or not in a sense is

18   academic, because you think you've had a direct effect,

19   which is the trafficking -- the continued trafficking in

20   confiscated property essentially impairs your claims, the

21   claims that you have.

22             MR. DAVIDSON:  Continued trafficking without

23   compensation.

24             THE COURT:  Right.

25             MR. DAVIDSON:  We find -- and that's a recognized

 1    effect and the essential piece of the statute.

 2            Then in terms of the specifics, I mean, one, I

 3    would say and remind us all that we're here on a motion to

 4    dismiss, and there are -- to the extent there are any

 5    questions about who said what, we believe the evidence

 6    overwhelmingly shows that we satisfy this exception.

 7            But we're here on a motion to dismiss.  And

 8    we believe that given that standard, recognizing that the

 9    standard is a little more lenient in terms of looking at the

10    evidence with respect to a sovereign's claim than, perhaps,

11    a private litigant.  But even with that view, I think we

12    have to realize that these facts are -- some of which are

13    unproven, some of are which are they say so to facts, and

14    not ones that are necessarily at all dispositive.

15            And we believe the facts that we have adduced on

16    direct effects in the United States, even if the FSIA

17    applies, which we think it doesn't, and even if you have to

18    go beyond the findings of the Helms-Burton, which we think

19    are sufficient, but even if we get down to that level and

20    look at the impacts -- the direct effects the United States

21    felt by trafficking in the refinery and processing

22    facilities in the trafficking in the service stations, we've

23    set forth in our papers and all the exhibits and attachments

24    all of the -- generally how -- all the commercial activity

25    undertaken by Cuba and CIMEX.

72

1          With respect to, in particular, direct effects in

2     the United States, we have competes in global markets with

3     joint venturers, which certainly has an impact as a

4     potential competitor on Exxon Mobil in the United States.

5     If you look at Exhibit 49 to the Butcher Declaration,

6     solicited foreign investment, invited conferrees from the

7     U.S., solicited financing, which we have at the Butcher

8     Declaration 17.20, trips to the U.S. to meet with government

9     officials.

10          These, we believe, have a direct effect in the

11     United States, in particular the competition, and that's on

12     the CUPET side.

13          And we've listed this in our complaint --

14          THE COURT:  And what case best stands for the

15     proposition that competition on global markets -- because

16     I don't think you're suggesting there's competition in the

17     United States, correct?

18          MR. DAVIDSON:  Well, it's competition in the

19     global markets as it impacts an American citizen.

20          THE COURT:  Right.

21          So framed in that way, is there a case that stands

22     for that proposition, that it has a direct effect in the

23     United States?

24          MR. DAVIDSON:  The case we would submit,

25     Your Honor, is the *EIG* case, the D.C. Circuit case from

73

1    2018.  I can find the citation.

2              THE COURT:  No, I'm very familiar with that case,

3    because --

4              MR. DAVIDSON:  Right.

5              THE COURT:  -- it was --

6              MR. DAVIDSON:  In that case --

7              THE COURT:  It's actually my case.

8              It was my case and it's back before me and they're

9    in discovery right now.

10             MR. DAVIDSON:  All right.

11             Well, as you -- I think as you well know, the

12   D.C. Circuit in that case said ~~sort of~~ activities

13   ricocheting around the world that eventually and ultimately

14   have some impact in the United States is sufficient.

15             So for the global competition theory that has an

16   impact in the United States, we would primarily rely -- in

17   addition to Helms-Burton, but we would rely ~~in~~ on the more

18   general FSIA jurisprudence of *EIG*.

19             THE COURT:  All right.  Good.

20             So you already answered one of the questions that

21   I had, which is, I wanted to be clear on what your stance

22   was on CUPET.  I mean, I think on CIMEX, it's obviously much

23   clearer, you've relied on the remittances and the grocery

24   sales -- or food sales or other American goods.

25             MR. DAVIDSON:  And just to put sort of the bow on

74

1    that with respect to CIMEX, remember, Americans pay for

2    these remittances and the Cubans take a slice out of them on

3    the other end as a tax.  So there's clearly a direct effect

4    in the United States as it is impacting Americans who are

5    paying for these remittances.

6           THE COURT:  Because the full amount that they've

7    remitted is not -- doesn't reach their Cuban relative?

8           MR. DAVIDSON:  Correct.

9           And Western Union charges for the service.

10          And ultimately like *EIG* in terms of the

11   ricocheting effect, remember, this is CIMEX and also CUPET,

12   because the remittance machines are in some of CUPET's gas

13   stations that serve -- CUPET gas stations that were once

14   ours.

15          THE COURT:  Is that -- I mean, I thought there was

16   a declaration to the effect that the CUPET gas stations,

17   that there was no ownership tracing to the Esso properties.

18          MR. DAVIDSON:  I don't believe that's correct,

19   Your Honor, based on my understanding of the evidence, that

20   the Servi-Cupet gas stations which are operated, some of

21   which trace back to the -- our gas stations, and many of

22   which are on land that was once owned by the subsidiary on

23   which these service stations are located.

24          THE COURT:  Okay.

25          What about CIMEX Panama?  I have to confess, I've

1    been trying to keep all these entities straight and figure

2    out who does what.

3              MR. DAVIDSON:  With respect to --

4              THE COURT:  It hasn't settled into my head exactly

5    how CIMEX Panama, what they own and what your claim is with

6    respect to that defendant.

7              MR. DAVIDSON:  Well, with respect to CIMEX,

8    Your Honor, we've had a similar quandary.

9              As you may recall, it only became through factual

10   digging in this case that we learned that there are two

11   CIMEXes, one incorporated in Panama, one in Cuba, both of

12   which have the same officer, same address.  And it appears

13   to us, notwithstanding ~~what~~ any claims to the contrary, that

14   there actually one and the same.  We added -- we filed a

15   second amended complaint to add the second CIMEX entity just

16   as an abundance of caution, but we think they're one and the

17   same.

18             THE COURT:  What evidence do you have to support

19   that?

20             Where would I look in the record to support some

21   identity between CIMEX Panama and CIMEX Cuba other than the

22   interlocking directors at the same address?

23             MR. DAVIDSON:  First, there's an absence of

24   evidence, in that there isn't any suggestion that they're

25   different from any of the declarants or evidence that's come

1   from the Cuban side.

2         And we have -- I'll get which exhibit number it

3   is, but we have -- I will get that to you while we're just

4   talking, but there's an exhibit that has -- shows that they

5   have the same officers, directory, the same address.

6         And I don't have that right at my fingertips,

7   Your Honor, but I can get that to you before we finish

8   today.

9         THE COURT:  That's all right.  We can try and find

10  that.

11        So I guess the bottom line is, with respect to

12  CIMEX Panama, your theory is one of alter ego.

13        MR. DAVIDSON:  Yes.

14        THE COURT:  In other words, the same ~~ads~~ acts that you

15  are attributing to CIMEX Cuba that you contend are the

16  direct effects of the United States also apply equally to

17  CIMEX Panama by virtue of the fact that they're alter egos

18  of one another or there's no real corporate distinction

19  between them?

20        MR. DAVIDSON:  Correct, Your Honor.

21        THE COURT:  All right.

22        Okay.  Anything else you want to add on the

23  commercial-activity exception, Mr. Davidson?

24        MR. DAVIDSON:  The only thing I would say,

25  Your Honor, is that obviously, the record is voluminous here

77

1    and that I may -- I think I've hit, what I would say, the

2    highlights and, I think, the keys to this.

3               There are a few things that I know that I will

4    have missed, like, for example, the defendants have a

5    website to process remittances that's registered in the

6    United States, CIMEX does.

7               So there are a lot of little facts like that that

8    I might have not recited every one to you, Your Honor.  But

9    in our opposition, they're referenced, and, in particular,

10   the document to ~~the train you're~~ on would be the Butcher

*focus your attention*

11   Declaration, would be the ~~exhibit~~ there.

*exhibits*

12               MR. KRINSKY:  Your Honor, may I respond?

13               THE COURT:  Mr. Krinsky, I'll give you an

14   opportunity.  Just hang on one second.

15               MR. KRINSKY:  I'm sorry, I thought you were

16   through.  Yeah.

17               THE COURT:  Okay.  Go ahead, Mr. Krinsky.

18               MR. KRINSKY:  Let me go back to CUPET, Your Honor.

19               Unfair competition outside the United States

20   markets is simply an assertion of financial harm and cannot

21   be squared with *Weltover*, I would suggest.

22               About *EIG*, Your Honor, I would not read the

23   case -- either your case or the Circuit case as Mr. Davidson

24   said.  The direct effect was because the defendants caused

25   the plaintiff to part with their money in the United States,

1    and they came to the United States and made false

2    representations to them in the United States.  That was the

3    Circuit's basis for its holding, and it was essentially the

4    same, I think, with Your Honor, which also talked about

5    locus of the tort.  So I don't think we have -- and we

6    definitely clearly do not have anything like that here.

7            Trips to the United States on A-2 visas for the

8    State Department, that discussion is hard to see as a direct

9    effect.

10           CUPET doesn't engage in remittances at service

11   stations, it doesn't engage in selling food at service

12   stations, it's not even involved in service stations except

13   to sell gas.  to the service stations  There's no support in the record that supports

14   that.

15           THE COURT:  I had said earlier that there were no

16   Esso-owned service stations that CUPET operates.  Is that an

17   incorrect statement or a correct statement?

18           MR. KRINSKY:  We don't assert that, Your Honor.

19   We think it's a very small number.

20           THE COURT:  Okay.

21           MR. KRINSKY:  But we don't assert there's none at

22   all.

23           THE COURT:  Hang on.

24           So I'm clear in my head, your position factually

25   with respect to CUPET is a small number of service stations

79

1    that were owned by Esso, but those service stations only

2    sell gas, no remittances, and no food.

3           MR. KRINSKY:  No, Your Honor.  I think, perhaps,

4    I misunderstood you.

5           Our position is CUPET has nothing to do with the

6    service stations, any service stations in the country,

7    whether they're on Esso land or anyone else's land, it just

8    sells gas ~~at~~ to those service stations.

9           THE COURT:  I see.  Okay.

10          MR. KRINSKY:  But what I'm saying -- and what I'm

11   saying ~~and~~ is that plaintiff has not put forward anything to

12   controvert that that supports controverting that.

13          But I'm also saying that even if we assume, for

14   the sake of argument, that CUPET is involved with the

15   service stations, it's not involved with remittances at the

16   service stations, and it's not involved with selling food in

17   the service stations.

18          Plaintiff's own proof and the agreed-upon facts

19   are different.  Certain remittances are Fincimex, Western

20   Union, CIMEX, not CUPET; food is ~~Allenport~~ Alimport, CIMEX, not

21   CUPET.  So we think this -- I think we ~~need~~ see this effort to

22   link CIMEX, CUPET -- I'm sorry -- to the service stations

23   just doesn't get the plaintiff anywhere.

24          About CIMEX Panama, Your Honor, all that plaintiff

25   has brought forth and asserted is that they are the same

1    offices and same board.  But that doesn't get to alter ego,

2    it doesn't even open the door to alter ego.  I think

3    Your Honor's decisions and numerous decisions say that's not

4    enough.  So those were my specific comments, Your Honor.

5    Yeah.

6            THE COURT:  All right.  Well, let's, then, turn to

7    the final issue.

8            MR. DAVIDSON:  Your Honor, I'm sorry, could I

9    just -- on the question you asked me about our citations for

10   the support, could I provide those to you, Your Honor?

11           THE COURT:  Of course.

12           MR. DAVIDSON:  It really comes in two places; one

13   is in the declaration from defendants on the CIMEX legal

14   director Valmana, who -- and she conceded CIMEX Cuba and

15   CIMEX Panama have the same President and she's on the board

16   of both.

17           In addition, in our evidence at the Butcher

18   Declaration at paragraph 13.2, 13.3, but where we've

19   attached Exhibit 22 and Exhibit 23 shows the overlap in

20   management.

21           And on this point, Your Honor, we didn't

22   originally sue CIMEX Panama, we sued CIMEX Cuba, who we

23   think -- thought to believe to be the operative actor.

24           We discovered CIMEX Panama, and we really wanted

25   to avoid a situation in which one CIMEX blamed the other

1   CIMEX, so we didn't want to have an empty chair.  So that's

2   why we added them.  We believe the evidence would show that

3   there is an alter ego and that no one seriously disputes

4   that.

5           But in any event, Your Honor, I don't want ~~it~~ to

6   overstate the case here in terms of the importance of CIMEX

7   Panama.  We were really seeking to avoid a situation where

8   CIMEX Cuba blamed CIMEX Panama, and CIMEX Panama is not in

9   the case.

10          THE COURT:  Yeah.  No, I appreciate that,

11  Mr. Davidson.  And my goal here was to try and just clarify

12  what your theory is of both the trafficking and the direct

13  effect --

14          MR. DAVIDSON:  Right.  Thank you, Your Honor.

15          THE COURT:  -- that involved CIMEX Panama.

16          Okay.  Let's turn, then, in our remaining time, to

17  the due-process, personal-jurisdiction issue.

18          Let me just give everybody a heads-up.  I've sort

19  of got a hard stop at 4:45, and I will try to get done as

20  much of this as we can here today.  I know you all may not

21  have expected to be here for two-plus hours, but sometimes

22  these things go on for a while.

23          But let me start with Mr. Davidson.  And I just

24  had a quick sort of threshold question that I don't know

25  that you've really addressed in your brief, and that was the

1    suggestion by Mr. Krinsky and the defendants that we sort of

2    put a pause on the personal-jurisdiction question until

3    immunity is resolved and subject-matter jurisdiction is

4    resolved, which I take him to mean it's going to be appealed

5    immediately.

6            So can I get your response to that suggestion

7    first before we get to the merits?

8            MR. DAVIDSON:  Yes.  Thank you, Your Honor.

9            Well, Mr. Krinsky and I have had substantial

10   discussions on this.  And as you can see, you know, the

11   parties have gotten along well in trying to limit the issues

12   as best we can for you and to process the procedure.

13           Our view upon Mr. Krinsky's request to bifurcate

14   the questions is that the facts substantially, if not close

15   to entirely, overlap with respect to the conduct in the U.S.

16   direct effects so that it seemed prudential to try to decide

17   both of these questions at the same time if they largely

18   have the same facts.  There's no legal reason why they can't

19   be bifurcated.

20           I think, depending on the outcome, the result

21   might follow in the sense of whether to deal with personal

22   jurisdiction now or later, because one of our other concerns

23   was, as you know, matters of immunity get an immediate right

24   of appeal to the Circuit.  The law is not so clear on

25   personal jurisdiction.

the → → → that → → →

1           But what we didn't want to be in a situation was,

2      whatever Your Honor's ruling, we go upstairs, and then we're
                                          ↓
3      back and we've survived and we continue, to then deal with

4      personal jurisdiction and potentially a discretionary appeal

5      of that, rather than trying to decide it all at once.  But,

6      of course, it doesn't have to be that way --

7                THE COURT:  Right.

8                MR. DAVIDSON:  -- but that was sort of our

9      suggestion.

10               THE COURT:  Well, let me ask:  Have you had

11     discussions with Mr. Krinsky as to whether he would

12     stipulate to not seeking an interlocutory review of a later

13     personal -- an adverse personal jurisdiction ruling?

14               In other words, say hypothetically, I rule against

15     him on immunity and it goes up to the Circuit, the Circuit

16     agrees, comes back down, we then need to resolve personal

17     jurisdiction.

18               Say I again rule against him, has he -- have you

19     all talked about whether he would agree to stipulate and not

20     to seek an immediate appeal?

21               Mr. Krinsky, I don't know whether you've --

22               MR. DAVIDSON:  We haven't discussed that, but

23     Your Honor is asking good questions, which we hadn't asked

24     of each other.  But I mean, that's principally our reason.

25               And I know this is a heavy case and we don't

84

1    needlessly want to throw more decision-making that could be

2    deferred to Your Honor.

3              But really, we want to try to have efficiency.

4    And if there -- if in your hypothetical there's not an

5    interlocutory appeal on the personal-jurisdiction question,

6    we don't see any compelling reason why personal jurisdiction

7    has to be resolved now.

8              THE COURT:  I'll tell you, Mr. Davidson, while

9    there may be partly some overlap on this

10   personal-jurisdiction question, I mean, I think it's a very

11   difficult -- or let me put it differently:  There's sort of

12   sufficiently unique inquiries I need to make on the question

13   of whether these entities are essentially -- are the state

14   such that there's no separate identity, or that these

15   entities are essentially agents of the state.  And that's a

16   pretty fact-intensive inquiry that may not have a whole lot

17   to do with whatever context these companies have with the

18   United States.

19             MR. DAVIDSON:  Your Honor, that's a fair point.

20             I mean, the ~~Bancheck~~ *Bancec* analysis is somewhat

21   different and very fact-intensive.

22             And, frankly, to the extent Your Honor isn't

23   satisfied with the record that we've presented, it really

24   opens itself, if not compels there to be some discovery in

25   personal jurisdiction.

1          And I think Mr. Krinsky's position would be, that

2    should wait until the subject-matter-jurisdiction question

3    has been resolved.

4          THE COURT:  Yeah.

5          I mean, look, I'll be perfectly candid with you,

6    Mr. Davidson.  I mean, I read your expert's report.  And

7    I have to tell you just candidly, I found it challenging to

8    get through and fully comprehend.

9          You know, I mean, I think his basic thesis is that

10   the Cuban state is a socialist one, and, therefore, you

11   know, it owns all assets.  There are no private rights of

12   property, and, therefore, the country and the entities are

13   one and the same.  It took him 60 or 80 pages to say that,

14   but he got through it.

15         All right.  Let me turn to Mr. Krinsky and get

16   your reaction to this.

17         I mean, I think you're prepared to defer the

18   personal-jurisdiction issue; is that correct?

19         MR. KRINSKY:  I'm sorry, Your Honor.  I'm a little

20   hard of hearing.  I didn't catch the last past.

21         THE COURT:  I said, you're prepared to defer the

22   personal-jurisdiction question?

23         MR. KRINSKY:  Yes.

24         On that issue, I'm not sure whether Your Honor is

25   asking about this notion of a stipulation.  It hasn't been

1    discussed and it hasn't been considered by us, but it surely

2    is something that I think we should very seriously consider.

3             But I would not want to respond immediately to

4    Your Honor.  And perhaps after the hearing, I can talk about

5    it with Mr. Davidson and we can advise Your Honor on our

6    position.  It clearly has some appeal right away.

7             I do want to say, to sort of reinforce what

8    Your Honor has said, that the *Bancec* issues are very --

9    different -- the fact issues are different than all the

10   other sovereign immunity issues, Your Honor.

11            And I also would say, the *Bancec* issue is a

12   very, very weighty issue; it has very serious consequences.

13            I'm very found of *Bancec*; I actually argued it

14   in the Supreme Court.

15            THE COURT:  Okay.

16            MR. KRINSKY:  And what I told the Court in our

17   briefs is, we don't see how you can have trade and finance

18   with a socialist country, essentially, a planned economy,

19   without the full protection of *Bancec*.

20            I only say this, Your Honor, that there's not only

21   the question of factual issues being different, but we don't

22   think a decision on *Bancec* should be reached if the case

23   is going to be dismissed on subject-matter jurisdiction.

24            THE COURT:  Yeah.

25            Look, I agree with both of you that *Bancec* is --

87

1   it's weird how these things happen.  This is the third one

2   of these ~~Bancheck~~ *Bancec* cases I've had in quick succession over

3   the last year.  And in the prior five years on the bench, I

4   hadn't had any.  So I've become more familiar with the case

5   and the cases that have followed with it.

6          You know, this one presents an interesting twist

7   in the sense that they do have a socialist state, and my

8   understanding is that the assets themselves are state-owned

9   property.  Maybe I'm misunderstanding that, but,

10  nevertheless, it just -- there seem to be enough factual

11  issues here that are quite thorny, that if they can be

12  deferred and everybody can agree they can be deferred, that

13  wouldn't be a bad thing from my perspective.

14         MR. KRINSKY:  Would Your Honor let us --

15         MR. DAVIDSON:  Oh, I'm sorry.

16         MR. KRINSKY:  I'd like to consider it and discuss

17  it and speak with Mr. Davidson and then get back to Your

18  Honor on that.

19         THE COURT:  Okay.

20         Mr. Davidson.

21         MR. DAVIDSON:  I agree.  I was going to suggest

22  the same thing.

23         I mean, as I said, we have very much an open

24  dialogue, so we can speak about this frankly and see if we

25  can come to some sort of agreement by which personal

1   jurisdiction is deferred.

2          THE COURT:  Let's do this:  Why don't you all talk

3   amongst yourselves and see if you can come to some

4   agreement.  And can you just get back to me by next

5   Wednesday?  Is that a reasonable amount of time?

6          MR. KRINSKY:  Sure.  Thank you.

7          MR. DAVIDSON:  Yes, Your Honor.

8          THE COURT:  Yes.

9          So just file a Joint Status Report indicating what

10  your position is.  And if it's something that I do need to

11  resolve now, you all can't come to an agreement, then I may

12  have you back in to have a further hearing on the

13  personal-jurisdiction question.

14         MR. KRINSKY:  Thank you, Your Honor.

15         MR. DAVIDSON:  Thank you, Your Honor.

16         THE COURT:  All right.

17         Well, with that, that's sort of what I had in mind

18  for this afternoon, and I think we've covered a lot of

19  territory.

20         You know, I didn't want to necessarily suggest

21  that this was all anybody wanted to talk about, and maybe

22  there's some other issues you wanted to raise or points.

23  And so before we conclude, if there was anything that we

24  didn't touch on in the last two and a half hours that you've

25  been burning to want to get out in front of me, now would be

89

1    the time to do it.

2              MR. KRINSKY:  I'm fine, Your Honor.

3              THE COURT:  Okay.

4              MR. KRINSKY:  I appreciate all the time.

5              MR. DAVIDSON:  Yes, Your Honor.

6    Thank you very much for the Court's attention and diligence,

7    it's very much appreciated.

8              THE COURT:  All right.  You're welcome.

9              Thank you, all, very much.  We'll get to the task

10   of getting you all a decision as soon as we can.

11             (Proceedings concluded at 4:27 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

Please note:  This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.


Date:__March 16, 2021_____     /S/__William P. Zaremba_____

William P. Zaremba, RMR, CRR

**DEPUTY CLERK: [1]**
3/2
**MR. DAVIDSON: [68]**
3/14 5/17 11/19 12/22
12/25 13/3 13/6 13/8
14/2 16/4 16/18 17/4
17/9 17/17 21/5 21/9
27/23 29/12 31/5 31/21
33/3 33/12 34/4 34/24
35/22 36/15 37/2 37/14
37/22 38/12 42/6 47/18
66/20 66/23 67/7 67/11
67/15 69/11 70/10
70/12 70/22 70/25
72/18 72/24 73/4 73/6
73/10 73/25 74/8 74/18
75/3 75/7 75/23 76/13
76/20 76/24 80/8 80/12
81/14 82/8 83/8 83/22
84/19 87/15 87/21 88/7
88/15 89/5
**MR. KRINSKY: [95]**
**THE COURT: [159]**

/

**/S [1]** 90/10

**1**

**10 [3]** 1/5 63/25 64/4
**10005 [1]** 1/20
**100K [1]** 63/24
**1111 [1]** 1/21
**1277 [2]** 1/4 3/3
**13.2 [1]** 80/18
**13.3 [1]** 80/18
**1330 [1]** 1/14
**14 [1]** 1/19
**15 minutes [1]** 47/14
**16 [1]** 90/10
**17.20 [1]** 72/8
**19 [1]** 90/6
**19-1277 [2]** 1/4 3/3
**1960 [2]** 31/7 56/7
**1970 [2]** 35/1 36/19
**1990s [1]** 44/17
**1996 [4]** 7/16 7/17
19/13 69/23

**2**

**200 [1]** 63/24
**20001 [1]** 2/5
**20036 [1]** 1/15
**2010 [2]** 54/21 68/13
**2012 [1]** 40/13
**2018 [1]** 73/1
**202 [2]** 1/15 2/5
**2021 [2]** 1/5 90/10
**212 [1]** 1/21
**22 [2]** 51/2 80/19
**23 [1]** 80/19
**254-1111 [1]** 1/21
**28 [1]** 12/18
**2:04 [1]** 1/6

**3**

**3002 [1]** 1/19
**30th [1]** 1/20

**333 [1]** 2/4
**354-3249 [1]** 2/5
**3:15 [2]** 47/17 47/21
**3:16 [1]** 47/21
**3:25 [1]** 47/17

**4**

**41 [1]** 34/14
**42 [1]** 37/4
**429-8077 [1]** 1/15
**43 [1]** 37/4
**438 [2]** 15/15 16/5
**44 [1]** 37/18
**451 [1]** 31/6
**488 [2]** 15/14 16/5
**49 [1]** 72/5
**4:27 [1]** 89/11
**4:45 [1]** 81/19

**5**

**500 [3]** 58/19 58/22
59/11

**6**

**60 [1]** 85/13
**600 [1]** 68/13
**6081 [1]** 51/2
**6082 [1]** 6/22
**661 [1]** 68/13

**8**

**80 [1]** 85/13
**8077 [1]** 1/15

**A**

**ability [5]** 9/11 14/8
32/15 52/6 58/16
**able [2]** 8/8 20/5
**about [69]** 4/23 6/12
10/13 10/18 12/11 15/5
15/11 17/24 18/11
18/16 19/9 20/4 20/5
20/7 21/9 21/9 21/11
21/17 25/10 29/20
29/21 31/13 38/23 39/2
39/5 39/11 40/20 41/13
43/12 44/6 47/13 47/16
48/14 50/11 50/13
50/16 51/9 51/24 52/3
53/6 53/10 53/16 53/23
54/18 54/24 57/7 57/11
59/13 61/12 63/11 64/9
64/15 64/16 65/14
65/15 67/16 68/7 70/17
71/5 74/25 77/22 78/4
79/24 80/9 83/19 85/25
86/4 87/24 88/21
**above [1]** 90/4
**above-titled [1]** 90/4
**abrogate [2]** 17/3 26/1
**abrogated [2]** 8/4
13/24
**abrogates [1]** 16/16
**abrogation [9]** 4/5 5/23
7/6 8/7 9/25 13/12 22/4
29/7 42/5
**absence [2]** 12/6 75/23
**absent [2]** 54/15 66/13

**abundance [1]** 66/16
**abuse [1]** 20/3
**academic [1]** 70/18
**accept [1]** 19/9
**according [2]** 17/11
54/14
**acknowledge [1]** 30/19
**act [18]** 4/3 4/10 5/21
5/22 6/17 7/2 9/23 10/1
14/4 14/21 14/21 15/5
22/2 29/4 43/24 48/19
53/19 65/25
**action [19]** 3/3 3/21
6/19 6/24 7/3 8/9 9/23
15/6 15/7 22/14 23/23
26/20 29/20 61/5 61/7
61/8 65/7 66/6 69/22
**actionable [1]** 69/15
**actions [1]** 8/12
**activities [2]** 57/13
73/12
**activity [32]** 4/13 4/16
8/18 9/13 22/8 22/21
23/5 23/16 23/21 25/11
26/1 26/3 27/8 27/16
28/2 28/6 28/9 28/22
28/25 29/18 29/25 30/1
30/22 31/18 32/2 48/14
48/17 58/2 61/21 64/14
71/24 76/23
**actor [1]** 80/23
**acts [1]** 31/2
**actual [1]** 49/12
**actually [14]** 7/3 23/11
26/24 28/18 30/16
32/11 33/1 39/10 43/14
49/15 61/3 73/7 75/14
86/13
**add [10]** 7/18 10/1 11/8
17/15 17/23 59/4 59/5
63/12 75/15 76/22
**added [3]** 39/11 75/14
81/2
**addition [4]** 37/16
39/20 73/17 80/17
**additional [1]** 6/2
**address [7]** 3/25 5/3
44/12 48/22 75/12
75/22 76/5
**addressed [5]** 7/9 7/9
39/8 44/9 81/25
**addresses [1]** 7/18
**addressing [1]** 52/18
**adduced [1]** 71/15
**adjudicated [2]** 31/16
35/1
**adjudicating [1]** 38/15
**Administration [3]**
19/20 51/15 51/16
**admiralty [1]** 15/21
**admittedly [1]** 14/24
**ads [1]** 76/14
**advance [2]** 41/15
41/16
**advanced [2]** 39/18
54/25
**adverse [1]** 83/13
**advise [1]** 86/5

**affects [3]** 51/14 51/14
55/2
**affidavit [1]** 42/13
**after [5]** 3/20 20/18
20/20 33/25 86/4
**afternoon [5]** 3/2 3/9
3/22 47/24 88/18
**again [9]** 21/19 31/8
39/17 39/17 39/17 63/6
67/18 69/12 83/18
**against [16]** 4/6 7/14
7/15 8/9 8/12 10/9 12/5
13/16 13/23 15/7 16/9
43/19 45/24 52/12
83/14 83/18
**agencies [5]** 4/7 8/1
8/9 17/24 18/8
**agency [8]** 8/4 8/13
8/16 12/3 14/13 16/9
19/24 22/16
**agent [8]** 14/9 46/20
57/15 61/21 62/1 62/4
63/9 64/22
**agents [6]** 13/21 21/11
21/17 21/22 31/23
84/15
**ago [2]** 22/25 24/14
67/21
**agree [11]** 6/22 17/1
34/21 49/4 49/7 56/24
59/21 83/19 86/25
87/12 87/21
**agreed [1]** 79/18
**agreed-upon [1]** 79/18
**agreeing [1]** 62/21
**agreement [3]** 87/25
88/4 88/11
**agreements [2]** 38/3
38/7
**agrees [1]** 83/16
**ahead [3]** 63/16 63/16
77/17
**aided [1]** 2/7
**aimed [1]** 31/23
**al [2]** 1/6 3/4
**all [81]** 3/9 3/10 4/1 4/2
5/19 7/11 9/16 10/19
10/24 11/12 13/7 13/9
16/6 17/14 18/6 18/8
19/3 19/8 20/4 21/1
21/2 21/25 23/22 24/23
27/19 27/23 28/24
32/19 32/22 32/23
39/22 39/23 41/7 41/15
41/16 44/8 46/3 47/12
47/16 47/23 49/2 50/12
53/5 53/6 53/9 55/18
56/4 62/6 62/9 64/17
66/16 69/8 69/9 70/6
71/3 71/14 71/23 71/24
73/1 73/14 73/23 71/24
76/9 76/21 78/22 79/24
80/6 81/20 83/5 83/19
85/11 85/15 86/9 88/2
88/11 88/16 88/21 89/4
88/8 89/9 89/10
**all right [5]** 3/9 3/10

**9/14 21/2 21/25
allegation [3]** 54/10
58/4 65/17
**allege [3]** 40/2 40/4
40/7
**alleged [2]** 45/24 54/3
**Allenport [9]** 54/14
61/17 62/4 62/4 62/3
63/5 64/15 64/25 79/20
**allies [1]** 19/8
**allow [2]** 27/8 31/11
**allowed [3]** 31/6 46/20
70/1
**allows [1]** 11/21
**almost [3]** 22/18 22/19
22/21
**alone [1]** 22/14
**along [2]** 6/2 82/11
**already [4]** 3/17 9/25
44/2 73/20
**also [15]** 9/2 9/8 11/15
16/16 24/5 32/2 63/12
63/19 68/2 70/1 74/11
76/16 78/4 79/13 86/11
**alter [6]** 4/21 76/12
76/17 80/1 80/2 81/3
**alternative [1]** 32/10
**although [1]** 26/18
**always [5]** 22/18 22/19
28/22 52/20 60/25
**am [5]** 5/4 33/7 43/13
**amend [1]** 10/6
**amended [5]** 7/19
10/11 10/16 20/8 75/15
**amending [1]** 10/13
**Amerada [3]** 13/19
15/9 16/4
**American [15]** 9/10
14/22 55/4 57/15 59/17
61/24 61/25 62/15
62/17 62/19 64/24
65/19 65/20 72/19
73/24
**Americans [5]** 57/20
58/4 58/14 74/1 74/4
**AMIT [1]** 1/9
**amongst [1]** 88/3
**amount [5]** 3/18 6/21
7/10 74/6 88/5
**amounts [1]** 15/22
**analogous [1]** 55/22
**analysis [5]** 4/24 26/24
26/24 27/24 84/20
**another [7]** 5/12 9/22
50/13 51/15 67/24
69/20 76/18
**answer [9]** 4/9 6/4 17/8
17/10 20/12 27/16 32/4
36/1 36/4
**answered [1]** 73/20
**answers [1]** 26/5
**any [23]** 4/6 8/25 9/5
11/6 13/5 20/10 43/19
44/22 46/3 46/4 54/3
55/14 59/2 63/2 67/15
71/4 75/13 75/24 75/25
79/6 81/5 84/6 87/4
**anybody [1]** 88/21

**A**

anyone [2]  17/11 79/7
anything [15]  17/15
21/3 27/19 32/20 38/22
43/2 44/6 53/23 59/3
61/3 69/9 76/22 78/6
79/11 88/23
anyway [2]  23/1 24/5
anywhere [1]  79/23
appeal [5]  82/24 83/4
83/20 84/5 86/6
appealed [1]  82/4
APPEARANCES [2]
1/11 1/22
appears [2]  25/13
75/12
applicability [1]  46/22
applicable [2]  36/3
49/2
application [2]  21/16
40/16
applied [3]  27/2 27/16
38/16
applies [7]  4/10 22/21
22/21 30/1 32/2 47/11
71/17
apply [18]  4/15 4/16
12/19 21/18 22/8 22/10
22/14 27/9 28/3 28/9
29/10 30/1 30/22 31/13
31/16 32/7 32/16 76/16
applying [1]  23/5
appreciate [2]  81/10
89/4
appreciated [1]  89/7
appropriate [2]  26/10
26/23
appropriated [1]  16/14
appropriation [2]  43/3
65/15
appropriations [1]
55/25
aptly [1]  24/1
arbitral [1]  39/9
arbitration [1]  37/19
arbitrations [1]  39/16
are [79]  4/15 4/20 4/25
6/13 6/16 6/17 8/22
11/1 17/14 20/10 21/16
23/9 23/23 25/7 26/5
28/11 29/8 30/2 30/7
32/7 32/9 32/11 32/13
33/6 34/4 34/14 35/2
36/24 37/18 38/7 39/10
39/22 49/2 51/17 53/4
54/2 58/5 58/22 58/24
59/15 60/1 61/10 62/3
64/3 65/18 66/8 67/1
70/6 70/17 71/4 71/4
71/12 71/12 71/13
71/13 71/14 71/19 74/4
74/12 74/20 74/22
74/23 75/10 76/15
76/15 77/3 77/7 79/19
79/19 79/25 84/13
84/13 84/15 85/11
85/12 86/8 86/9 87/8
87/11

Argentine [1]  37/16
argue [1]  22/13
argued [6]  5/21 22/7
22/10 43/15 52/13
86/13
argument [9]  1/9 6/1
16/1 17/18 28/13 29/9
57/13 61/13 79/14
arguments [2]  3/25 5/4
arise [1]  29/11
arises [2]  23/12 28/21
arising [1]  23/23
arms [1]  3/19
arose [1]  33/24
around [2]  3/19 73/13
as [79]  3/23 6/10 6/19
7/2 7/23 9/19 11/21
11/22 12/17 13/10
13/10 13/11 13/15
13/25 16/24 19/1 22/24
24/8 26/1 27/10 29/3
29/3 30/23 30/25 31/1
31/2 31/10 33/13 33/14
34/11 35/19 35/23 36/6
38/4 38/16 39/19 40/17
41/4 41/17 42/1 42/8
43/23 44/8 44/19 48/9
48/22 49/1 50/4 52/12
61/13 62/1 63/23 66/7
66/7 67/20 68/2 69/20
69/23 69/25 70/13 72/3
72/19 73/11 73/11 74/3
74/4 75/9 75/16 77/23
78/8 81/19 81/20 82/10
82/12 82/23 83/11
87/23 89/10 89/10
aside [1]  9/14
ask [13]  6/12 6/13 6/14
27/14 34/21 41/22 49/2
63/13 63/17 65/6 67/5
68/22 83/10
asked [4]  8/6 44/18
80/9 83/23
asking [2]  83/23 85/25
assert [2]  78/18 78/21
asserted [2]  35/19
79/25
asserting [1]  33/6
assertion [2]  33/7
77/20
assets [10]  33/10
35/21 36/14 36/21
39/22 39/23 40/10 55/2
85/11 87/8
assume [3]  13/15
56/24 79/13
assuming [1]  16/18
assumption [3]  10/3
10/15 10/25
assura [1]  27/13
Atlantica [2]  49/21
50/3
attached [1]  80/19
attachments [1]  71/23
attempted [1]  37/22
attend [1]  36/25
attendant [1]  35/17

attention [4]  36/16
37/3 68/12 89/6
attenuated [2]  60/18
60/21
attributing [1]  76/15
authority [1]  9/24
authorization [1]  65/8
authorized [1]  65/18
available [3]  30/7
58/14 58/18
Avenue [1]  1/14 2/4
avoid [2]  12/14 80/25
81/7
aware [1]  20/10
away [3]  19/8 28/13
86/6

**B**

back [13]  11/13 44/9
47/22 48/2 68/21 73/8
74/21 77/18 83/3 83/16
87/17 88/4 88/12
backdrop [3]  7/14 7/15
13/23
background [1]  10/9
backwards [1]  57/18
bad [2]  13/4 87/13
badly [1]  51/3
balance [2]  56/20 57/3
Bancheck [8]  84/20
86/8 86/11 86/13 86/19
86/22 86/25 87/2
Baratz [1]  1/13 3/5
Barcelona [5]  36/17
37/23 39/19 40/15
40/18
barred [1]  12/16
Barrett [1]  2/4
based [12]  23/16 24/24
25/13 31/14 32/17
46/16 47/9 48/19 53/19
65/7 65/8 74/19
bases [1]  34/4
basic [2]  64/11 64/12
85/9
basis [4]  25/8 59/23
61/8 78/3
be [100]
bearing [1]  64/10
became [1]  75/9
because [37]  14/13
16/21 17/10 18/15
18/24 20/2 27/11 30/17
31/23 32/2 33/2 35/10
35/18 36/17 39/12
42/12 44/3 47/8 50/2
50/17 50/19 57/1 61/13
62/2 66/24 67/6 68/21
69/8 69/12 69/21 70/18
72/15 73/3 74/6 74/12
77/24 82/22
become [1]  87/4
becomes [2]  12/10
26/18 46/14
becoming [1]  46/4
been [26]  12/10 18/13
18/16 19/22 30/6 33/11

36/9 39/5 39/15 39/16
43/12 43/14 46/25
47/13 51/25 52/20
70/16 75/1 85/3 85/25
86/1 88/25
before [8]  1/9 48/25
48/25 67/16 73/8 76/7
82/7 88/23
beg [1]  23/25
begin [1]  48/16
beginning [1]  19/4
37/3 67/19
begins [1]  37/3
behind [1]  67/14
being [8]  8/24 18/20
35/17 50/11 52/2 63/9
65/18 86/21
believe [19]  15/1 16/12
20/12 21/17 30/11
40/17 46/15 47/8 52/12
66/12 68/1 68/17 71/5
71/8 71/15 72/10 74/18
80/23 81/2
believing [1]  25/24
Bell [2]  49/9 56/12
Bell Helicopter [1]
49/9
bench [1]  87/3
benefit [1]  51/4
Bengochea [1]  42/20
best [6]  20/24 55/21
68/23 69/5 72/14 82/12
better [5]  10/7 13/5
13/6 67/7 67/8
between [7]  8/21 51/19
53/2 59/3 63/7 75/21
76/19
beyond [3]  46/12 54/9
71/18
bifurcate [1]  82/13
bifurcated [1]  82/19
big [4]  5/6 5/6 6/15
7/22
big-picture [2]  6/15
7/22
bilateral [3]  38/3 38/7
38/14
bill [5]  6/9 6/10 9/19
10/14 19/19
bills [1]  20/14
bit [4]  13/1 13/23 39/1
67/6
bite [1]  60/3
blamed [2]  80/25 81/8
blocking [1]  21/15
board [2]  80/1 80/15
body [1]  38/14
both [14]  6/10 20/15
28/8 30/4 30/19 31/1
31/15 32/13 64/15
75/11 80/16 81/12
82/17 86/25
bottom [2]  56/9 76/11
BOUDIN [1]  1/18
bounds [1]  27/2
bow [1]  73/25
break [2]  47/15 54/16

def [5]  36/16 37/3
37/18 70/14 81/25
briefing [1]  36/7
briefly [1]  21/6
briefs [2]  46/10 86/17
brilliant [1]  24/15
bring [3]  8/8 8/12 37/7
broad [2]  53/3 60/22
broadly [1]  3/18
brothers [1]  50/12
brought [2]  18/13
79/25
burn [1]  42/19
burning [1]  88/25
Burton [19]  14/4 19/3
19/20 21/14 21/20
26/14 29/19 34/13
34/17 34/20 44/11 53/4
67/18 67/25 68/3 69/1
69/12 71/18 73/17
business [11]  8/23
18/9 40/10 40/20 54/1
54/6 54/21 55/14 55/15
55/15 57/23
Butcher [6]  1/12 3/5
72/5 72/7 77/10 80/17
buy [3]  54/4 63/2 63/3
buyer [2]  62/5 62/7
buying [4]  61/14 61/25
65/1 65/20
buys [1]  62/7

**C**

cabin [1]  60/6
call [1]  28/13
called [1]  25/1
came [3]  18/3 20/18
78/1
can [61]  3/10 5/10 6/12
8/12 8/14 11/15 12/4
12/24 14/6 16/2 20/24
22/10 24/13 28/21
28/25 29/6 31/9 31/13
31/16 31/25 32/1 32/13
34/16 38/18 38/23 39/1
42/16 43/9 44/1 44/25
46/18 47/10 49/11
49/13 49/17 54/8 65/21
66/10 67/4 67/5 68/14
68/16 68/24 73/1 76/7
76/9 81/20 82/6 82/10
82/12 86/4 86/5 86/17
87/11 87/12 87/12
87/24 87/25 88/3 88/4
89/10
can't [13]  32/7 53/11
53/15 55/8 55/13 55/13
55/15 55/15 59/5 61/16
63/11 82/18 88/1
Canada [2]  18/5 21/10
candid [1]  85/5
candidly [1]  85/7
cannot [3]  8/22 8/23
77/20
capture [1]  58/1
care [1]  9/25
carries [1]  52/15
carry [4]  37/17 52/14

**C**

carry... [2] 52/16 62/15
case [67] 3/17 4/13
15/16 15/23 22/9 22/20
22/22 23/8 23/10 23/11
23/14 23/21 25/10
25/19 27/25 28/8 29/13
29/14 29/25 30/3 30/16
30/18 31/20 32/14
32/18 34/8 34/15 35/9
36/18 37/16 37/17
37/23 38/17 40/8 41/8
43/1 43/1 46/11 49/20
49/24 55/21 55/22
63/20 68/9 68/12 68/13
68/23 69/5 72/14 72/21
72/24 72/25 72/25 73/2
73/6 73/7 73/8 73/12
75/10 77/23 77/23
77/23 81/6 81/9 83/25
86/22 87/4
cases [23] 19/15 23/8
23/9 23/22 23/25 24/2
24/19 25/3 27/4 28/11
29/23 30/3 30/13 34/13
37/19 37/19 37/20
38/10 49/18 57/6 69/9
87/2 87/5
catch [1] 85/20
category [1] 27/1
causal [1] 59/2
cause [12] 15/7 53/1
57/17 57/20 58/11
59/25 61/7 61/8 64/14
66/6 66/12 69/22
caused [2] 31/7 77/24
causes [6] 8/9 23/23
48/20 53/20 58/9 67/23
caution [1] 75/16
centralized [1] 67/9
certain [4] 7/9 28/3
28/4 79/19
certainly [4] 30/12
34/18 60/21 72/3
certification [1] 40/22
certified [4] 2/3 33/14
33/15 41/9
certify [1] 90/2
CH [1] 2/4
chain [1] 59/16
chair [1] 81/1
challenge [1] 5/2
challenging [1] 85/7
change [1] 61/2
changed [1] 7/10
changes [1] 34/9
chapter [1] 12/18
charges [1] 74/9
Charter [1] 68/12
choices [1] 59/11
choose [1] 32/12
chosen [1] 64/23
chunk [2] 5/11 5/12
CIMEX [58] 1/6 3/4
53/12 53/16 54/11
54/14 57/11 57/13
57/19 58/6 58/13 58/18
59/18 59/25 60/13 61/1
62/20 63/3 64/21 64/22
64/24 66/6 66/6 71/25
73/22 74/1 74/11 74/25
75/5 75/7 75/15 75/21
75/21 76/12 76/15
76/17 77/6 79/20 79/20
79/22 79/24 80/13
80/14 80/15 80/22
80/22 80/24 80/25 81/1
81/6 81/8 81/8 81/8
81/15
CIMEX's [1] 62/4
CIMEXes [1] 75/11
Circuit [27] 7/16 23/11
28/15 28/16 29/14
30/12 30/17 31/14
32/17 34/12 38/2 39/24
45/22 49/9 49/21 50/2
52/25 57/6 57/10 68/13
70/2 72/25 73/12 77/23
82/24 83/15 83/15
Circuit's [3] 35/5 50/24
78/3
Circuits [1] 30/13
circumstance [1] 44/4
circumstances [6] 5/5
29/6 44/4
citation [2] 16/3 73/1
citations [2] 70/14 80/9
cite [2] 22/19 37/9
cited [6] 23/9 24/2
24/19 34/14 37/20 69/9
cites [1] 39/10
citizen [1] 72/19
citizens [2] 14/22 15/6
Civil [1] 3/3
claim [37] 23/11 23/12
23/15 24/5 24/6 24/6
24/10 25/2 25/4 25/15
25/17 25/18 25/20
25/20 25/22 28/21
29/10 33/14 33/15
33/18 33/23 33/25 34/1
34/5 34/25 35/2 37/7
39/13 41/9 68/18 69/22
69/23 70/7 70/8 70/8
71/10 75/5
claimed [3] 15/17
29/16 33/24
claiming [2] 32/10
33/11
claims [20] 4/6 12/16
24/3 24/20 25/7 37/10
37/19 38/5 38/10 38/13
40/20 40/21 41/1 41/5
41/7 51/7 69/21 70/20
70/21 75/13
clarify [1] 81/11
classic [1] 22/15
clause [2] 13/10 13/25
clear [21] 12/3 12/15
14/8 14/17 14/25 15/12
19/6 29/24 30/3 30/25
31/15 33/5 38/2 40/20
45/8 46/24 48/8 68/14
73/21 78/24 82/24
clearer [1] 73/23
clearly [6] 45/8 40/1 45/8
51/12 69/19 74/3 78/6
86/6
clever [2] 28/13 28/14
client [1] 12/13
Clinton [1] 14/20
close [1] 82/14
closed [1] 19/14
collapses [1] 19/17
COLUMBIA [1] 1/1
come [8] 27/7 44/9
53/22 54/8 75/25 87/25
88/3 88/11
comes [6] 13/12 33/18
35/23 38/17 80/12
83/16
comfortable [1] 5/4
comments [1] 80/4
commerce [2] 62/5
62/21
commercial [39] 4/12
4/16 8/18 9/13 22/8
22/17 22/20 23/5 23/21
24/4 24/7 24/22 25/11
26/1 26/3 26/6 27/8
27/15 28/2 28/5 28/9
28/18 28/22 28/25
29/17 29/25 30/1 30/20
30/21 30/22 31/18 32/2
48/14 48/17 57/13 58/2
61/21 71/24 76/23
commercial-activity [2]
48/17 76/23
commercially [1]
26/12
Commission [4] 40/21
40/22 41/1 41/8
committee [4] 9/20
20/20 20/22 20/23
committees [5] 9/20
9/21 20/15 20/16 20/19
common [4] 24/6
24/11 24/24 25/4
companies [5] 8/22
44/8 52/22 55/15 84/17
company [13] 18/19
18/21 35/14 37/8 39/13
40/14 42/14 57/4 57/9
60/8 61/16 61/16 64/13
company's [1] 56/6
compelled [2] 26/24
27/14
compelling [1] 84/6
compels [2] 12/12
84/24
compensation [2]
26/10 70/23
competes [1] 72/2
competition [2] 55/9
55/10 55/11 55/17
68/19 68/20 72/11
72/15 72/16 72/18
73/15 77/19
competitive [1] 55/2
competitor [1] 72/4
competitors [1] 59/10
complaint [3] 66/24
72/13 75/15
51/12 69/19 74/3 78/6
86/6
completely [1] 60/12
complex [1] 46/14
complicated [2] 51/18
51/19
comprehend [1] 85/8
computer [1] 2/7
computer-aided [1]
2/7
conceded [1] 80/14
concededly [1] 25/21
concept [1] 27/10
concepts [1] 16/25
concern [3] 18/11 19/3
29/2
concerning [1] 4/19
concerns [4] 4/3 51/25
52/19 82/22
conclude [1] 88/23
concluded [2] 30/21
89/11
conclusion [3] 27/7
43/18 43/20
conclusive [2] 33/16
41/17
conclusively [1] 39/10
conduct [6] 28/8 29/16
45/23 52/7 69/15 82/15
conferrees [1] 72/6
confers [1] 40/22
confess [2] 18/16
74/25
confiscate [1] 28/19
confiscated [19] 8/2
8/5 8/13 9/12 16/20
16/22 17/12 18/22
21/23 23/18 26/17
28/17 35/25 46/17 51/3
51/8 67/22 69/3 70/20
confiscation [3] 25/22
28/21 46/19
confiscations [1] 12/5
conflict [2] 28/12 32/11
Congress [41] 6/11
7/18 7/24 8/3 9/4 9/8
9/11 9/23 10/9 10/10
10/11 10/13 10/15
10/18 10/22 11/1 12/13
12/15 13/15 13/24 14/7
14/16 17/11 18/11
19/19 21/20 25/24
43/19 43/23 44/2 44/5
44/9 44/23 51/1 52/1
52/4 52/10 52/17 68/25
69/23 70/7
Congress's [2] 50/15
50/15
congressional [2] 51/9
69/7
Connecticut [1] 1/14
connection [2] 63/18
65/19
Connections [1] 68/12
consequence [3]
17/11 50/21 65/25
consequences [1]
86/12
consider [3] 45/5 86/2
87/16
consideration [1] 9/21
considered [1] 86/1
consistent [1] 4/1
Constitution [1] 2/4
construct [1] 7/25
constructed [1] 7/25
construction [3] 10/20
11/2 15/2
consultation [1] 20/19
consumers [1] 55/4
contacts [1] 4/24
contemplated [1]
25/25
contend [1] 76/15
context [5] 19/12 27/12
50/7 63/20 84/17
continue [1] 11/14
17/5 83/3
continued [6] 2/1 9/12
40/11 56/7 70/19 70/22
continues [1] 55/1
continuing [1] 57/23
contract [2] 54/5 54/19
contracts [5] 19/16
19/17 49/19 54/10
54/11
contradictory [1]
43/23
contrary [1] 75/13
control [2] 14/14 49/19
controls [2] 67/25
69/13
controversial [1] 53/4
controversy [2] 6/21
7/11
controvert [1] 79/12
controverting [1]
79/12
coop [2] 45/24 45/24
CORPORACION [2]
1/6 3/4
corporate [1] 76/18
corporation [4] 1/3 3/3
34/10 42/12
correct [11] 31/2 70/9
70/10 70/12 72/17 74/8
74/18 76/20 78/17
85/18 90/3
could [24] 7/24 11/24
12/25 14/9 18/13 21/5
21/18 27/24 30/1 31/19
41/8 41/25 42/2 42/6
45/5 48/1 49/17 51/17
51/18 54/8 69/6 80/8
80/10 84/1
couldn't [1] 9/22
counsel [3] 3/9 5/3
11/23
countermand [1] 44/1
countries [6] 17/24
18/6 18/8 19/3 21/13
21/16
country [12] 23/3 23/4
36/12 40/14 60/7 62/6
62/11 62/13 63/3 79/6
85/12 86/18

**C**

couple [10]  6/13 11/16
14/2 17/20 21/8 22/25
24/14 46/6 47/14 47/23
course [14]  3/21 9/3
9/4 12/8 18/4 21/21
30/5 57/8 57/23 60/1
61/4 64/20 80/11 83/6
court [30]  1/1 2/2 2/3
7/15 10/4 12/19 13/18
15/6 15/11 15/15 15/24
19/15 22/24 25/3 25/3
25/16 29/15 30/19
36/18 40/16 42/19
42/21 47/15 48/7 48/7
55/23 68/14 86/14
86/16 90/7
court reporter [1]
47/15
Court's [4]  6/23 25/10
45/7 89/6
courts [9]  8/6 10/21
21/22 22/19 29/8 60/4
60/24 64/18 66/12
cover [2]  47/14 47/24
covered [1]  88/18
COVID [1]  90/6
COVID-19 [1]  90/6
crafted [1]  25/24
create [2]  6/6 47/2
criteria [1]  6/25
criticism [1]  45/15
cross [1]  47/6
cross-examination [1]
47/6
CRR [2]  90/2 90/11
cruise [2]  49/19 68/12
cruise-control [1]
49/19
Csepel [1]  29/24
Cuba [42]  8/21 9/5
16/10 16/14 18/7 18/8
19/4 31/3 40/10 40/11
40/24 41/13 43/20 44/8
51/20 52/19 52/20
55/16 57/19 57/21 58/5
58/11 58/15 58/20
58/23 59/3 59/10 61/1
62/16 63/7 63/14 64/13
64/22 65/8 66/4 71/25
75/11 75/21 76/15
80/14 80/22 81/8
Cuban [15]  14/23
18/18 31/5 44/18 44/20
51/5 51/8 57/20 58/4
58/14 59/16 65/21 74/7
76/1 85/10
Cubans [1]  74/2
CUPET [27]  48/22
53/12 53/16 53/18
53/25 54/2 54/3 54/11
54/14 55/1 55/13 68/21
72/12 73/22 74/11
74/13 74/16 74/20
77/18 78/10 78/16
78/25 79/5 79/14 79/20
79/21 79/22
CUPET's [1]  74/12

curious [2]  56/15 69/5
currency [1]  51/4
current [1]  51/5
customary [6]  37/6
38/5 38/8 38/19 39/12
42/3
cut [1]  43/5
CV [1]  1/4

**D**

D.C [3]  1/5 1/15 2/5
D.C. [4]  39/24 68/13
72/25 73/12
D.C. Circuit [4]  39/24
68/13 72/25 73/12
daily [1]  59/23
dairy [1]  55/25
damages [1]  41/9
date [2]  34/14 90/10
Davidson [33]  1/12 3/5
3/13 5/16 11/13 11/18
16/2 17/15 20/3 21/7
27/20 27/22 32/19 33/1
38/21 39/8 39/18 46/6
48/6 56/15 56/23 66/17
66/19 67/4 76/23 77/23
81/11 81/23 84/8 85/6
86/5 87/17 87/20
day [1]  19/18
days [2]  3/20 22/25
De [1]  29/24
dead [2]  8/15 8/25
deal [4]  11/25 15/10
82/21 83/3
dealing [6]  14/16 15/18
21/20 23/2 23/2 54/19
80/21 81/1 83/1 85/20
88/20 88/24
deals [1]  15/25
debatable [2]  26/12
27/11
debate [2]  26/6 50/16
decide [5]  46/2 59/8
59/9 82/16 83/5
decided [1]  48/9
decides [1]  63/2
deciding [1]  59/6
decision [9]  15/12
25/10 35/5 41/17 42/21
62/15 84/1 86/22 89/24
decision-making [1]
84/1
decisions [9]  28/15
28/16 37/10 37/12 39/9
52/25 59/6 80/3 80/3
declarants [1]  75/25
declaration [7]  42/17
72/5 72/8 74/16 77/11
80/13 80/18
decrees [1]  31/3
defendant [1]  75/6
defendant's [1]  24/3
defendants [14]  1/7
1/17 3/8 4/20 5/13 5/23
12/11 22/6 47/1 49/1
77/4 77/24 80/13 82/1
defense [1]  43/22
defer [2]  85/17 85/21
deferred [4]  84/2 87/12

define [4]  38/3 38/18
41/23 60/5
defined [4]  26/2 34/23
34/25 42/1
defines [2]  60/14 69/13
definitely [1]  78/6
definition [2]  60/21
60/22
degree [1]  9/6
deleted [5]  6/10 9/21
10/15 10/22 20/9
deletion [1]  20/11
delivered [1]  9/24
denied [2]  46/16 47/8
Department [3]  44/16
46/18 78/8
Department's [1]  45/11
depending [1]  82/20
deprive [1]  32/15
detailed [1]  7/25
determination [2]  35/9
69/8
determine [3]  8/7
21/21 68/3
determined [2]  21/22
35/7
determines [1]  41/4
deviation [1]  50/23
dialogue [1]  87/24
did [8]  7/11 7/12 9/24
12/16 17/15 25/16
39/12 41/8
didn't [16]  9/14 31/24
35/3 35/10 35/18 43/5
44/6 50/2 50/5 53/13
80/21 81/1 83/1 85/20
88/20 88/24
differ [1]  24/1
different [18]  10/12
16/25 23/8 23/15 23/21
28/8 30/7 30/8 30/10
32/10 63/14 63/14
75/25 79/19 84/21 86/9
86/9 86/21
differently [2]  41/24
84/11
difficult [1]  84/11
digging [1]  75/10
diligence [1]  89/6
diminishment [1]  57/1
diminution [1]  57/1
diplomatic [1]  40/23
direct [63]  15/14 29/13
36/15 37/2 41/3 48/20
49/5 49/11 49/12 50/16
50/23 51/22 51/24
52/16 52/18 52/23
52/24 53/20 54/25 55/1
56/1 56/16 56/21 56/25
56/6 57/10 57/16 58/1
58/8 58/9 60/3 63/22
63/23 64/7 64/13 64/18
66/13 67/23 68/1 68/8
68/9 68/11 68/17 68/24
69/4 69/8 69/20 69/24
69/25 70/1 70/4 70/18
71/16 71/20 72/1 72/10

direct-effect [1]  57/16
direction [1]  45/15
directly [3]  23/12 62/1
70/15
director [1]  80/14
directors [1]  75/22
directory [1]  76/5
directs [1]  68/1
disagree [2]  65/10
65/13
disappear [1]  20/21
discovered [1]  80/24
discovery [3]  47/6 73/9
84/24
discretion [1]  45/7
discretionary [1]  83/4
discuss [1]  87/16
discussed [4]  49/22
68/19 83/22 86/1
discussing [1]  67/17
discussion [7]  5/7
30/17 37/3 48/3 68/6
70/16 78/8
discussions [3]  54/18
82/10 83/11
dismiss [9]  31/12 45/1
46/16 47/7 47/10 48/9
55/24 71/4 71/7
dismissed [1]  86/23
disposal [1]  30/4
disposes [1]  68/16
dispositive [1]  71/14
dispute [2]  59/14 61/23
disputes [1]  81/3
disputing [1]  61/23
distinction [1]  76/18
distinctive [1]  23/1
distinguish [1]  37/22
distinguishing [1]  25/8
district [7]  1/1 1/1 1/10
24/2 24/20 42/21 42/21
dividends [1]  37/1
do [38]  3/20 5/10 7/12
9/11 9/11 10/14 11/4
13/8 14/12 27/3 27/5
30/13 41/8 41/23 43/2
43/12 43/13 46/11
48/25 50/12 50/14
55/13 55/15 55/15
56/11 61/24 64/11
64/21 64/23 75/18 78/6
79/5 84/17 86/7 87/7
88/2 88/10 89/1
Do you [1]  41/23
do you have [1]  75/18
doctrine [1]  45/18
document [2]  45/12
77/10
documents [1]  44/16
does [25]  4/12 4/15
4/16 6/6 6/7 22/2 27/5
28/2 29/11 42/6 42/14
47/4 53/7 54/3 54/4
57/19 60/21 61/19
61/20 61/25 62/9 68/4
67/1 75/2 77/6

doesn't [37]  23/20
29/21 30/5 31/10 38/5
41/13 41/15 41/15 43/2
50/6 50/15 52/13 52/16
54/12 55/7 56/11 58/9
59/4 60/8 61/9 61/10
63/3 63/4 64/14 64/19
64/21 64/22 64/24
65/11 71/17 74/7 78/10
78/11 79/23 80/1 80/2
83/6
dog [1]  64/6
doing [9]  7/2 7/3 8/23
11/20 14/7 26/11 60/1
64/13 64/25
dollar [1]  59/20
dollars [1]  58/5
domestic [1]  42/1
domestically [2]  34/20
42/3
don't [44]  4/23 5/19
5/25 7/15 10/1 11/6
13/3 13/15 20/2 20/22
21/5 21/23 24/11 28/7
32/13 33/21 34/1 38/8
40/2 40/4 40/7 46/1
46/9 47/3 47/16 49/15
53/7 57/25 59/19 59/20
72/16 74/18 76/6 78/5
78/18 78/21 81/5 81/24
83/21 83/25 84/6 86/17
86/21 88/2
done [9]  3/19 6/9 9/18
43/21 58/11 62/16 65/1
65/3 81/19
door [1]  80/2
doubt [1]  34/19
dovetails [1]  26/22
down [7]  19/14 45/17
45/19 45/25 54/16
71/19 83/16
downstream [1]  16/17
dramatic [1]  44/13
drill [2]  16/15 18/21
due [3]  4/19 4/22 81/17
due-process [1]  81/17
during [2]  10/23 90/5
Dutch [1]  54/22

**E**

each [9]  11/21 20/23
27/1 30/8 32/7 32/12
36/7 49/1 83/24
earlier [6]  13/19 14/4
15/3 15/17 52/13 78/15
economy [1]  66/18
effect [71]  7/8 48/20
49/6 49/11 49/12 49/25
50/11 50/16 51/10
51/11 51/12 51/23
51/24 52/8 52/11 52/13
52/16 52/18 52/23
52/24 53/1 53/20 55/1
55/3 55/4 56/1 57/16
57/18 57/21 57/22
57/25 58/1 58/2 58/8
58/9 58/10 58/11 60/3
63/22 63/23 64/7 64/14

**E**

effect... [29] 64/4 65/5 65/11 66/12 66/13 67/23 68/2 68/8 68/10 68/14 68/24 69/8 69/16 69/18 69/20 69/24 69/25 70/1 70/4 70/18 71/1 72/10 72/22 74/3 74/11 74/16 77/24 78/9 81/13

effective [1] 12/7
effectively [1] 43/21
effects [7] 53/6 68/17 71/16 71/20 72/1 76/16 82/16

efficiency [1] 84/3
effort [2] 38/18 79/21
efforts [1] 3/19
ego [4] 76/12 80/1 80/2 81/3

egos [2] 4/21 76/17
EIG [5] 49/22 72/25 73/18 74/10 77/22
Eisenhower [1] 44/17
either [8] 22/10 28/9 31/19 56/8 57/1 57/25 63/4 77/23

element [1] 25/22
elements [2] 6/17 15/4
eliminated [1] 19/19
else [7] 10/18 17/15 30/23 42/10 45/16 59/9 76/22

else's [1] 79/7
Email [2] 1/16 1/21
embargo [4] 19/12 19/13 53/24 54/1
emphasized [1] 10/21
empty [1] 81/1
enabling [1] 33/15
enacted [1] 12/3
encompasses [1] 16/24

end [6] 13/4 27/9 27/25 50/16 67/19 74/3
ended [2] 56/7 56/7
energy [2] 18/20 40/14
engage [5] 18/9 54/12 61/20 78/10 78/11
engaged [2] 8/18 54/6
engages [1] 57/14
enormous [1] 8/20
enough [7] 55/6 55/18 57/15 59/15 69/4 80/4 87/10

enrichment [8] 24/3 24/6 24/20 24/24 24/25 25/2 25/22 25/5
entered [1] 18/19
entering [1] 18/7
entire [1] 8/8
entirely [2] 19/19 82/15
entities [4] 75/1 84/13 84/15 85/12
entitled [1] 4/21
entity [5] 16/18 18/22 30/18 34/8 75/15
equally [1] 76/16

equivalent [2] 39/25 71/1
essential [2] 69/22 71/1
essentially [11] 4/1 4/4 4/20 28/6 44/1 55/25 70/20 78/3 84/13 84/15 86/18

Esso [16] 16/13 18/20 18/25 33/9 37/4 40/10 44/5 44/7 58/25 59/18 60/1 64/5 74/17 78/16 79/1 79/7

Esso-owned [1] 78/16
Essosa [1] 44/18
establish [6] 25/17 25/19 30/13 38/5 59/7 59/15
established [5] 47/9 59/16 60/12 60/12 64/7
et [2] 1/6 3/4

Eugene [2] 1/13 3/6
even [35] 5/10 14/24 16/17 27/25 30/12 32/8 36/21 40/2 40/4 40/25 44/9 45/5 45/12 50/12 52/4 54/7 54/7 54/13 55/11 56/14 56/16 56/25 59/23 62/2 63/20 64/25 66/2 66/3 71/11 71/16 71/17 71/19 78/12 79/13 80/2

event [5] 44/22 50/22 54/3 67/15 81/5
events [5] 28/4 51/23 55/8 55/19 59/13
eventually [1] 73/13
ever [1] 28/24
every [4] 22/21 31/18 31/20 77/8
everybody [4] 3/10 3/16 81/18 87/12
everyone [2] 47/20 47/22
everyone's [1] 5/8
everything [5] 10/18 50/10 66/2 66/3 66/24
evidence [9] 47/5 71/5 71/10 74/19 75/18 75/24 75/25 80/17 81/2
eviscerates [1] 23/6
exactly [5] 48/6 56/18 57/5 57/7 75/4
examination [1] 47/6
example [7] 6/21 23/10 23/13 23/14 43/21 51/1 77/4
except [6] 12/17 13/10 13/25 20/7 28/14 78/12
exception [49] 4/12 4/13 4/15 4/16 8/14 8/16 9/19 19/25 22/7 22/9 22/10 22/13 22/21 22/23 22/24 23/5 23/5 23/21 25/6 25/11 26/1 27/7 27/8 27/9 27/15 27/16 28/3 28/3 28/6 28/7 28/24 29/1 30/1 30/22 31/20 32/24

equivalent [2] 39/22...
41/23 41/25 43/3 46/21 46/22 47/11 48/15 71/6 76/23

exceptions [9] 29/23 30/4 30/6 30/9 30/10 31/10 32/6 32/16 32/23
exclusive [4] 7/17 10/4 13/20 62/7
excuse [6] 4/22 22/6 40/3 40/6 47/25 60/19
execution [1] 7/10
executive [2] 34/25 35/1
exemption [3] 6/7 7/12 27/1
exemptions [1] 53/25
exhibit [6] 72/5 76/2 76/4 77/11 80/19 80/19
exhibits [1] 71/23
exist [1] 31/24
existence [1] 40/12
expands [1] 19/17
expected [1] 81/21
expert's [1] 85/6
expertise [1] 51/5
experts [2] 45/4 47/5
explains [2] 20/11
explicit [2] 12/9 14/25
explicitly [10] 6/6 6/7 6/10 7/11 7/12 7/19 9/18 10/12 10/16 68/25
exposed [1] 18/12
expressly [2] 10/1 39/11
expropriated [9] 8/17 8/22 14/23 24/4 24/7 24/23 26/17 28/17 31/7 31/20 77/8
expropriation [38] 4/12 4/15 8/14 8/16 9/9 19/24 22/7 22/13 22/15 22/22 22/24 23/12 23/17 24/5 25/5 26/9 27/7 27/9 27/15 28/3 28/7 28/24 29/3 29/6 29/11 29/17 31/1 31/18 32/24 34/3 34/22 35/11 37/8 41/23 41/25 44/5 44/7 46/25
expropriations [2] 23/24 38/24
extension [1] 40/15
extensive [1] 36/7
extent [5] 36/22 56/19 59/21 71/4 84/22
EXXON [7] 1/3 3/3 34/9 34/10 40/13 55/4 72/4
Exxon's [2] 33/6 33/8
eyes [1] 27/12

**F**

F.3d [1] 68/13
facetious [1] 51/21
facilitate [1] 62/9
facilities [2] 58/5 58/14 71/22
facility [2] 58/16 59/18
fact [14] 10/14 14/6

44/14 49/12 55/1 68/11 76/17 84/16 84/21 86/9
fact-intensive [2] 84/16 84/21
facts [14] 14/6 29/22 30/2 31/9 31/11 59/15 67/16 71/12 71/13 71/15 77/7 79/18 82/14 82/18
factual [4] 50/4 75/9 86/21 87/10
factually [2] 66/25 78/24
fair [3] 3/18 30/11 84/19
fairly [5] 5/4 7/25 29/5 30/25 63/19
false [1] 78/1
familiar [2] 73/2 87/4
family [1] 59/10
family-member [1] 59/10
far [4] 9/17 29/3 52/3 52/23
fashion [1] 6/1
favor [1] 14/7
FCSC [3] 41/12 41/17 41/20
federal [1] 46/5
felt [2] 68/7 71/21
few [4] 21/10 39/7 66/25 77/3
field [1] 55/2
figure [3] 58/24 59/5 75/1
file [1] 88/9
filed [1] 75/14
final [1] 80/7
finance [1] 86/17
financial [10] 51/3 55/5 55/17 56/11 56/11 56/16 56/16 56/25 57/1 77/20
financing [1] 72/7
Fincimex [5] 54/10 54/11 57/19 59/25 79/19
find [4] 20/24 70/25 73/1 76/9
finding [3] 51/1 51/9 69/7
findings [9] 25/1 43/19 43/24 44/12 50/15 50/15 53/3 53/5 71/18 fine [8] 3/11 5/14 11/9 11/11 32/21 43/7 62/14 89/2
finer [2] 29/19 31/17
fingertips [1] 76/6
finish [1] 76/7
first [20] 4/3 5/20 6/16 12/8 17/23 28/19 29/13 33/13 34/9 35/8 40/22 48/22 49/4 53/17 56/4 62/2 67/3 68/4 75/23 82/7
fit [2] 41/13 45/2

its [3] 15/23 41/11 41/12
five [4] 4/18 4/25 5/5 87/3
flatly [1] 29/15 43/22
Floor [1] 1/20
Florida [1] 42/22
flow [4] 56/5 56/6 56/7 56/8
flowing [2] 50/22 50/22
focus [4] 11/21 43/9 60/25 61/1
focused [1] 25/25
focusing [1] 56/9
follow [2] 46/9 82/21
followed [1] 87/5
following [4] 3/21 6/4 23/8 37/24
follows [3] 28/23 31/18 52/24
food [17] 54/12 57/14 57/15 61/11 61/12 61/14 61/24 62/6 63/4 64/9 64/9 64/15 73/24 78/11 79/2 79/16 79/20
foods [1] 66/8
foregoing [1] 90/3
foreign [25] 4/7 4/9 12/4 12/6 13/21 14/10 14/13 20/15 20/23 36/13 40/20 40/21 41/1 41/7 51/6 51/14 51/15 60/7 62/5 68/24 69/2 69/7 69/19 70/3 72/6
foremost [2] 29/14 29/24 30/16 33/13 37/25 38/1 55/21 68/4
Foremost-McKesson [5] 29/14 29/24 30/16 38/1 55/21
forget [1] 31/6
forgot [2] 48/2 63/13
form [1] 19/5
forth [6] 14/11 15/24 35/2 52/25 71/23 79/25
forum [1] 47/4
forward [4] 20/16 53/23 54/8 79/11
found [10] 28/9 29/6 31/11 32/8 44/2 44/11 49/24 69/9 85/7 86/13
four [3] 24/2 24/19 58/24
fours [1] 24/23
framed [2] 4/2 72/21
Frank [2] 1/17 3/7
frankly [3] 46/1 84/22 87/24
frequently [1] 59/19
friend [1] 20/3
front [2] 48/15 88/25
FSA [1] 19/3
FSIA [39] 4/9 6/7 7/9 7/13 7/17 7/19 8/7 8/14 8/25 9/10 9/15 10/4 10/11 10/14 10/16 12/11 12/14 12/17 12/18 13/17 13/18 14/3

**F**

FSIA... [17] 14/14 17/5 18/14 20/7 20/8 20/9 22/5 25/13 27/1 27/6 41/13 43/2 50/6 52/12 52/18 71/16 73/18
full [4] 60/12 60/14 74/6 86/19
fully [2] 12/6 85/8
fundamentally [1] 40/25
further [10] 5/7 9/20 11/6 21/3 27/19 32/20 38/22 44/24 56/15 88/12
Fábrega [2] 42/18 42/18

**G**

game [1] 11/14
Garcia [3] 34/15 42/20
Garcia-Bengochea [1] 42/20
gas [11] 54/9 66/6 66/8 74/12 74/13 74/16 74/20 74/21 78/13 79/2 79/8
gave [1] 34/25
general [10] 11/24 12/1 15/3 15/16 15/19 15/21 54/24 56/20 68/15 73/18
general-jurisdiction [1] 15/19
generally [3] 68/8 70/2 71/24
genus [1] 6/17
Germany [1] 18/6
get [24] 3/18 5/8 21/24 48/25 52/1 66/13 67/16 68/21 71/19 76/2 76/3 76/7 79/23 80/1 81/19 82/6 82/7 82/23 85/8 85/15 87/17 88/4 88/25 89/9
gets [2] 21/21 41/20
getting [2] 67/10 89/10
give [13] 15/4 16/20 17/20 21/7 29/22 31/9 32/20 34/16 46/6 47/15 66/17 77/13 81/18
given [11] 10/3 11/15 12/6 15/1 15/1 17/17 29/7 33/16 53/24 60/22 71/8
gives [6] 15/6 20/24 23/19 25/21 26/20 34/19
giving [1] 12/9
gleaned [1] 5/1
glimpse [1] 20/24
global [7] 55/9 55/10 55/11 72/2 72/15 72/19 73/15
go [17] 11/21 15/6 28/13 43/19 45/19 48/2 59/11 59/12 63/16 63/16 70/4 70/14 71/18

Go ahead [3] 63/16 63/16 77/17
goal [1] 81/11
goals [1] 52/19
goes [6] 6/23 10/13 56/5 59/3 59/17 83/15
going [13] 17/23 43/6 45/11 45/17 45/25 46/10 53/11 53/12 53/16 63/2 82/4 86/23 87/21
gone [2] 3/23 19/14
Gonzalez [1] 45/21
good [7] 3/2 3/9 6/3 17/19 33/3 73/19 83/23 81/19 85/20
goods [12] 8/2 8/5 8/6 61/25 62/10 62/16 62/17 62/19 62/21 62/22 65/20 73/24
got [9] 9/20 24/21 26/19 33/5 43/11 47/14 47/23 81/19 85/14
gotten [1] 82/11
government [14] 16/19 30/19 31/2 39/21 39/24 44/20 45/23 51/5 51/8 54/20 62/3 62/25 63/1 72/8
government's [3] 39/15 44/19 55/24
governmental [2] 30/20 35/12
grant [7] 4/4 5/22 7/3 14/8 14/11 15/4 22/3
granting [3] 5/11 6/19 7/2
grants [1] 15/21
grapple [1] 64/18
grappled [2] 12/23 66/13
gravamen [9] 25/15 25/16 26/6 26/25 27/3 27/10 27/11 28/11 29/25
great [2] 47/18 50/22
grew [1] 29/17
grocery [1] 73/23
ground [1] 14/25
grounds [1] 43/15
guess [12] 7/22 9/3 12/21 14/5 29/10 31/7 33/21 36/19 43/21 44/24 64/20 76/11
guide [1] 27/13
guts [2] 25/20 37/4
guy [1] 67/13
Générale [1] 54/22

**H**

had [24] 13/18 13/20 17/14 18/19 20/16 24/5 24/20 35/18 40/10 40/10 43/23 51/7 55/25 68/7 70/18 73/21 75/8 78/15 81/24 82/9 83/10 87/2 87/4 88/17
half [1] 88/24
hand [1] 16/1
handsome [1] 67/13
hang [4] 13/11 48/23 77/14 78/23
happen [2] 68/17 87/1
happened [1] 20/25
happening [1] 61/3
happens [7] 58/10 59/14 59/19 59/19 59/21 63/7 63/7
happy [2] 5/2 11/8
hard [8] 19/9 25/23 51/4 52/11 53/22 78/8 81/19 85/20
harm [14] 49/6 54/25 55/5 55/17 56/11 56/11 56/16 56/16 56/21 56/25 57/1 57/7 57/8 77/20
harmed [1] 70/17
has [74] 7/19 7/24 10/4 12/10 17/8 19/13 21/20 23/1 23/4 29/17 30/4 33/11 33/22 34/2 36/8 36/9 39/15 39/16 39/17 39/18 40/16 40/18 43/14 44/2 46/18 46/25 50/11 50/14 51/12 52/6 52/8 52/20 52/20 52/21 52/21 53/22 54/5 54/8 55/3 55/4 55/18 57/25 58/11 59/2 59/8 59/8 59/11 59/11 59/11 60/3 61/7 62/15 62/16 62/20 63/25 64/5 64/10 68/10 68/25 69/3 69/24 72/3 72/22 73/15 76/4 79/5 79/11 79/25 83/18 84/7 85/3 86/6 86/8 86/12
hasn't [4] 8/4 75/4 85/25 86/1
hat [2] 12/24 13/12
have [128]
haven't [1] 83/22
having [3] 9/7 63/21 70/16
hears [1] 41/4
heavily [1] 10/24
heavy [1] 83/25
heed [1] 45/15
held [3] 28/18 37/8 55/23
Helicopter [2] 49/9

Helmerich [10] 23/14 35/5 38/2 38/11 39/20 40/16 40/18 41/14 48/7 48/7
Helms [19] 14/4 19/3 19/20 21/14 21/20 26/14 29/19 34/13 34/17 34/20 44/11 53/4 67/18 67/25 68/3 69/1 69/12 71/18 73/17
Helms-Burton [19] 14/4 19/3 19/20 21/14 21/20 26/14 29/19 34/13 34/17 34/20 44/11 53/4 67/18 67/25 68/3 69/1 69/12 71/18 73/17
help [2] 57/12 57/12
helpful [3] 11/20 21/1 38/20
hence [1] 14/4
her [1] 40/23
here [67] 3/19 3/22 8/4 14/3 14/15 15/24 16/13 17/1 17/21 22/6 22/7 23/19 25/15 29/10 29/11 29/19 29/22 30/24 31/1 31/14 31/22 32/20 33/6 33/8 33/11 35/20 36/3 40/2 40/4 40/16 43/10 43/15 43/17 43/20 44/25 46/4 49/11 50/9 50/14 50/16 52/4 52/14 52/21 54/25 55/22 56/3 56/8 56/10 58/4 59/2 59/15 60/8 60/11 64/10 64/19 65/17 66/13 67/22 71/3 71/7 76/25 78/6 81/6 81/11 81/20 81/21 87/11
Here's [1] 23/7
Hess [5] 13/19 15/9 15/11 15/20 15/24 16/4
high [1] 59/7
highlights [1] 77/2
him [4] 82/4 83/15 83/18 85/13
hint [1] 20/24
his [1] 85/9
historian [1] 46/4
history [7] 14/5 19/5 19/13 19/18 20/5 20/11 25/1
hit [1] 77/1
hold [3] 50/3 50/5 68/20
holding [5] 15/13 15/16 35/14 70/6 78/3
holds [2] 37/9 63/21
home [1] 57/9
Honor [144]
Honor's [4] 37/2 68/11 80/3 83/2
HONORABLE [1] 1/9
hook [1] 16/21
hooks [1] 30/10

hour [1] 47/13
hours [2] 81/21 88/24
House [3] 20/15 20/16 20/19
how [21] 4/2 7/16 10/13 13/17 27/5 28/7 33/22 34/1 34/2 38/9 44/1 59/19 60/5 60/6 60/22 63/11 64/18 71/24 75/5 86/17 87/1
hung [1] 12/24
hypothetical [5] 16/19 17/2 19/11 21/9 84/4
hypothetically [4] 16/8 16/11 43/11 83/14

**I**

I also [2] 63/19 86/11
I am [1] 43/13
I believe [4] 16/12 30/11 40/17 68/17
I can [4] 44/25 76/7 86/4
I can't [1] 63/11
I didn't [2] 35/3 85/20
I didn't see [1] 35/18
I don't [5] 4/23 24/11 34/1 59/20 74/18
I don't have [2] 11/6 76/6
I don't think [6] 46/1 47/3 53/7 57/25 72/16 78/5
I guess [11] 9/3 12/21 14/5 29/10 31/7 33/21 36/19 43/21 44/24 64/20 76/11
I have [9] 3/23 5/1 13/15 18/16 25/23 27/14 39/7 74/25 85/7
I just [4] 16/6 38/24 42/20 81/23
I know [7] 5/1 12/23 24/17 43/1 77/3 81/20 83/25
I mean [42] 6/13 6/16 7/1 9/17 11/22 18/25 25/9 27/17 28/11 31/18 33/24 35/3 35/4 37/25 38/7 38/15 40/8 42/10 43/15 43/18 47/4 51/17 52/10 53/23 55/8 55/20 58/13 58/15 60/16 61/20 61/23 62/9 62/10 64/15 65/14 69/1 73/22 83/24 84/20 85/6 85/9 87/23
I misunderstood [1] 79/4
I say [1] 27/10
I should [1] 7/3
I think [72] 4/1 6/4 6/22 7/5 11/20 11/22 12/11 12/12 13/14 14/3 14/6 17/8 17/17 21/20 26/5 26/23 26/23 27/10 27/13 27/16 27/17 27/24 28/16 29/2 29/9

**I**

**I think... [47]** 29/24 30/2 31/22 32/14 34/4 34/18 34/24 36/1 36/4 36/17 38/12 38/13 38/14 38/17 44/14 45/7 48/6 49/8 49/17 51/11 52/15 55/23 56/9 56/14 59/6 59/13 60/3 60/5 63/21 67/1 68/13 68/15 71/11 73/11 73/22 77/1 77/2 78/4 79/3 79/21 80/2 82/20 85/1 85/9 85/17 86/2 88/18
**I thought [4]** 5/5 56/22 74/15 77/15
**I told [1]** 86/16
**I understand [4]** 29/3 30/25 31/2 61/13
**I want [3]** 40/19 47/15 68/21
**I wanted [4]** 24/17 33/2 33/5 73/21
**I was [1]** 17/23
**I will [3]** 76/3 77/3 81/19
**I would [3]** 21/16 45/15 60/2
**I'd [3]** 3/15 67/14 87/16
**I'd rather [1]** 67/14
**I'll [20]** 5/25 6/1 6/14 7/18 11/13 17/20 21/7 27/20 27/21 32/20 39/7 44/9 46/6 53/18 63/17 66/17 76/2 77/13 84/8 85/5
**I'm [47]** 3/24 5/2 7/5 7/21 8/17 11/8 11/9 11/10 11/11 19/17 30/24 32/9 32/21 33/19 35/4 37/25 38/9 45/16 46/3 48/5 50/18 51/21 56/15 56/22 58/21 60/17 60/20 62/12 63/12 67/9 69/5 69/9 73/2 77/15 78/24 79/10 79/10 79/13 79/22 80/8 85/19 85/19 85/24 86/13 87/9 87/15 89/2
**I'm not [6]** 32/9 38/9 45/16 46/3 51/21 60/20
**I'm not sure [2]** 48/5 69/9
**I'm sorry [13]** 7/5 8/17 11/10 19/17 33/19 50/18 56/22 62/12 63/12 77/15 79/22 80/8 85/19
**I've [12]** 3/19 5/3 5/4 17/17 18/16 47/14 47/23 74/25 77/1 81/18 87/2 87/4
**ICSID [1]** 37/17
**idea [1]** 19/7
**identity [2]** 75/21 84/14
**III [12]** 6/6 8/25 16/20 17/3 17/4 19/23 24/8 24/23 25/1 41/15 43/1

**III's [1]** 41/16
**immediate [5]** 14/21 15/6 50/21 82/23 83/20
**immediately [2]** 82/5 86/3
**Immunities [1]** 4/10
**immunity [28]** 4/6 4/11 5/23 7/6 7/13 8/4 8/7 9/25 10/7 10/8 13/12 13/14 13/25 15/1 16/17 17/3 17/6 19/8 21/21 21/24 22/4 22/5 26/1 29/7 82/3 82/23 83/15 86/10
**impact [8]** 8/20 18/12 52/20 52/21 52/22 72/3 73/14 73/16
**impacting [1]** 74/4
**impacts [2]** 71/20 72/19
**impaired [1]** 70/9
**impairs [1]** 70/20
**implication [1]** 15/17
**implicitly [1]** 8/3
**importance [1]** 81/6
**important [3]** 12/8 63/20 67/1
**importantly [1]** 7/14
**include [5]** 4/5 7/6 8/9 22/4 68/24
**includes [4]** 12/18 13/21 41/1 41/2
**including [6]** 5/23 8/1 17/11 20/20 43/16 51/4
**inconceivable [1]** 18/10
**inconsistent [2]** 32/7 32/9
**incorporated [1]** 75/11
**incorrect [1]** 78/17
**indeed [1]** 41/3
**independent [2]** 4/4 22/3
**indicated [2]** 39/20 40/18
**indicating [1]** 88/9
**indication [2]** 9/16 10/2
**indicators [1]** 64/17
**indirect [9]** 33/10 34/5 34/12 34/15 34/19 35/21 41/2 51/12 57/10
**indirectly [1]** 62/1
**inexorably [1]** 52/24
**inextricable [1]** 59/12
**inference [1]** 9/23
**infringed [1]** 33/11
**infringement [1]** 42/5
**initial [2]** 29/11 65/15
**injected [1]** 62/20
**injure [1]** 64/19
**injured [3]** 49/22 50/5 52/2
**injurious [1]** 58/1
**injury [7]** 49/6 49/12 50/3 50/6 68/7 68/24 69/2

**inquiries [1]** 64/11
**inquiry [2]** 5/5 84/16
**inquiry [1]** 20/14
**insight [1]** 20/14
**insignificant [1]** 17/25
**insisted [1]** 9/9
**insofar [1]** 13/15
**instance [2]** 18/18 35/8
**instances [1]** 21/15
**instead [1]** 5/11
**instrumentalities [9]** 4/7 8/2 8/10 13/22 18/9 21/12 21/17 21/23 31/23
**instrumentality [7]** 8/5 8/13 12/3 14/10 14/13 16/10 46/20
**integrity [1]** 27/6
**intend [1]** 12/16
**intended [3]** 10/19 12/13 52/8
**intensive [3]** 66/25 84/16 84/21
**intention [1]** 14/19
**interest [9]** 34/19 38/4 41/1 41/10 41/18 41/18 41/19 52/2 52/18
**interested [1]** 46/4
**interesting [3]** 30/15 30/16 87/6
**interests [3]** 14/22 41/3 41/3
**interlocking [3]** 49/19 51/22 75/22
**interlocutory [2]** 83/12 84/5
**intermediary [3]** 55/18 61/15 63/7
**international [39]** 23/13 28/10 31/25 33/23 34/3 34/23 35/8 35/10 35/13 35/15 36/2 36/6 36/9 36/12 36/12 36/18 36/23 37/6 37/17 37/19 38/6 38/9 38/16 38/19 39/12 39/19 40/17 42/4 42/6 42/8 43/14 43/16 46/13 46/23 46/25 48/9 51/18 51/19 52/5
**international-law [1]** 46/13
**international-type [1]** 37/19
**interpretation [2]** 9/8 14/6
**interpretations [1]** 25/12
**interpreted [1]** 13/18
**interrupt [3]** 7/21 67/4 70/5
**interruption [2]** 40/11 50/23
**intervening [4]** 50/22 51/23 55/8 55/18
**introduced [1]** 9/19
**invest [1]** 19/4
**investment [3]** 38/14 51/5 72/6

**involved [7]** 16/12 54/9 78/12 79/14 79/15 79/16 81/15
**involving [1]** 29/15
**Iran [1]** 27/1
**Iranian [6]** 30/18 37/10 38/10 38/13 55/24 55/24
**is [314]**
**is there [2]** 42/10 72/21
**isn't [11]** 13/23 23/7 23/20 43/19 47/4 54/7 55/20 56/3 57/15 75/24 84/22
**issue [19]** 5/20 11/7 11/21 16/1 23/17 38/23 38/25 43/11 48/17 56/10 63/18 66/18 67/2 80/7 81/17 85/18 85/24 86/11 86/12
**issued [2]** 15/12 31/3
**issues [11]** 3/24 5/7 39/2 47/2 82/11 86/8 86/9 86/10 86/21 87/11 88/22
**it [234]**
**It doesn't [1]** 43/2
**It recognizes [1]** 69/2
**it would be [1]** 19/18
**it's [103]**
**its [28]** 15/13 15/15 21/15 23/6 24/10 27/1 30/4 33/8 33/17 33/17 35/12 36/13 36/21 36/21 37/11 41/10 41/11 43/23 45/24 52/7 52/9 52/19 52/19 59/10 62/16 66/5 68/4 78/3
**itself [15]** 5/22 9/24 10/1 12/2 12/7 12/15 15/11 26/2 26/18 34/1 40/18 62/20 62/25 67/25 84/24

**J**

**Jared [2]** 1/12 3/5
**job [1]** 53/7
**JOHNSON [1]** 1/14
**joint [3]** 18/7 18/19 19/5 72/3 88/9
**Juan [1]** 42/18
**judge [3]** 1/10 42/24 46/5
**Judiciary [2]** 20/20 20/22
**jurisdiction [41]** 4/5 4/19 4/22 5/22 6/8 6/18 6/24 7/4 7/13 7/17 10/5 10/8 13/20 14/8 14/12 15/5 15/19 16/21 16/24 20/17 20/17 22/3 63/18 81/17 82/2 82/3 82/22 82/25 83/4 83/13 83/17 84/5 84/6 84/10 84/25 85/2 85/18 85/22 86/23 88/1 88/13
**jurisdictional [1]** 10/6
**jurisprudence [1]**

**just [52]** 5/10 6/10 6/18 7/7 9/7 9/18 10/14 16/2 16/6 18/11 18/3 19/11 22/25 24/14 28/18 30/6 30/16 31/12 34/8 36/19 37/21 37/24 38/24 39/5 41/2 42/16 42/19 42/20 47/16 48/1 49/1 59/16 65/14 65/15 66/23 67/5 68/8 70/5 73/25 75/15 76/3 77/14 79/7 79/23 80/9 81/11 81/18 81/23 85/7 87/10 88/4 88/9
**Justice [1]** 36/18
**justiciable [2]** 44/14 44/21
**justified [2]** 43/17 43/20

**K**

**keep [2]** 27/1 75/1
**keys [1]** 77/2
**kind [2]** 29/3 59/2
**kinds [2]** 53/5 53/6
**King [1]** 42/24
**knew [3]** 13/16 14/7 43/6
**know [34]** 5/1 7/16 12/21 12/23 16/24 20/22 21/5 23/10 24/17 25/9 26/6 36/6 37/25 43/1 45/7 52/4 52/17 53/19 54/16 59/19 59/20 69/8 73/11 77/3 81/20 81/24 82/10 82/23 83/21 83/25 85/9 85/11 87/6 88/20
**knowledge [1]** 13/17
**knows [1]** 48/19
**Krinsky [32]** 1/17 1/18 3/7 5/25 9/4 11/6 11/15 17/20 21/2 22/11 24/13 27/20 28/5 32/20 39/4 46/7 46/9 48/1 48/16 64/21 66/16 66/18 67/17 68/7 69/3 77/13 77/17 82/1 82/9 83/11 83/21 85/15
**Krinsky's [5]** 13/14 29/9 39/2 82/13 85/1

**L**

**lack [1]** 45/14
**land [5]** 58/25 64/5 74/22 79/7 79/7
**language [8]** 12/17 14/25 19/6 50/22 52/11 52/13 52/25 53/19
**largely [2]** 23/9 82/17
**last [6]** 3/20 20/2 32/20 85/20 87/3 88/24
**late [1]** 44/17
**later [3]** 63/17 82/22 83/12
**law [61]** 10/6 10/7 24/6 12/12 24/24 25/4 27/25 28/11 29/13 30/2 31/6

**L**

law... [50]  31/6 31/14 31/25 32/17 33/23 34/3 34/11 34/20 34/23 35/8 35/10 35/13 35/15 36/3 36/6 36/9 36/12 36/13 36/23 37/6 37/17 38/6 38/9 38/16 38/17 38/19 39/12 39/19 40/17 42/1 42/2 42/4 42/6 42/9 42/10 42/13 43/15 43/16 45/7 46/13 46/23 46/24 46/25 48/9 52/5 52/7 54/2 55/15 55/16 82/24

lawsuits [2]  18/13 19/24

lawyerly [1]  28/13

learned [1]  75/10

least [13]  3/16 3/18 5/2 8/3 13/14 13/19 26/12 30/25 38/22 58/13 61/13 65/17 69/18

left [5]  11/3 22/22 27/15 32/5 39/23

legal [7]  30/8 30/10 49/5 67/1 67/16 80/13 82/18

legally [7]  27/18 61/4 61/6 65/25 66/2 66/3 66/5

legislated [2]  10/10 13/16

legislating [3]  13/16 52/12 52/17

legislation [6]  10/23 12/4 31/3 33/15 53/5 53/7

legislative [7]  14/5 19/5 20/5 20/10 25/1 44/12 53/3

legislators [1]  14/17

lenient [1]  71/9

lens [1]  25/23

less [3]  33/12 49/11 67/11

let [21]  3/21 5/8 6/13 13/2 33/20 34/21 41/22 41/24 48/22 49/1 66/17 66/23 68/22 70/5 77/18 81/18 81/23 83/10 84/11 85/15 87/14

let's [17]  21/3 21/4 22/1 22/11 32/22 32/24 48/14 48/16 53/10 53/15 57/11 61/12 67/15 68/20 80/6 81/16 88/2

lets [1]  46/1

letter [2]  8/15 9/1

level [2]  38/8 71/19

liability [8]  19/7 23/19 25/21 60/11 60/11 60/15 65/9 68/3

LIBERTAD [6]  4/3 5/21 5/21 6/17 22/2 43/24

LIEBERMAN [1]  1/18

lies [1]  6/4

light [2]  38/10 55/22

like [13]  12/13 12/16 14/5 30/3 45/9 45/10 49/20 55/20 74/10 77/4 77/7 78/6 87/16

limit [1]  82/11

limitation [1]  15/24

limitations [3]  9/15 23/1 90/7

limited [1]  21/13

limiting [1]  15/15

limits [1]  15/13

Lindsey [2]  1/17 3/7

line [3]  50/23 70/6 76/11

link [1]  79/22

list [1]  64/4

listed [1]  72/13

literally [2]  9/18 39/23

litigant [6]  14/9 14/9 15/20 30/3 31/19 71/11

litigants [1]  12/13

litigated [3]  19/16 34/14 34/17

little [7]  7/23 13/1 39/1 67/6 71/9 77/7 85/19

LLP [1]  1/14

lobbying [1]  54/19

located [1]  74/23

locations [2]  58/19 58/22

locus [1]  78/5

logic [3]  29/10 70/6 70/7

long [1]  45/11

look [21]  7/1 7/24 8/7 22/5 25/14 25/16 26/8 36/10 38/10 46/3 54/17 54/22 60/25 61/2 64/17 69/6 71/20 72/5 75/20 85/5 86/25

looked [1]  20/13

looking [2]  25/23 71/9

lose [1]  46/10

lot [11]  5/14 14/5 16/24 20/6 32/23 48/15 66/21 66/25 77/7 84/16 88/18

**M**

machines [1]  74/12

made [9]  12/15 14/8 14/16 14/25 15/12 17/24 48/8 62/15 78/1

main [2]  4/25 19/2

make [17]  10/3 10/25 12/3 13/8 19/11 23/20 26/22 28/13 29/24 30/3 38/24 39/13 42/6 49/4 61/21 69/7 84/12

makes [7]  5/9 5/14 26/8 26/9 26/19 27/11 51/1

making [5]  20/4 45/9 58/13 58/18 84/1

management [2]  68/12 80/20

mandate [1]  40/25

many [7]  3/20 7/16

lot [21]
74/21

March [3]  1/5 19/12 90/10

marketing [1]  65/19

markets [5]  55/3 72/2 72/15 72/19 77/20

material [1]  21/23

matter [21]  4/5 5/22 6/8 6/18 6/23 7/4 7/13 15/4 16/21 16/23 22/3 50/4 61/9 61/11 61/19 61/20 61/25 82/3 85/2 86/23 90/4

matters [1]  82/23

may [15]  10/18 26/18 31/12 33/9 37/7 38/3 50/4 51/25 75/9 77/1 77/12 81/20 84/9 84/16 88/11

maybe [10]  4/17 5/10 7/23 19/18 41/12 61/2 64/4 69/4 87/9 88/21

McKesson [5]  29/14 29/24 30/16 38/1 55/21 55/21

me [52]  3/10 3/21 4/8 4/22 5/8 6/13 6/23 7/22 7/23 9/7 12/24 13/2 13/11 20/12 22/6 33/20 34/21 34/21 35/4 35/4 40/3 40/6 41/22 41/24 42/17 43/19 43/22 47/25 48/22 49/1 49/5 52/10 57/12 57/12 58/1 59/21 60/19 66/17 66/23 67/11 68/22 70/5 73/8 77/18 80/9 81/18 81/23 83/10 84/11 85/15 88/4 88/25

mean [58]  6/13 6/16 7/1 9/17 11/22 13/13 18/25 25/9 27/5 27/17 28/11 28/14 30/5 31/10 31/18 31/22 33/24 35/3 35/4 35/6 37/25 38/7 38/15 40/8 42/10 43/5 43/15 43/18 47/4 51/17 52/10 53/23 55/8 55/20 58/13 58/15 59/18 60/16 61/10 61/23 62/9 62/10 64/3 64/15 65/14 69/1 71/2 73/22 74/15 82/4 83/24 84/10 84/20 85/5 85/6 85/9 85/17 87/23

meaning [4]  52/14 52/15 52/16 60/4

means [7]  8/20 8/25 12/19 13/20 30/6 36/8 49/6

meant [3]  4/18 10/22 27/3

mechanical [1]  2/6

meet [4]  8/14 19/24 60/21 72/8

meetings [2]  36/25 54/20

meets [1]  60/23

member [1]  59/10

mention [3]  40/19 42/20 48/2

mentioned [2]  42/21 50/8

mentions [1]  13/13

Merit [1]  2/2

merits [1]  82/7

method [1]  11/20

meticulous [1]  45/10

meticulousness [1]  45/14

Michael [5]  1/13 1/17 3/5 3/7 48/1

might [5]  11/1 13/4 45/3 77/8 82/21

millions [1]  58/5

mind [5]  13/3 18/3 44/23 51/12 88/17

minimum [2]  4/24 45/4

minimum-contacts [1]  4/24

Ministry [1]  62/5

minute [1]  43/9

minutes [5]  11/16 17/20 46/6 47/14 47/16

mispronouncing [1]  33/9

missed [3]  24/14 24/16 77/4

misunderstanding [1]  87/9

misunderstood [1]  79/4

mkrinsky [1]  1/21

MOBIL [5]  1/3 3/3 34/10 40/13 72/4

moment [3]  19/12 67/20 68/21

money [2]  59/18 77/25

moot [1]  42/11

more [29]  7/2 7/3 11/7 15/2 15/3 15/16 15/25 16/3 26/23 33/12 38/13 38/14 38/23 39/1 40/25 46/3 46/10 47/14 47/23 51/17 51/19 67/10 67/12 68/14 70/1 71/9 73/17 84/1 87/4

most [4]  12/8 18/8 55/21 67/11

motion [9]  31/12 45/1 46/16 47/7 47/10 48/9 55/24 71/3 71/7

movant [1]  11/15

move [2]  21/3 21/4

movement [1]  61/3

moving [1]  20/16

Mr [1]  3/13

Mr. [62]  5/16 5/25 9/4 11/6 11/13 11/15 11/18 13/14 16/2 17/15 17/20 20/3 21/7 21/22 24/13 27/20 27/20 27/22 28/5 29/9 32/19 32/20 33/1 38/21 39/2 39/4 39/8 39/18 46/6

member [1]  59/10

mention [3]  40/19 42/20 48/2

mentioned [2]  42/21 50/8

mentions [1]  13/13

Merit [1]  2/2

merits [1]  82/7

method [1]  11/20

meticulous [1]  45/10

meticulousness [1]  45/14

Michael [5]  1/13 1/17 3/5 3/7 48/1

might [5]  11/1 13/4 45/3 77/8 82/21

millions [1]  58/5

mind [5]  13/3 18/3 44/23 51/12 88/17

minimum [2]  4/24 45/4

minimum-contacts [1]  4/24

Ministry [1]  62/5

minute [1]  43/9

minutes [5]  11/16 17/20 46/6 47/14 47/16

mispronouncing [1]  33/9

missed [3]  24/14 24/16 77/4

misunderstanding [1]  87/9

misunderstood [1]  79/4

mkrinsky [1]  1/21

MOBIL [5]  1/3 3/3 34/10 40/13 72/4

moment [3]  19/12 67/20 68/21

money [2]  59/18 77/25

moot [1]  42/11

more [29]  7/2 7/3 11/7 15/2 15/3 15/16 15/25 16/3 26/23 33/12 38/13 38/14 38/23 39/1 40/25 46/3 46/10 47/14 47/23 51/17 51/19 67/10 67/12 68/14 70/1 71/9 73/17 84/1 87/4

most [4]  12/8 18/8 55/21 67/11

motion [9]  31/12 45/1 46/16 47/7 47/10 48/9 55/24 71/3 71/7

movant [1]  11/15

move [2]  21/3 21/4

movement [1]  61/3

moving [1]  20/16

Mr [1]  3/13

Mr. [62]  5/16 5/25 9/4 11/6 11/13 11/15 11/18 13/14 16/2 17/15 17/20 20/3 21/7 21/22 24/13 27/20 27/20 27/22 28/5 29/9 32/19 32/20 33/1 38/21 39/2 39/4 39/8 39/18 46/6

**N**

name [2]  34/9 61/16

narrow [2]  21/19 38/23

narrower [2]  15/18 17/1

narrowly [2]  18/17 21/19

nation [1]  52/6

national [4]  35/11 35/12 52/2 52/18

nationals [1]  51/7

nations [1]  12/6

nature [2]  30/20 30/22

necessarily [6]  21/12 31/11 38/5 38/8 71/14 88/20

necessary [1]  12/5

need [16]  4/23 10/1 14/12 15/10 39/1 47/5 47/5 47/6 47/14 49/12 50/3 68/7 79/21 83/16 84/12 88/10

needed [1]  51/3

needlessly [1]  84/1

needs [1]  23/17 25/17

46/9 48/6 48/16 56/15 64/21 66/16 66/17 66/18 66/19 67/4 67/17 68/7 69/3 76/23 77/13 77/17 77/23 81/11 81/23 82/1 82/9 82/13 83/11 83/21 84/8 85/1 85/6 85/15 86/5 87/17 87/20

Mr. Davidson [29]  5/16 11/13 11/16 11/18 16/2 17/15 20/3 21/7 27/20 27/22 32/19 33/1 38/21 39/8 39/18 46/6 48/6 56/15 66/17 66/19 67/4 76/23 77/23 81/11 81/23 84/8 85/6 85/15 87/17 87/20

Mr. Krinsky [28]  5/25 9/4 11/6 11/15 17/20 21/2 22/11 24/13 27/20 28/5 32/20 39/4 46/7 46/9 48/16 64/21 66/16 66/18 67/17 68/7 69/3 77/13 77/17 82/1 82/9 83/11 83/21 85/15

Mr. Krinsky's [5]  13/14 29/9 39/2 82/13 85/1

Ms. [1]  56/23

Ms. Davidson [1]  56/23

much [9]  42/20 67/8 68/6 73/22 81/20 87/23 89/6 89/7 89/9

multiple [2]  10/5 43/15

must [3]  22/8 22/14 48/9

my [20]  3/19 3/19 4/20 13/4 20/3 20/3 22/1 23/7 39/14 60/24 73/7 73/8 74/19 75/4 76/6 78/24 80/4 81/11 87/7 87/13

**N**

needs... [2] 25/19 47/3
negatively [1] 21/14
negotiations [1] 40/24
never [1] 33/3
nevertheless [1] 87/10
new [4] 1/20 6/8 7/12 18/12
next [2] 66/11 88/4
nexus [1] 66/11
no [46] 1/4 4/9 7/13 10/2 11/9 13/9 14/12 17/17 25/4 25/8 28/12 29/16 30/11 32/9 32/21 34/19 35/10 35/12 35/13 36/20 39/17 40/16 40/22 43/25 49/24 54/5 54/11 54/19 61/23 62/23 63/8 65/25 68/9 73/2 74/17 76/18 78/13 78/15 79/2 79/2 79/3 81/3 81/10 82/18 84/14 85/11
non [2] 44/14 44/21
non-justiciable [2] 44/14 44/21
none [2] 20/7 78/21
not [143]
note [1] 90/5
nothing [14] 10/21 22/20 22/22 26/11 27/17 39/23 44/11 44/22 50/11 53/1 60/16 61/6 66/7 79/5
notion [4] 55/9 58/2 59/2 85/25
notwithstanding [1] 75/13
now [12] 26/18 46/17 47/1 56/8 63/19 67/9 69/3 73/9 82/22 84/7 88/11 88/25
nowhere [2] 13/13 41/21
number [9] 14/17 31/6 37/11 55/8 59/1 59/1 76/2 78/19 78/25
numerous [1] 80/3
NW [2] 1/14 2/4
NY [1] 1/20

**O**

Obama [1] 19/20
obvious [1] 23/1
obviously [5] 15/10 27/25 33/17 73/22 76/25
occurred [1] 90/5
odd [2] 7/23 8/3
off [2] 43/5 54/18
off-shore [1] 54/18
officer [1] 75/12
officers [1] 76/5
offices [1] 80/1
Official [1] 2/3
officials [1] 72/9
often [3] 60/24 60/25 61/2

oil [19] 16/11 16/12 16/13 16/15 16/15 18/18 18/20 18/21 18/25 34/7 40/13 41/9 44/18 44/19 51/4 53/24 54/18 55/3 55/4
Oil's [1] 41/8
okay [32] 3/12 3/15 5/15 5/16 5/18 11/5 12/24 16/7 17/13 20/1 27/22 38/20 42/25 43/4 43/8 47/17 47/22 48/4 48/13 49/10 66/15 66/20 70/11 74/24 76/22 77/17 78/20 79/9 81/16 86/15 87/19 89/3
once [4] 28/17 74/13 74/22 83/5
one [66] 4/18 5/2 5/11 7/24 11/22 13/17 14/3 15/3 15/10 16/3 16/11 18/3 19/9 19/15 19/18 20/2 21/11 22/19 24/9 24/10 26/6 26/18 27/11 27/13 28/13 28/21 32/8 32/15 33/18 34/5 34/23 35/7 42/2 43/9 45/2 45/5 48/2 51/15 52/25 53/1 56/14 59/10 59/12 60/9 62/17 64/25 68/17 69/18 71/2 73/20 75/11 75/11 75/14 75/16 76/12 76/18 77/8 77/14 80/12 80/25 81/3 82/22 85/10 85/13 87/1 87/6
ones [3] 35/19 63/25 71/14
ongoing [1] 9/5
only [17] 20/12 20/14 23/3 23/4 39/14 41/3 62/17 62/18 63/1 63/23 63/24 64/8 75/9 76/24 79/1 86/20 86/20
open [2] 80/2 87/23
opened [2] 19/14 19/20
opens [2] 19/23 84/24
operated [1] 74/20
operates [3] 8/17 22/17 78/16
operating [1] 8/22
operation [1] 40/12
operative [1] 80/23
opportunities [1] 19/23
opportunity [2] 66/18 77/14
opposed [2] 30/23 62/1
opposite [6] 7/7 36/19 39/10 63/9 63/10 64/1
opposition [4] 34/14 36/16 50/10 77/9
ORAL [1] 1/9
order [7] 3/25 7/25 10/25 39/8 46/21 54/1 61/20

originally [1] 80/22
other [51] 5/5 5/6 5/12 9/24 10/15 15/21 16/10 17/24 19/3 19/11 20/16 20/19 20/23 21/13 23/22 23/25 26/16 27/4 30/12 30/13 32/7 32/12 33/23 37/18 40/5 42/2 44/8 45/1 46/4 46/13 49/6 50/13 53/1 55/4 58/15 58/18 59/15 60/10 62/10 64/17 64/21 73/24 74/3 75/21 76/14 80/25 82/22 83/14 83/24 86/10 88/22
others [1] 47/2
otherwise [7] 5/24 13/10 18/13 22/10 26/15 46/2 64/5
our [45] 11/23 12/8 12/9 12/13 14/7 14/15 15/15 15/23 16/1 17/10 17/18 19/8 23/10 33/13 33/18 34/5 34/14 35/23 35/24 35/24 36/16 37/3 37/18 46/17 50/9 65/24 66/14 66/24 66/24 69/22 70/14 71/23 72/13 74/21 77/9 79/5 80/9 80/17 81/16 82/13 82/22 83/8 83/24 86/5 86/16
ours [3] 12/16 30/3 74/14
out [8] 3/16 5/19 20/18 29/17 59/6 74/2 75/2 88/25
outcome [2] 68/1 82/20
outside [8] 40/10 40/11 48/20 49/23 52/7 53/20 55/10 77/19
over [9] 13/20 17/5 27/20 37/18 62/6 65/7 66/6 66/17 87/2
overarching [1] 67/1
overlap [2] 80/19 82/15 84/9
override [1] 6/6
overstate [1] 81/6
overthrow [1] 44/20
overwhelmingly [1] 71/6
own [6] 35/12 62/3 63/9 68/4 75/5 79/18
owned [10] 16/13 36/22 37/5 40/13 58/6 59/18 74/22 78/16 79/1 87/8
owner [2] 33/14 33/14
ownership [10] 33/10 33/16 33/18 34/5 34/6 34/12 34/15 35/21 41/18 74/17
owns [2] 8/17 85/11

P.C [1] 1/18
p.m [4] 1/6 47/21 47/21 89/11
Pablo [1] 42/18
padding [1] 10/13
page [4] 15/14 37/4 37/4 37/18
pages [1] 85/13
Panama [17] 40/12 56/5 56/8 74/25 75/5 75/11 75/21 76/12 76/17 79/24 80/15 80/22 80/24 81/7 81/8 81/8 81/15
Panamanian [5] 42/11 42/12 42/13 42/14 56/6
pandemic [1] 90/6
papers [6] 3/23 5/1 36/7 45/3 66/24 71/23
paragraph [3] 51/10 52/5 80/18
Pardon [1] 53/13
parent [3] 39/13 57/3 57/9
parents [1] 41/5
part [3] 30/17 44/19 77/25
particular [8] 11/21 11/25 34/15 38/12 44/4 72/1 72/11 77/9
particularities [1] 23/6
particularly [5] 10/6 12/6 19/4 26/2 29/14
parties [2] 51/23 82/11
parties' [1] 3/25
partly [1] 84/9
party [3] 39/16 49/13 58/18
passed [1] 9/4 14/18 21/14
past [2] 43/11 85/20
path [2] 45/18 45/25
pause [3] 18/15 33/20 82/2
pay [1] 74/1
paying [1] 74/5
payment [1] 70/8
Payne [4] 23/14 35/5 38/2 38/11
pending [1] 19/19
people [5] 15/7 20/4 49/23 52/21 67/11
per [3] 29/16 30/11 30/13
per se [3] 29/16 30/11 30/13
perfectly [1] 85/5
perhaps [7] 29/17 39/1 58/17 59/23 71/10 79/3 86/4
person [1] 8/9
person's [1] 9/10
personal [19] 4/19 4/22 63/11 81/17 82/2 82/21 82/25 83/4 83/13 83/13 83/16 84/5 84/6 84/10 84/25 85/18

personal-jurisdiction [7] 81/17 82/2 84/5 84/10 85/18 85/22 88/13
persons [2] 8/1 8/1
perspective [1] 87/13
persuasive [1] 38/9
Phillip [1] 22/25
phrase [1] 22/18
pick [1] 59/11
picture [3] 5/6 6/15 7/22
piece [3] 53/4 69/22 71/1
pincite [2] 16/5 16/7
ping [1] 11/14
ping-pong [1] 11/14
place [3] 28/19 31/1 66/4
placed [1] 59/2
places [1] 80/12
plaintiff [34] 1/4 1/12 3/6 31/19 32/10 32/15 34/8 41/16 41/21 49/7 49/13 49/17 49/18 49/24 50/3 50/5 50/6 50/9 53/22 54/7 54/14 61/7 63/25 64/4 64/5 64/19 66/5 68/8 68/10 68/15 77/25 79/11 79/23 79/24
plaintiff's [5] 31/7 37/5 62/3 63/1 79/18
plaintiffs [5] 5/21 22/6 22/9 24/9 70/17
plan [1] 44/19
planned [1] 86/18
play [1] 23/22
players [1] 55/9
playing [1] 55/2
pleading [1] 32/5
please [2] 35/4 90/5
plus [2] 55/18 81/21
point [26] 12/8 15/9 17/23 17/23 17/25 19/11 20/22 21/6 24/21 26/21 27/25 29/2 29/19 31/17 32/11 42/11 46/12 46/16 48/2 60/24 63/20 68/4 69/10 70/15 80/21 84/19
points [1] 88/22
policy [8] 51/6 51/14 51/15 68/24 69/2 69/7 69/19 70/3
political [6] 44/14 44/21 45/18 45/22 46/1 47/2
pong [1] 11/14
position [14] 11/23 16/8 16/16 17/2 38/25 39/15 39/21 64/12 68/22 78/24 79/5 85/1 86/6 88/10
possess [1] 8/13
possesses [2] 8/5 8/17
possession [9] 8/10

**P**

possession... [8] 22/17 60/13 60/13 60/23 61/1 61/9 65/9 65/15
possible [1] 58/17
possibly [1] 58/24
potential [1] 72/4
potentially [7] 29/23 30/7 31/9 31/13 32/8 47/6 83/4
power [1] 21/21
preceded [1] 36/1
precedence [1] 17/5
precedent [1] 70/2
precedes [1] 14/4
precise [1] 15/3
precisely [1] 15/25
precluded [1] 45/22
predicate [1] 47/9
preliminarily [1] 32/6
premature [1] 86/4
premised [1] 25/12
prepared [3] 3/25 85/17 85/21
presented [1] 84/23
presenting [1] 45/13
presents [4] 22/14 44/14 44/20 87/6
preserve [1] 27/6
President [3] 14/20 44/17 80/15
presumably [1] 62/18
presume [2] 13/15 28/22
presumption [2] 11/3 33/17
presumptions [2] 10/20 11/3
pretty [8] 13/11 19/13 38/2 45/8 53/22 59/7 68/14 84/16
Prettyman [1] 2/4
prevent [1] 21/15
primarily [1] 73/16
primary [1] 61/13
principal [1] 62/5
principally [1] 83/24
principle [1] 49/5
principles [2] 67/1 67/16
prior [3] 10/6 48/2 87/3
private [6] 6/19 6/24 7/2 26/20 71/11 85/11
privity [1] 49/18
probably [5] 6/1 14/14 18/16 55/21 69/11
problem [3] 26/18 52/19 52/20
procedure [1] 82/12
proceed [1] 5/9
proceedings [4] 1/9 2/6 89/11 90/4
process [7] 4/19 4/22 10/23 34/25 77/5 81/17 82/12
processing [1] 71/21
produced [1] 2/7

producer [1] 40/20
productive [1] 51/4
products [1] 64/25
proffered [1] 67/21
profits [2] 56/20 57/3
prohibited [3] 54/2 55/14 55/16
proof [13] 32/6 32/14 33/16 33/17 40/9 41/17 62/3 62/23 63/1 63/8 63/9 63/9 79/18
proper [1] 27/2 27/2
properties [1] 74/17
property [88] 8/11 8/11 8/13 8/18 8/22 9/12 14/22 15/7 16/13 16/20 16/22 17/12 18/22 22/16 23/17 23/18 23/19 24/4 24/7 24/23 26/10 26/17 26/17 28/10 28/17 29/22 31/4 31/7 32/1 33/6 33/7 33/8 33/11 33/13 33/21 33/22 33/25 34/1 34/2 34/11 34/16 34/19 34/22 34/23 34/24 35/1 35/7 35/10 35/12 35/13 35/16 35/24 36/2 36/5 36/13 36/20 37/8 38/4 38/4 38/25 39/14 41/2 41/6 41/11 41/19 41/19 41/24 41/25 42/1 42/3 42/14 44/5 44/7 44/7 46/17 51/3 51/8 56/6 56/13 60/1 65/8 65/9 65/16 67/22 69/3 70/20 85/12 87/9
propose [1] 3/21
proposition [8] 36/11 37/9 39/18 54/24 68/23 69/6 72/15 72/22
protect [1] 14/21 51/7
protection [3] 4/23 12/5 86/19
prove [7] 30/9 31/25 32/2 46/21 46/22 47/10 68/16
proven [3] 25/17 25/19 30/6
provide [7] 12/5 16/2 22/3 37/14 39/12 52/6 80/10
provided [3] 12/18 13/10 13/25
provides [1] 51/3
providing [2] 57/19 60/7
provision [4] 6/22 20/21 41/16 41/20
provisions [8] 6/9 7/10 9/17 9/19 10/16 20/8 20/21 39/11
proximity [1] 50/8
prudential [1] 82/16
public [2] 45/12 65/21
published [2] 44/16 44/17
Puma [1] 40/14

purchase [3] 16/22 62/22 64/24
purchased [1] 61/15
purchaser [3] 16/17 62/17 62/18
purchases [1] 61/22
purchasing [2] 57/14 65/20
purpose [4] 8/8 11/4 28/23 54/12
purposely [2] 39/11 62/20
purposes [2] 22/18 43/24
pursuant [1] 31/5
pursued [1] 32/13
put [10] 19/12 28/18 29/19 31/17 41/24 68/20 73/25 79/11 82/ 84/11

**Q**

quandary [1] 75/8
question [61] 4/3 4/8 4/10 4/11 4/11 4/13 4/14 4/14 4/17 5/10 5/11 5/20 6/15 6/16 7/22 12/10 17/1 21/19 22/1 22/2 22/5 22/11 23/7 26/13 27/14 28/2 32/4 35/6 36/1 36/4 37/11 41/22 43/12 43/13 44/15 44/21 44/24 44/25 45/2 45/18 45/22 46/1 46/13 47/2 48/8 50/14 63/14 63/15 63/17 63/17 68/16 80/9 82/4 82/2 84/5 84/10 84/12 85/2 85/22 86/21 88/13
questions [16] 4/18 4/18 4/25 6/2 6/14 11/6 11/23 17/14 38/16 47/23 49/2 71/5 73/20 82/14 82/17 83/23
quick [4] 18/15 43/10 81/24 87/2
quite [4] 10/3 24/9 69/10 87/11
quotations [1] 70/14
quotes [2] 14/17 15/5

**R**

RABINOWITZ [1] 1/18
raise [1] 88/22
raised [5] 12/10 39/2 47/1
rather [6] 32/6 35/20 67/12 67/14 68/15 83/5
rbskl.com [1] 1/21
re [1] 64/4
re-said [1] 64/4
reach [3] 43/12 43/13 74/7
reached [1] 86/22
reacted [1] 21/14
reaction [1] 85/16
reactions [1] 5/9

read [9] 7/2 31/3 35/1 35/6 41/23 42/8 43/1 77/22 85/6
reading [1] 39/14
real [6] 18/15 27/11 43/10 60/3 60/4 76/18
reality [1] 28/17
realize [1] 71/12
really [13] 4/18 19/9 22/22 24/10 27/12 44/25 56/10 80/12 80/24 81/7 81/25 84/3 84/23
Realtime [1] 2/3
reason [7] 22/14 41/4 67/24 69/20 82/18 83/24 84/6
reasonable [2] 9/22 88/5
reasons [1] 43/17
rebuttal [3] 11/16 17/21 66/18
recall [1] 75/9
receive [1] 36/25
recipient [1] 59/10
recited [1] 77/8
recognize [3] 25/11 35/11 42/3
recognized [5] 35/15 36/20 40/16 68/25 70/25
recognizes [4] 36/23 37/7 52/6 69/2
recognizing [1] 71/8
record [5] 75/20 76/25 78/13 84/23 90/3
recorded [1] 2/6
records [1] 45/12
recover [1] 9/12
reduction [1] 88/13
refer [2] 14/12 41/25
referenced [1] 77/9
referred [1] 20/14
refine [1] 44/18
refinery [2] 67/22 71/21
reflect [1] 28/16
reflected [1] 70/13
regard [3] 21/13 38/13
regime [1] 14/23
registered [2] 2/2 77/5
reinforce [1] 86/7
relations [3] 19/21 51/18 51/19
relative [1] 74/7
relatives [1] 57/21
relied [2] 23/9 73/23
relief [1] 32/11
rely [2] 10/20 15/20 28/25 31/19 73/16 73/17
remaining [1] 81/16
remand [1] 35/5
remedies [1] 12/7
remedy [1] 46/19
remember [12] 9/2 14/3 15/20 21/10 30/5

remittance [7] 53/11 53/16 61/16 69/21 74/1 74/11
remind [2] 42/17 71/3
reminded [1] 22/25
remits [1] 59/17
remittance [7] 54/6 57/14 58/19 58/22 59/8 64/3 74/12
remittances [21] 53/25 57/17 57/20 58/14 58/15 58/17 58/25 61/10 63/22 64/8 64/16 65/19 66/7 73/23 74/2 74/5 77/5 78/10 79/2 79/15 79/19
remitted [1] 74/7
remotely [1] 90/7
repeal [1] 19/20
repealed [1] 15/17
repeat [3] 24/13 24/18 66/23
repeatedly [1] 7/19
repetitive [1] 69/13
replete [1] 15/5
reply [1] 27/21
report [2] 62/25 63/2 85/6 88/9
reporter [5] 2/2 2/2 2/3 2/3 47/15
reporting [1] 90/7
reports [1] 62/4
representations [1] 78/2
request [1] 82/13
require [4] 31/3 43/18 45/3 50/6
required [2] 41/4 43/13
requirements [1] 28/4
requires [1] 13/17
reserve [1] 27/21
resold [1] 65/21
resolution [2] 38/15 45/2
resolve [4] 44/25 47/3 83/16 88/11
resolved [4] 82/3 82/4 84/7 85/3
respect [19] 4/6 17/5 35/14 52/7 60/1 63/13 68/1 68/18 68/18 70/2 71/10 72/1 74/1 75/3 75/6 75/7 76/11 78/25 82/15
respectfully [1] 31/15
respectively [1] 4/15
respects [1] 65/18
respond [4] 21/6 46/7 77/12 86/3
response [4] 29/12 39/4 64/20 82/6
responses [1] 14/2
restrictively [1] 29/5
result [4] 12/13 27/18 31/1 82/20
resulting [1] 41/10
resume [1] 47/17
resumed [1] 8/21
return [1] 67/2

101

**R**

**reverse** [1] 39/8
**review** [2] 29/5 83/12
**reviewing** [1] 45/23
**ricocheting** [2] 73/13 74/11
**rig** [5] 16/12 16/13 16/15 18/20 19/1
**right** [98]
**rights** [17] 28/10 35/2 35/17 35/19 35/23 35/24 36/2 36/5 36/13 36/20 36/23 36/24 40/22 41/2 42/3 46/23 85/11
**rigs** [1] 16/11
**rise** [8] 23/19 25/21 26/20 29/7 29/22 31/9 34/16 38/8
**RMR** [2] 90/2 90/11
**role** [1] 59/2
**roll** [2] 56/20 57/3
**Rong** [4] 23/10 26/24 27/4 29/24
**roots** [1] 43/23
**rule** [6] 15/3 29/16 30/12 30/14 83/14 83/18
**rules** [4] 11/2 12/19 15/2 52/7
**ruling** [2] 83/2 83/13
**Rusk** [1] 19/16

**S**

**S.A** [2] 1/6 3/4
**Sachs** [5] 25/9 25/10 25/16 26/8 26/25
**said** [32] 4/17 10/4 10/5 14/20 15/1 19/15 20/23 24/10 24/14 24/14 25/3 25/3 29/15 31/10 39/17 45/22 46/7 46/18 53/15 57/10 63/25 64/4 64/5 69/3 69/23 71/5 73/12 77/24 78/15 85/21 86/8 87/23
**sake** [1] 79/14
**sales** [2] 73/24 73/24
**same** [24] 10/10 10/11 16/8 24/8 25/15 34/8 44/8 49/22 75/12 75/12 75/14 75/17 75/22 76/5 76/5 76/14 78/4 79/25 80/1 80/15 82/17 82/18 85/13 87/22
**satisfied** [2] 9/9 84/23
**satisfy** [6] 9/8 25/5 30/10 55/7 57/15 71/6
**saw** [1] 52/1
**say** [38] 3/18 6/8 7/12 7/24 13/19 15/23 16/11 16/20 16/23 18/18 27/10 28/12 29/21 30/11 36/19 37/4 37/6 37/24 39/7 43/6 43/11 44/6 56/15 58/9 63/4 63/25 66/24 71/3 71/13 76/24 77/1 80/3 83/14

**saying** [14] 7/15 7/16 18/11 19/9 32/6 45/10 54/17 60/17 60/20 67/20 68/2 79/10 79/11 79/13
**says** [18] 8/16 10/15 12/17 15/15 20/4 27/5 34/12 41/16 45/18 46/9 52/5 58/9 58/11 62/25 63/2 68/9 69/15 69/16
**scenario** [2] 17/2 22/15
**Schneider** [1] 45/21
**screen** [2] 67/5 67/9
**sdavidson** [1] 1/16
**se** [3] 29/16 30/11 30/13
**seat** [1] 3/16
**seated** [1] 3/17
**second** [11] 10/11 33/20 40/19 49/21 50/2 57/6 57/9 68/6 75/15 75/15 77/14
**Second Circuit** [2] 49/21 50/2
**seconds** [1] 21/8 24/14
**Secretary** [2] 40/23 41/12
**section** [1] 52/5
**secure** [1] 26/23
**see** [16] 5/9 10/2 13/2 28/7 35/18 37/9 53/22 67/11 67/14 78/8 79/9 82/10 84/6 86/17 87/24 88/3
**seek** [1] 83/20
**seeking** [2] 81/7 83/12
**seem** [3] 28/16 60/8 87/10
**seemed** [2] 30/19 82/16
**seemingly** [1] 62/20
**seems** [10] 4/8 8/3 28/15 36/19 43/22 45/1 51/9 52/10 55/20 58/1
**self** [2] 9/24 43/22
**self-defense** [1] 43/22
**self-delivered** [1] 9/24
**sell** [6] 54/4 55/13 61/24 62/22 78/13 79/2
**selling** [9] 26/11 26/17 54/9 63/21 65/20 66/6 66/7 78/11 79/16
**sells** [2] 62/8 79/8
**Senate** [1] 20/15
**send** [4] 57/20 58/16 59/8 63/4
**sending** [2] 58/5 58/15
**sense** [12] 5/9 5/14 17/4 23/8 29/11 30/24 42/6 56/17 57/22 70/17 82/21 87/7
**sensitive** [1] 23/2
**separate** [2] 61/15 84/14
**sequence** [1] 59/12
**series** [1] 47/1

**seriously** [2] 81/3 86/2
**serve** [1] 74/13
**Servi** [1] 74/20
**Servi-Cupet** [1] 74/20
**service** [32] 54/9 54/13 58/25 60/14 61/2 61/9 63/22 63/23 63/24 63/24 64/2 64/3 64/8 64/13 65/18 67/22 71/22 74/9 74/23 78/10 78/11 78/12 78/16 78/25 79/1 79/6 79/6 79/8 79/15 79/16 79/17 79/22
**serviced** [1] 61/10
**services** [2] 57/19 60/7
**session** [2] 10/10 10/11
**set** [4] 15/24 35/2 60/11 71/23
**sets** [1] 30/7
**setting** [1] 14/11
**settled** [2] 49/9 75/4
**Settlement** [4] 40/21 40/21 41/1 41/7
**shall** [1] 41/17
**share** [1] 57/2
**shareholder** [10] 35/16 35/17 35/19 35/23 36/13 36/21 36/23 36/24 37/7 42/13
**shares** [6] 37/9 39/25 40/13 40/14 55/25 56/17
**she** [1] 80/14
**she's** [1] 80/15
**sheet** [2] 56/20 57/3
**shelves** [2] 54/13 66/8
**shift** [1] 43/9
**shore** [1] 54/18
**should** [12] 7/3 9/2 11/4 15/3 32/5 46/16 47/8 51/13 64/6 85/2 86/2 86/22
**shouldn't** [4] 7/1 25/14 29/10 45/19
**show** [6] 34/15 39/10 44/17 54/8 54/8 81/2
**shows** [7] 67/24 68/2 69/25 70/1 71/6 76/4 80/19
**side** [5] 5/11 5/12 26/21 72/12 76/1
**side's** [1] 36/7
**signed** [1] 14/20
**significant** [6] 61/4 61/7 65/25 66/2 66/3 66/5
**silent** [1] 13/24
**Silva** [2] 1/13 3/6
**similar** [1] 75/8
**similarly** [3] 25/14 64/9 64/24
**simple** [3] 46/13 46/24 47/9
**simplicity** [1] 46/15
**simply** [4] 7/2 28/25

**since** [3] 13/19 29/10 42/20
**sisters** [1] 50/12
**situation** [11] 12/1 14/16 31/22 44/6 44/12 44/13 44/13 63/6 80/25 81/7 83/1
**situations** [2] 44/10 60/9
**six** [2] 3/24 4/18
**slice** [1] 74/2
**small** [3] 59/1 78/19 78/25
**so** [110]
**so I think** [5] 21/12 25/7 26/12 29/8 64/10
**So this is** [1] 8/25
**socialist** [3] 85/10 86/18 87/7
**Societá** [1] 54/22
**sold** [4] 16/14 40/13 61/11 64/9
**solicitations** [1] 54/18
**solicited** [2] 72/6 72/7
**some** [30] 6/1 16/12 24/5 26/22 28/15 32/11 39/16 46/12 49/2 51/10 52/14 53/24 58/2 58/17 59/21 60/3 60/4 64/10 71/12 71/13 73/14 74/12 74/20 75/20 84/9 84/24 86/6 87/25 88/3 88/22
**somehow** [1] 32/7
**someone** [4] 29/21 49/18 59/7 59/9
**something** [11] 6/23 11/16 30/23 33/23 44/25 45/3 49/6 49/11 58/10 86/2 88/10
**sometimes** [1] 81/21
**somewhat** [3] 60/17 60/20 84/20
**soon** [3] 48/11 48/12 89/10
**sorry** [21] 7/5 7/21 8/17 11/10 13/8 19/17 33/19 37/25 47/25 50/18 56/22 58/21 62/12 63/13 63/16 63/16 77/15 79/22 80/8 85/19 87/15
**sort** [36] 3/23 3/24 3/24 3/24 4/8 4/25 5/1 5/3 5/8 6/13 6/14 6/17 6/24 12/23 22/1 23/23 25/14 29/4 33/9 35/20 43/18 49/2 49/19 50/13 50/16 67/18 73/12 73/25 81/18 81/24 82/1 83/8 84/11 86/7 87/25 88/17
**source** [3] 7/17 10/4 42/10
**Southern** [1] 42/21
**sovereign** [10] 4/6 4/10 8/1 15/22 16/10 29/4 29/4 31/1 68/3

**sovereign's** [1] 71/10
**sovereigns** [1] 13/21
**Soviet** [1] 44/19
**Spain** [1] 18/6
**Spanish** [3] 18/19 18/21 18/22
**speak** [2] 87/17 87/24
**speaker** [1] 13/4
**special** [1] 44/3
**specific** [7] 11/25 14/11 14/15 15/22 15/25 68/15 80/4
**specifically** [3] 26/19 27/4 27/5
**specifics** [4] 49/1 53/10 53/15 71/2
**speculating** [1] 11/4
**speculation** [2] 10/19 10/25
**spent** [2] 32/23 45/11
**spills** [1] 54/18
**squared** [1] 77/21
**squarely** [1] 15/23
**stage** [5] 31/12 32/14 32/17 47/8 48/10
**stance** [1] 73/21
**stand** [1] 69/6
**standard** [10] 1/18 34/7 36/3 40/12 41/8 41/9 44/18 59/7 71/8 71/9
**standards** [1] 28/8
**standing** [4] 5/2 5/3 5/5 50/24
**stands** [2] 72/14 72/21
**start** [10] 3/16 5/19 5/25 8/23 32/25 33/1 53/11 53/12 53/18 81/23
**started** [1] 35/18
**starting** [2] 12/8 32/24
**starts** [2] 13/25 27/24
**state** [22] 4/7 4/21 11/24 12/4 14/10 14/13 17/6 17/12 22/16 40/23 41/12 44/16 45/11 46/18 54/20 54/20 78/8 84/13 84/15 85/10 87/7 87/8
**state's** [1] 44/19
**state-owned** [1] 87/8
**stated** [3] 25/4 39/19 69/19
**statement** [4] 49/7 54/23 78/17 78/17 69/19
**states** [71] 1/1 1/10 8/19 8/21 8/23 8/24 21/12 21/22 23/4 27/13 39/15 39/21 39/24 48/20 48/21 49/14 49/23 49/23 50/1 51/6 51/7 51/10 51/20 52/21 53/6 53/20 53/21 54/4 54/5 54/5 54/19 55/11 55/12 55/13 55/14 56/1 56/5 57/23 58/3 58/10 58/12 59/3 59/8 61/4

**states...** [27] 61/6 62/7 63/4 63/8 65/12 66/1 68/9 69/17 69/24 71/16 71/20 72/2 72/4 72/11 72/17 72/23 73/14 73/16 74/4 76/16 77/6 77/19 77/25 78/1 78/2 78/7 84/18
**stating** [1] 52/19
**station** [5] 60/14 60/15 61/9 63/22 63/23
**stations** [31] 54/9 54/13 58/25 61/2 63/24 63/24 64/2 64/3 64/8 65/18 67/23 71/22 74/13 74/13 74/16 74/20 74/21 74/23 78/11 78/12 78/12 78/16 78/25 79/1 79/6 79/6 79/8 79/15 79/16 79/17 79/22
**Status** [1] 88/9
**statute** [32] 7/25 8/8 9/5 11/25 12/1 12/2 12/7 12/15 12/17 13/13 14/4 15/16 15/17 15/21 15/25 16/16 19/6 21/11 21/18 23/6 25/24 26/19 31/23 41/5 67/18 67/20 67/25 69/12 69/19 69/20 70/13 71/1
**statutes** [3] 15/19 21/15 28/1
**statutory** [7] 10/20 11/2 15/2 23/15 24/25 25/12 28/4
**stenography** [1] 2/6
**step** [3] 14/21 53/1 56/14
**STEPTOE** [1] 1/14
**steptoe.com** [1] 1/16
**Steven** [2] 1/12 3/5
**still** [4] 8/5 8/12 23/22 30/1
**stipulate** [2] 83/12 83/19
**stipulation** [1] 85/25
**stop** [1] 81/19
**stores** [2] 61/24 62/16
**straight** [1] 75/1
**stranger** [3] 49/25 49/25 50/10
**stream** [1] 62/21
**Street** [1] 1/19
**stretch** [1] 13/24
**strikes** [3] 7/23 9/7 13/11
**strong** [3] 11/3 19/13 59/7
**stronger** [2] 10/22 14/24
**strongly** [2] 10/21 14/19
**structure** [1] 27/6
**struggled** [1] 60/5
**stuff** [1] 54/12
**sub** [2] 33/8 35/21

**subchapter** [2] 13/11 14/1
**subcommittee** [1] 20/18
**subject** [25] 4/5 5/6 5/7 5/22 6/8 6/18 6/23 7/4 7/13 8/19 8/24 15/4 15/18 16/21 16/23 19/7 22/3 23/2 23/3 33/2 45/5 82/3 85/2 86/23 90/6
**subject-matter** [11] 4/5 6/8 6/23 7/4 7/13 15/4 16/21 16/23 22/3 82/3 86/23
**subject-matter-jurisdiction** [1] 85/2
**submit** [9] 10/19 10/24 18/10 31/8 35/22 36/9 52/3 52/22 72/24
**submitted** [1] 12/12
**subsequent** [2] 15/2 15/25
**subsidiary** [13] 34/6 34/7 35/24 35/25 36/21 36/22 37/5 39/22 42/15 46/17 57/7 57/8 74/22
**subsidiary's** [3] 39/14 41/6 41/11
**substantial** [6] 9/6 19/23 52/8 52/11 52/13 82/9
**substantial-effect** [2] 52/11 52/13
**substantially** [2] 9/10 82/14
**succession** [1] 87/2
**such** [3] 23/4 30/13 84/14
**suddenly** [1] 18/12
**sue** [8] 8/1 8/23 14/9 14/9 20/5 46/18 46/20 80/22
**sued** [2] 12/4 80/22
**suffered** [1] 41/9
**sufficient** [6] 30/2 34/13 34/16 51/25 71/19 73/14
**sufficiently** [2] 30/21 84/12
**suggest** [11] 13/24 14/7 14/18 15/11 21/16 41/20 45/17 60/2 77/21 87/21 88/20
**suggested** [5] 6/20 22/9 26/14 28/5 43/21
**suggesting** [3] 32/9 48/6 72/16
**suggestion** [4] 75/24 82/1 82/6 83/9
**suing** [1] 21/9
**suit** [3] 8/19 8/24 16/9
**Suite** [1] 1/19
**sum** [2] 11/23 17/18
**support** [7] 37/14 39/18 45/24 75/18 75/20 78/13 80/10

79/12
**suppose** [4] 7/24 53/3 53/5 56/19
**supposed** [1] 45/24
**Supreme** [10] 7/15 10/4 13/18 19/15 22/24 25/10 25/16 48/7 48/7 86/14
**Supreme Court** [8] 7/15 10/4 13/18 19/15 22/24 25/16 48/7 86/14
**Supreme Court's** [1] 25/10
**sure** [14] 16/4 21/7 30/24 38/9 38/24 45/16 46/8 48/5 49/4 49/8 60/5 69/9 85/24 88/6
**surely** [1] 59/22 59/24 86/1
**surprisingly** [2] 5/24 53/23
**survive** [1] 47/9
**survived** [1] 83/3
**swallow** [1] 28/6
**sweep** [1] 9/14

**T**
**tail** [1] 64/6
**take** [6] 17/5 19/8 47/16 66/3 74/2 82/4
**taken** [11] 28/10 32/1 33/25 36/2 36/5 39/22 41/17 44/8 46/23 56/6 56/14
**takeover** [2] 30/18 55/24
**takes** [3] 22/16 22/17 66/4
**taking** [19] 23/13 23/13 26/10 31/3 31/24 35/11 39/13 39/25 41/5 41/10 41/11 42/4 43/17 43/20 60/13 60/13 61/8 65/7 66/6
**takings** [1] 38/17
**talk** [19] 20/4 20/6 20/7 38/23 39/1 41/13 48/14 50/11 53/10 53/15 53/16 54/16 57/7 57/11 61/12 67/16 86/4 88/2 88/21
**talked** [2] 78/4 83/19
**talking** [6] 31/13 39/5 43/12 52/3 56/23 76/4
**talks** [4] 21/11 29/20 29/21 59/13
**task** [1] 89/9
**tax** [1] 74/3
**technological** [1] 90/7
**tell** [7] 3/15 35/14 35/4 44/18 63/3 84/8 85/7
**ten** [2] 47/16 58/24
**Tenth** [2] 57/6 57/9
**term** [3] 4/20 16/24 49/5
**terms** [7] 26/2 34/20 47/7 71/2 71/9 74/10

**terribly** [2] 38/9 45/2
**territory** [3] 52/7 52/9 88/19
**test** [3] 26/25 27/3 57/16
**testimony** [1] 45/4
**text** [1] 25/12
**textual** [2] 6/14 6/16
**than** [19] 7/2 10/22 16/10 32/6 32/10 38/14 46/4 49/6 49/12 51/18 51/19 67/10 67/12 67/14 68/15 71/10 75/21 83/5 86/9
**thank** [18] 3/11 11/19 13/6 17/22 21/2 27/23 32/19 38/20 47/18 66/16 66/20 81/14 82/8 88/6 88/14 88/15 89/6 89/9
**thank you** [14] 3/11 11/19 13/6 17/22 21/2 27/23 32/19 38/20 47/18 66/16 66/20 81/14 88/15 89/6
**Thank you very much** [1] 89/6
**Thanks** [1] 47/20
**that** [527]
**that's** [79] 4/13 5/14 8/20 10/3 10/9 10/25 11/1 11/2 11/16 13/6 13/9 16/1 17/10 18/3 19/18 20/23 21/1 22/18 23/16 24/7 24/17 24/23 25/20 25/21 27/2 27/9 28/19 28/23 29/8 29/9 30/24 33/21 34/23 35/3 35/7 35/17 38/20 41/7 41/18 42/25 43/7 45/2 45/17 50/9 50/23 51/11 52/2 52/22 52/23 52/24 52/25 54/14 55/5 55/17 57/10 59/12 61/14 61/14 63/1 64/14 64/15 65/9 65/10 66/2 66/3 69/1 69/3 70/25 72/11 74/18 75/25 76/9 77/5 80/3 81/1 83/24 84/15 84/19 88/17
**there's** [47] 5/1 7/12 11/2 11/7 16/12 19/19 21/3 25/8 26/11 34/18 36/7 37/16 44/11 48/15 53/5 53/24 53/24 54/1 54/11 54/17 54/25 57/8 57/8 57/21 58/17 60/16 61/23 62/17 62/23 63/8 64/4 65/25 66/21 68/9 72/16 74/3 75/23 76/4 76/18 78/13 78/21 82/18 84/4 84/11 84/14 86/20 88/22
**thereafter** [2] 48/11 48/12
**therefore** [5] 4/21 4/23 85/10 85/12 90/6
**thereof** [1] 32/1
**these** [43] 5/5 5/7 7/11 8/21 11/1 19/3 20/21 24/9 25/7 27/4 28/16 30/8 30/10 31/25 32/15 32/23 38/3 38/7 38/16 39/16 40/14 53/3 54/13 55/2 55/18 58/14 61/24 64/2 64/22 69/21 71/12 72/10 74/2 74/5 74/23 75/1 81/22 82/17 84/13 84/14 84/17 87/1 87/2
**thesis** [1] 85/9
**they** [38] 8/12 8/14 9/14 10/11 14/11 14/16 24/5 25/11 27/7 28/4 28/8 31/10 31/11 31/13 31/15 32/9 32/11 32/13

**then** [39] 4/17 6/1 6/14 8/19 9/20 11/14 12/10 15/9 16/14 20/20 22/16 22/21 28/18 28/23 32/22 34/7 34/9 37/6 39/23 40/13 45/12 53/10 54/21 56/8 57/11
**themselves** [1] 87/8
**them** [66] 18/12 19/7 21/18 25/8 32/8 32/24 39/8 45/13 49/3 50/12 54/9 58/18 74/2 76/19 78/2 81/2
**their** [14] 9/24 13/21 14/19 20/7 21/17 41/5 50/12 55/2 55/17 57/20 61/7 63/9 74/7 77/25
**theory** [5] 42/2 49/13 73/15 76/12 81/12
**there** [89] 3/18 3/24 4/11 4/17 5/25 6/13 6/16 6/21 7/13 9/5 9/17 9/18 10/14 11/1 14/12 14/15 15/12 15/15 15/21 18/25 19/22 19/22 20/4 20/19 22/20 22/22 26/5 27/25 28/12 28/22 29/15 29/16 30/7 30/11 30/21 32/25 33/20 34/4 35/7 35/9 35/9 35/12 35/13 35/14 36/6 36/8 36/9 36/20 37/18 37/20 38/17 39/17 42/10 43/14 43/16 45/16 50/4 50/8 51/17 53/4 55/23 58/2 58/19 58/22 59/15 61/10 61/11 64/7 66/21 68/6 71/4 71/4 72/21 74/15 74/17 75/10 75/14 75/24 77/3 77/7 77/11 78/15 81/3 84/4 84/9 84/24 85/11 87/10 88/23
**then-Standard** [1] 34/7
**theories** [2] 30/8 32/10

T

they... [20] 38/7 39/10 40/2 40/4 40/7 50/5 50/11 56/10 61/2 61/24 71/13 75/5 76/4 78/1 79/25 82/17 82/18 87/7 87/11 87/12
they're [14] 25/7 30/6 35/2 52/12 54/17 61/21 61/25 64/19 73/8 75/16 75/24 76/17 77/9 79/7
they've [5] 10/5 15/1 21/22 54/25 74/6
thicket [1] 12/14
thin [1] 13/11
thing [6] 9/11 33/3 40/19 76/24 87/13 87/22
things [10] 6/10 7/9 7/11 14/5 21/10 39/7 60/10 77/3 81/22 87/1
think [118]
thinking [4] 18/16 29/8 43/9 44/5
third [4] 40/14 49/13 51/23 87/1
third-country [1] 40/14
this [143]
This is [1] 3/3
thorny [1] 87/11
those [25] 4/25 8/5 8/6 10/7 10/24 12/2 14/6 15/4 17/14 18/6 21/16 23/22 25/3 28/11 29/22 30/3 31/9 36/24 44/9 62/22 64/8 79/1 79/8 80/4 80/10
though [5] 25/21 26/21 27/25 51/13 68/16
thought [6] 5/5 9/23 56/22 74/15 77/15 80/23
thoughts [2] 39/4 66/19
threshold [4] 4/8 4/11 50/14 81/24
through [17] 3/23 6/11 9/19 9/20 33/18 34/6 35/1 45/11 55/25 57/15 58/5 61/15 62/1 75/9 77/16 85/8 85/14
throw [1] 84/1
thrust [1] 19/2
thus [1] 51/6
tight [2] 66/11 66/12
tilt [1] 67/5
time [18] 5/11 5/12 7/20 9/4 16/3 18/2 18/5 20/3 20/24 25/24 31/24 32/23 45/11 81/16 82/17 88/5 89/1 89/4
times [2] 7/16 10/5
timing [1] 14/3
Title [14] 6/6 8/25 12/18 16/20 17/3 17/4 19/23 24/8 24/23 25/1 41/15 41/16 43/1 60/12
titled [1] 90/4

81/20
told [1] 86/16
too [5] 10/24 18/17 42/20 59/5 66/18
took [6] 9/25 15/7 29/21 31/1 61/1 85/13
topic [3] 17/16 27/20 38/22
topics [3] 5/6 47/14 47/24
tort [5] 49/22 60/25 60/25 61/1 78/5
total [2] 37/16 50/10
touch [1] 88/24
toward [1] 67/5
towards [1] 45/23
trace [1] 74/21
tracing [1] 74/17
traction [5] 28/15 36/18 39/20 40/15 40/18
trade [6] 8/21 9/5 18/5 19/21 19/23 86/17
trader [1] 54/22
trading [1] 18/7
traffic [4] 8/2 8/11 15/8 21/23
trafficking [30] 16/19 16/22 18/22 19/7 23/16 23/18 24/10 24/11 25/20 25/25 26/2 29/20 32/3 46/19 51/2 51/2 60/14 60/22 60/23 65/14 69/2 69/15 69/16 70/8 70/19 70/19 70/22 71/21 71/22 81/12
traffics [3] 8/6 17/12 29/22
train [1] 77/10
Transactions [1] 54/1
transcript [3] 1/9 2/6 90/3
transcription [1] 2/7
travel [1] 19/16
treaties [1] 39/9
treaty [1] 38/15
treaty-type [1] 38/15 19/21
tremendously [1] 19/21
tribunal [6] 37/10 37/20 38/5 38/10 38/13 38/18
tried [2] 45/12 64/18
trips [2] 72/8 78/7
true [6] 23/17 28/23 30/24 50/4 64/14 64/15
trump [2] 4/12 15/3
trumps [1] 22/8
try [8] 3/20 28/13 39/7 76/9 81/11 81/19 82/16 84/3
trying [7] 15/20 26/25 47/2 51/21 75/1 82/11 83/5
turn [10] 11/13 12/25 12/21 22/11 27/20 32/22 66/17 80/6 85/15

twist [1] 87/6
two [23] 13/17 15/4 21/13 24/2 24/19 26/5 29/23 30/8 30/10 31/9 32/6 33/19 34/4 34/5 34/9 57/13 65/18 68/18 69/18 75/10 80/12 81/21 88/24
two-plus [1] 81/21
type [3] 37/19 38/3 38/15

U

U.K [1] 18/6
U.S [23] 16/5 30/18 34/20 38/4 45/23 55/14 55/15 55/16 60/8 62/18 62/21 63/4 64/13 66/8 67/23 68/2 68/24 69/7 69/19 70/3 72/7 72/8 82/15
U.S. [4] 44/19 62/3 62/25 63/1
U.S. Government [3] 62/3 62/25 63/1
U.S. Government's [1] 44/19
U.S.C [3] 15/14 51/2
ultimately [4] 30/20 47/10 73/13 74/10
unacceptable [2] 27/17 27/18
unauthorized [2] 56/12 67/21
uncompensated [1] 46/24
under [19] 6/22 8/24 18/13 27/1 30/2 31/25 34/17 34/20 34/22 36/3 40/18 41/14 42/13 51/15 52/23 53/7 56/12 60/11 62/4
underlies [1] 29/2
underlying [1] 30/8
undermines [1] 51/6
understand [1] 29/3 30/25 31/2 33/22 34/1 61/13 67/2
understanding [3] 64/12 74/19 87/8
understood [1] 38/25
undertaken [1] 71/25
undisputed [1] 40/9
Unfair [1] 77/19
Union [7] 54/10 59/9 59/17 59/17 64/23 74/9 79/20
unique [2] 31/22 84/12
uniquely [1] 29/4
UNITED [70] 1/1 1/10 8/19 8/21 8/23 8/24 21/22 23/3 27/13 39/15 39/21 39/24 48/21 49/14 49/23 50/1 51/6 51/7 51/10 51/20 52/21 53/6 53/20 53/21 54/4 54/5 54/5 54/19 55/11 55/12 55/13 56/1 56/5 57/23 58/10 58/12 61/6 63/4 65/12 66/1 68/9 69/17 71/16 71/20 72/2 72/4 72/11 72/17 72/23 73/14 73/16 74/4 76/16 77/6 77/19 77/25 78/1 78/2 78/7 84/18

55/13 55/14 56/1 56/5 57/23 58/10 58/12 59/3 59/8 61/4 61/6 62/7 63/4 63/8 65/12 66/1 68/9 69/17 69/24 71/16 71/20 72/2 72/4 72/11 72/17 72/23 73/14 73/16 74/4 76/16 77/6 77/19 77/25 78/1 78/2 78/7 84/18
United States [52] 8/19 8/23 8/24 27/13 39/15 39/21 39/24 48/21 49/14 49/23 50/1 51/6 51/7 51/10 51/20 52/21 53/6 53/20 53/21 54/4 54/5 54/5 54/19 55/11 55/12 55/13 56/1 56/5 57/23 58/10 58/12 61/6 63/4 65/12 66/1 68/9 69/17 71/16 71/20 72/2 72/4 72/11 72/17 72/23 73/14 74/4 76/16 77/6 77/25 78/1 78/2 78/7 84/18
unjust [8] 24/3 24/6 24/20 24/24 24/25 25/2 25/2 25/4
unless [3] 21/3 46/2 46/10
unlike [2] 15/19 23/22
unmistakable [1] 52/10
unpack [1] 48/15
unproven [1] 71/13
unsatisfied [3] 68/18 69/21 69/23
until [4] 26/14 40/11 82/2 85/2
unusual [1] 69/12
unwarranted [1] 32/16
up [15] 11/23 12/25 19/14 19/20 40/20 45/9 46/9 54/13 56/20 57/3 59/4 59/11 63/5 81/18 83/15
upon [9] 10/20 23/16 48/19 53/19 65/7 65/8 68/10 79/18 82/13
upstairs [1] 83/2
us [19] 11/21 12/15 12/20 14/18 14/24 15/4 16/21 22/25 46/15 63/4 67/18 68/1 68/15 68/17 69/25 71/3 75/13 86/1 87/14
use [16] 10/7 10/7 10/8 19/1 24/4 24/7 24/22 26/7 28/19 40/23 55/1 56/12 59/9 65/16 66/3 67/21
used [9] 9/13 14/6 18/20 24/11 28/20 38/18 52/11 52/25 65/18
uses [2] 8/17 22/19
using [2] 16/15 61/21

validity [1] 33/18
Valmana [1] 80/14
value [5] 33/17 56/17 57/2 59/20 60/15
various [4] 28/15 37/10 39/2 43/17
Venezuela [5] 16/14 16/15 16/19 18/1 21/10
Venezuela's [1] 17/3
venture [1] 18/19
venturers [1] 19/5 72/3
ventures [1] 18/7
version [1] 24/12
versus [2] 3/3 19/16
very [31] 6/3 9/11 10/10 11/24 14/18 17/19 19/6 21/14 23/1 23/2 27/4 27/5 30/7 37/11 45/10 46/14 66/25 73/2 78/19 84/10 84/21 86/2 86/8 86/12 86/12 86/12 86/13 87/23 89/6 89/7 89/9
VIA [1] 1/9
view [12] 3/23 12/9 14/15 15/15 18/18 18/21 31/19 36/11 65/24 66/14 71/11 82/13
violate [1] 42/6
violated [4] 33/22 34/2 35/20 46/25
violates [1] 36/12
violation [17] 28/10 32/1 33/24 34/3 35/13 35/15 36/2 36/5 36/8 36/11 39/2 39/3 42/4 43/14 43/16 46/23 48/8 62/16 70/2 70/7 76/17
virtue [6] 33/15 34/9 62/16 70/2 70/7 76/17
visas [1] 78/7
visited [1] 68/10
volume [1] 13/1
voluminous [1] 76/25
vote [1] 36/25
voted [1] 14/18
vs [1] 1/5

W

wag [1] 64/6
wait [1] 85/2
waived [1] 20/17
Wall [1] 1/19
want [28] 9/14 10/6 11/7 11/7 19/11 20/3 29/5 33/1 37/21 37/24 40/19 46/7 46/10 47/15 49/4 52/1 67/11 68/21 76/22 81/1 81/5 83/1 84/1 84/3 86/3 86/7 88/20 88/25
wanted [15] 9/11 9/16 10/15 11/1 16/6 17/15 24/17 33/2 33/5 38/24 42/20 73/21 80/24 88/21 88/22
wanting [2] 20/5 42/19

**W**

**wants [1]** 41/12
**was [105]**
**Washington [3]** 1/5
1/15 2/5
**wasn't [1]** 44/5
**way [13]** 6/2 10/12
11/24 19/1 25/15 26/1
26/25 27/2 42/11 62/16
68/3 72/21 83/6
**ways [5]** 11/23 26/22
46/12 46/13 69/18
**we [165]**
**we believe [10]** 15/1
46/15 47/8 66/12 68/1
71/5 71/8 71/15 72/10
81/2
**we think [1]** 5/14
**we would [1]** 37/2
**we'd [2]** 47/5 47/5
**we'll [3]** 11/14 47/17
89/9
**we're [12]** 11/3 31/12
45/9 45/10 45/13 46/10
46/20 63/2 71/3 71/7
76/3 83/2
**we've [13]** 12/12 20/13
39/5 43/12 47/13 70/16
71/22 72/13 75/8 80/18
83/3 84/23 88/18
**website [2]** 64/3 77/5
**Wednesday [1]** 88/5
**weigh [2]** 10/24 10/24
**weighty [1]** 86/12
**weird [1]** 87/1
**welcome [2]** 47/22
89/8
**well [39]** 4/14 16/18
17/14 21/1 21/2 22/1
23/25 26/5 32/22 33/5
34/4 34/18 35/22 36/15
37/2 38/12 44/3 45/6
48/14 52/15 53/10 56/2
56/4 57/10 63/14 65/10
65/23 65/24 66/7 69/11
72/18 73/11 73/11 75/7
80/6 82/9 82/11 83/10
88/17
**Weltover [11]** 50/17
50/19 51/12 52/3 52/23
53/8 55/7 59/6 59/13
63/6 77/21
**Weltover's [1]** 50/24
**went [3]** 6/11 9/19
33/25
**were [32]** 4/17 5/6 6/10
9/17 9/18 10/16 15/12
18/6 18/7 19/4 20/9
20/14 24/3 35/19 35/20
35/25 39/11 43/6 45/10
46/23 53/11 53/12
53/16 56/22 58/19
67/17 74/13 77/15
78/15 79/1 80/4 81/7
**weren't [1]** 14/11
**Western [7]** 54/10 59/9
59/17 59/17 64/23 74/9
79/19

**Western Union [3]**
54/10 59/9 59/17 59/17
64/23 74/9
**what [91]**
**what's [5]** 28/23 56/12
57/12 68/23 69/1
**whatever [5]** 26/11
57/2 59/1 83/2 84/17
**when [16]** 8/7 9/20
13/12 13/16 14/20
15/12 16/23 26/2 26/19
28/24 29/16 39/22
43/12 54/16 61/1 64/17
**where [22]** 9/16 15/16
15/24 23/22 27/11
36/10 37/4 37/17 45/22
49/22 49/24 53/22
59/11 60/25 64/2 64/2
64/9 68/13 68/25 75/20
80/18 81/7
**whether [24]** 4/4 4/19
5/20 31/13 35/7 36/8
39/3 43/14 44/9 53/11
53/16 59/9 61/10 61/11
66/7 68/7 70/17 79/7
82/21 83/11 83/19
83/21 84/13 85/24
**which [72]** 6/22 7/23
8/22 9/11 10/9 10/21
12/7 12/10 12/18 13/18
13/20 15/10 16/4 18/13
23/7 23/10 23/11 23/21
26/22 26/22 29/6 29/15
29/20 32/9 34/7 34/14
36/9 36/20 37/8 37/17
39/8 39/9 39/16 39/21
41/24 42/16 42/17
46/11 47/3 49/5 49/21
50/8 54/7 54/22 54/25
55/5 56/10 57/7 59/13
60/8 62/3 69/19 70/1
70/19 71/12 71/13
71/17 71/18 72/3 72/7
73/21 74/20 74/21
74/22 74/23 75/12 76/2
78/4 80/25 82/4 83/23
87/25
**while [3]** 76/3 81/22
84/8
**who [14]** 8/2 12/2
14/18 15/7 21/21 21/23
29/21 50/5 51/7 71/5
74/4 75/2 80/14 80/22
**whole [5]** 47/1 62/6
62/11 62/13 84/16
**wholly [2]** 36/22 37/5
**wholly-owned [2]**
36/22 37/5
**whose [1]** 14/22
**why [29]** 5/19 5/25
9/17 11/1 11/2 23/20
23/20 24/17 25/14
28/19 29/10 35/17
46/15 47/16 50/15
50/20 55/20 56/3 57/13
61/19 61/20 61/24 65/2
65/5 67/24 81/2 82/18
84/6 88/2

**William [4]** 2/2 90/2
90/10 90/11
**win [1]** 30/9
**window [2]** 67/10
67/14
**winds [1]** 54/13
**wish [2]** 5/3 11/17
**within [6]** 6/17 15/23
27/1 41/11 41/13 52/8
**without [14]** 8/24
18/11 19/8 26/10 32/14
40/11 42/19 50/21
50/23 51/23 58/16 65/7
70/22 86/19
**won't [1]** 66/23
**wonder [1]** 11/4
**word [7]** 10/8 13/13
18/11 19/9 24/11 32/20
41/18
**words [15]** 9/25 10/7
10/7 12/2 26/16 33/23
40/5 42/2 45/1 58/16
59/15 62/10 64/22
76/14 83/14
**work [2]** 14/18 39/7
**world [5]** 23/3 23/4
62/6 63/3 73/13
**worried [1]** 21/16
**worry [1]** 4/23
**would [100]**
**wouldn't [3]** 43/18
59/14 87/13
**wrestled [1]** 37/11
**wrong [2]** 26/11 35/4
**wrongful [4]** 26/9 26/9
26/20 27/12
**wrongfully [1]** 51/8

**Y**

**Yeah [11]** 12/25 13/9
30/15 62/14 65/22 67/8
77/16 80/5 81/10 85/4
86/24
**year [1]** 87/3
**years [1]** 87/3
**Yende [2]** 45/23 45/25
**yeoman's [1]** 3/19
**Yep [1]** 48/24
**yes [26]** 3/14 5/17
11/19 17/8 17/9 17/10
18/23 19/12 22/12
22/13 25/4 26/4 39/6
42/8 48/18 50/7 52/17
58/7 65/23 66/22 76/13
82/8 85/23 88/7 88/8
89/5
**yet [1]** 10/16
**York [1]** 1/20
**you [170]**
**you know [1]** 52/17
**you'll [4]** 35/4 35/8
37/9 42/16
**you're [13]** 3/17 11/15
26/11 26/16 33/11
61/23 67/9 67/13 72/16

**you've [15]** 6/19 12/23
23/9 23/9 26/19 43/15
43/21 56/14 59/16
68/19 70/18 73/23
81/25 83/21 88/24
**your [195]**
**Your Honor [138]**
**Your Honor's [4]** 37/2
68/11 80/3 83/2
**yourself [1]** 24/18
**yourselves [1]** 88/3

**Z**

**Zaremba [4]** 2/2 90/2
90/10 90/11
**Zemel [1]** 19/16
**ZOOM [1]** 1/9

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system that will automatically send email notification of such filing to all counsel of record.

<u>    /s/ Michael Krinsky    </u>